FILED by ___ D.C.
ELECTRONIC

**August 28, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## 09-CV-81255-DIMITROULEAS/SNOW

Marsha G. Rivernider
Robert H. Rivernider
Charles Edward Lincoln, III
9426 Delmar Court
Wellington, Florida 33414
Plaintiffs *in propia persona*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA---PALM BEACH

| | | |
|---|---|---|
| MARSHA G. RIVERNIDER, | § | |
| ROBERT H. RIVERNIDER, | § | |
| CHARLES EDWARD LINCOLN, III, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. _____ |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| AS TRUSTEE FOR THE C-BASS | § | |
| MORTGAGE LOAN ASSET-BACKED | § | |
| CERTIFICATES, SERIES 2006-CBS, | § | **COMPLAINT FOR DAMAGES** |
| And all JOHN & JANE DOES 1-10 | § | Trial-by-Jury Demanded |
| Defendants. | § | according to FRCP Rule 38 |
| | § | and the Seventh Amendment |

§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§

### APPLICATION FOR TEMPORARY RESTRAINING ORDER & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Come now the Plaintiffs, Charles Edward Lincoln III and Robert H. Rivernider and Marsha G. Rivernider, husband and wife, with this their Motion for Temporary Restraining Order.

Plaintiffs contend that the mortgage-foreclosure crisis of extraordinary proportions which is now gripping the State of Florida in particular and the United States in general is in large part a crisis of judicial (state bar endemic) corruption and constitutionally violative and infringing judicial norms of construction and application of the law. The role of the State Bar comes first from foreclosure-mill firms such Butler & Hosch, P.A., who proceeded against Marsha G. and Robert H. Rivernider in the case

*Plaintiffs' Application for Temporary Restraining Order against Sale*
Final Typescript Edited, Prepared, and Reviewed by CEAL IV

1

resulting in the unconscionable order of sale attached as Exhibit A to this Application for Temporary Restraining Order.

Aside from the obvious realities that the largest industry in Florida are the Real Estate Industry and this state's largest economic powerhouses are the banks and financial service industry outlets who fund real estate activity, the foreclosure crisis is caused by major legal foreclosure mills such as Butler & Hoesch, P.A., taking advantage of the courts' swelled dockets by flooding them with false pleadings and evidence resulting in an overwhelming corruption of the system by sheer numbers. Next the Supreme Court of Florida has over reached its constitutional authority and gone beyond the separation of powers guaranteed in Florida's constitution.

Finally, although the two largest firms *Florida Default* and *Stein* have been repeatedly sanctioned by individual judges and administrative review bodies (including the State Bar) for corrupt practices, these and similar entities such as Butler & Hosch, P.A., continue to operate in the Courts of Florida with impunity because of the illegal financial incentives and the state courts' unquestioning rubber stamps. Both of theses firms are heavily utilized by the Defendant U.S. Bank, N.A., and other lenders throughout Florida and the country.

Accordingly, Plaintiffs allege that the present mortgage foreclosure crisis would not be possible in the state of Florida if not for judicial derogation from the obligations imposed by Florida statutes, which were correctly, strictly, and conscientiously applied as recently as 2005, by Judge Walt Logan of Pinellas County in the (early) mass foreclosure dismissal entered exactly four years ago in August 2005 against Mortgage Electronic Registration Systems in *MERS v. Azize.*

*Plaintiffs' Application for Temporary Restraining Order against Sale*
*Final Typescript Edited, Prepared, and Reviewed by CEAL IV*

2

2 of 33

However, because of the financial industry's grip on the Florida state bar and judiciary, Judge Logan's exemplary decision was overruled in 2007, paving the way for the present crisis. Where the State legal and judicial system have conspired and collaborated with private parties to overthrow the common law of contract, Plaintiffs submit that the mortgage foreclosure crisis is now almost entirely the direct and proximate, and therefore legal result of state judicial complicity in the mortgage finance industry's program of illegally and improperly securitizing mortgages.

For all these reasons, Plaintiffs now seek extraordinary preliminary injunctive relief under Federal Rule of Civil Procedure 65 and can show (1) a likelihood of success on the merits of his Complaint For Quiet Title, (2) a significant threat of irreparable harm, (3) that the balance of hardships favors the applicant, and (4) whether any public interest favors granting an injunction. *Raich v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003).

They also ask that this Preliminary Injunction be imposed and maintained until a final trial-by-jury has been held and judgment entered on their Complaint for Quiet Title. Plaintiffs submit that they can prove that the Florida State Courts are quite incapable of applying the laws of the state of law fairly and equitably in the context of judicial foreclosures, in the present financially volatile and politically sensitive socio-economic environment. See **Florida Supreme Court foreclosure task force report http://www.floridasupremecourt.org/pub_info/documents/Filed_08-17-2009_Foreclosure_Final_Report.pdf.**

In extraordinary circumstances (such as the present mortgage-foreclosure crisis gripping Florida, to a much greater degree even than the rest of the United States) where

*Plaintiffs' Application for Temporary Restraining Order against Sale*
Final Typescript Edited, Prepared, and Reviewed by CEAL IV

3

3 of 33

a constitutional and socio-economic crisis has been created and threatened to be continued by unconstitutional state actions infringing upon fundamental rights preserved to the people by the First, Fifth, Seventh, Ninth Amendment and Fourteenth Amendments, Federal Court intervention has been held to be proper, as it was during the Civil Rights crisis in the Southern United States during the 1960s, as in *Dombrowski v. Pfister*, 380 U.S. 479; 85 S.Ct. 1116; 14 L.Ed.2d 22 (1965).

In Florida, the mortgage foreclosure crisis has been triggered or at the very least deepened and aggravated by express judicial disregard and abandonment of state statutory and common law, and by the state judicial adoption of an unconstitutional substantive and/or procedural norm of foreclosure processing, such as was applied in the courts below in Palm Beach County in relation to Robert H. and Marsha G. Rivernider, where the documents submitted to the Court clearly demonstrated that the Foreclosure Plaintiffs were NOT part of any chain of title in violation of Florida "Holder in Due Course" Law.

The judicially adopted substantive and/or procedural norm adopted in *MERS v. Azize*, 965 So. 2d 151 (Florida Second District Court of Appeals, 2007). and applied throughout Florida over the past two years violates the civil rights guarantee of equal rights to make and enforce contracts, with all the benefits of common law limitations implicitly therein, enshrined by the Federal Statutes 42 U.S.C. §§1981, 1982, 1983, and 1988(a).

The Constitutional Power of the Federal Courts to enjoin uconstitutional substantive or procedural norms of decision in state courts, fostered by state actions taken as a matter of custom, practice, or policy having the effect of law, Federal Court

*Plaintiffs' Application for Temporary Restraining Order against Sale*
Final Typescript Edited, Prepared, and Reviewed by CEAL IV

4

injunctions against state court proceedings is affirmed and expressly authorized by the terms of 42 U.S.C. §§1983, 1988(a) as analyzed and construed by *Mitchum v. Foster,* 407 U.S. 225; 92 S. Ct. 2151; 32 L. Ed. 2d 705 (1972). *Mitchum v. Foster* clarified and build on the foundation of prior Supreme Court holdings mentioned supra in *Dombrowski v. Pfister*, 380 U.S. 479; 85 S.Ct. 1116; 14 L.Ed.2d 22 (1965) and *Younger v. Harris,* 401 U.S. 37; 91 S. Ct. 746; 27 L.Ed.2d 669 (1971).

Although the Supreme Court has not recently addressed the question of Federal Injunctions against State Court proceedings as a remedy for systemic and systematic violations of civil rights, the "extraordinary pro-injunction trilogy" of *Dombrowski, Younger, Mitchum* has never been overruled or even (directly) questioned, although the so-called *Rooker-Feldman* doctrine allegedly limiting Federal Jurisdiction to take action regarding subjects pending in state courts has received more ink in recent decisions. It is plain, however, that *Rooker-Feldman* does not limit the power of Federal Courts to hear challenges that the state judiciary has become corrupted by direct or indirect financial influence, and Plaintiffs herein allege that the State Courts of Florida, at least in the context of the present mortgage foreclosure crisis, have become subservient to the whims and wishes of the mortgage finance/servicing/and foreclosure industries.

The clearest statement is from the UNITED STATES COURT Seventh Circuit that "the claim that a defendant in a civil rights suit so far succeeded in corrupting the state judicial process as to obtain a favorable judgment is not barred by the *Rooker-Feldman* doctrine." *Loubser v. Thacker* , 440 F.3d 439 (7th Cir. 2006), see also *Mannix v. Machnik,* 244 Fed. Appx. 37 (7th Cir. 2007): *Mitchum v. Foster* was affirmed by *Pennzoil v. Texaco*, which clarified than in truly extraordinary circumstances, such as the

*Plaintiffs' Application for Temporary Restraining Order against Sale*
Final Typescript Edited, Prepared, and Reviewed by CEAL IV

5

present mortgage foreclosure crisis, where mass loss of property to tens of thousands of people is threatened by anti-constitutional state judicial procedural and substantive norms, Federal intervention is proper.

Rule 65(b), Fed.R.Civ.P. expressly authorizes this Court to impose and extend the duration of a **Temporary Restraining Order** *"for a like period"* upon *"good cause shown,"* or *"for a longer period"* upon the *"consent"* of the enjoined party.

Plaintiffs are seeking a **temporary restraining order** and injunctive relief from this Court to enforce their rights as demonstrated in their Complaint for Quiet Title. Plaintiffs are entitled to that relief because Defendants, US Bank and C-Bass Mortgage committed violations of TILA, and FSA 494.0038, any one of which entitles Plaintiffs to damages, rescission, offsets, and loan modifications. Those items require further discovery in **order** to demonstrate the requisite likelihood of success. However, as even a single violation of TILA'S material disclosure provisions justifies an off set, there is a high likelihood of success on the merits.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

1.     Plaintiffs Robert H. Rivernider, Marsha G. Rivernider and Charles Edward Lincoln III have filed a complaint to undo the **foreclosure,** stop the impending judicial **foreclosure** sale, and give them back title to their property. The evidence will show that US Bank has not fully identified the ACTUAL beneficiary of the Trust and Trustee's sale they intend to carry out on Monday, August 31, 2009, and did not follow the Florida **foreclosure** statutes because it did not identify itself or anyone else as the beneficiary under the published deed of trust. Accordingly, Plaintiffs assert that they have absolutely

*Plaintiffs' Application for Temporary Restraining Order against Sale*
Final Typescript Edited, Prepared, and Reviewed by CEAL IV

6

no real idea who is the beneficiary of the sale (see "Notice of Sale" attached as **EXHIBIT A**).

2.      As set forth herein, the Notice of Sale, fails to provide a legal description of the real property to be foreclosed upon. Such failure is a fatal defect of the notice, and any **foreclosure** thereunder is invalid as a matter of law.

3.      Material misstatements allow a court to void a trustee's sale. *Angell v. Superior Court,* 73 Cal.App.4th 691, 699-700 (1999); *Little v. CFS Service Corp.,* 188 Cal.App.3d 1354, 1360 (1987). Plaintiffs contend that they are unaware of who the possible beneficiary really is.

4.      This statement is crucial, as the beneficiary determines when a default has occurred and what the homeowner can do to cure it. *In re Maisel,* 378 B.R. 19, 21-22 (Bankr. D. Mass. 2007); *In re Nosek,* 386 B.R. 374, 380 (Bankr. D. Mass. 2008). A homeowner who finds himself in default wants to contact the entity that has the power to deal with his loan. It thus is vital that the Notice of Sale identify the *actual* beneficiary.

5.      The Plaintiffs contend that the actual beneficiary is contested, that they believe any alleged beneficiary does not possess the original Note regarding the property in question and that they have no right to foreclose.

6.      The Plaintiffs have accordingly filed a Complaint for Quiet Title, formally contesting the validity of US Bank or the beneficiaries of some sort of trust between these parties and US Bank's claim to title.  Plaintiffs contend that they DO NOT KNOW WHO THE BENEFICIARY IS and that this action must be stayed until they can make sure whomever US Bank is representing is actually the holder in due course. Subsequently they accordingly apply for a Temporary Restraining Order barring the Defendants from

*Plaintiffs' Application for Temporary Restraining Order against Sale*
Final Typescript Edited, Prepared, and Reviewed by CEAL IV

7

moving in on something the Plaintiffs allege is NOT THEIRS.

7.    Plaintiffs can only speculate that named Defendant C-BASS MORTGAGE

LOAN ASSET-BACKED CERTIFICATES (here on referred to as "C-Bass"), is the

possible beneficiary of any sale. They add them as Defendants in an effort to "connect the

dots".

### PLAINTIFFS HAVE A COMPELLING CASE ON THE MERITS

8.    Through their Complaint for Quiet Title Plaintiffs outline in detail a likelihood of

success proving that neither Defendant has a right to foreclose; due to C-Bass' almost

certain inability to prove that they are the holders in due course of the original lending

note as well as US Bank as their acting agent.

9.    *There is currently* the question of who legally has the power to begin the

foreclosure over this property (as outlined by Plaintiffs' Complaint) on the Rivernider's

home. As one court has held, "those parties who do not hold the note or mortgage and

who do not service the mortgage do not have standing to pursue motions for relief or

other actions arising from the mortgage obligation." *In re Nosek*, 386 B.R. at 380; *In re

Schwartz*, 366 B.R. 265, 270 (Bankr. D. Mass. 2007). Another court ruled, "The plaintiff

must show that it is the holder of the note and the mortgage at the time the [foreclosure]

complaint was filed. The foreclosure plaintiff must also show, at the time the foreclosure

action is filed, that the holder of the note and mortgage is harmed, usually by not having

the received payments on the note.  [*13]  " *In re Foreclosure Cases*, 521 F.Supp.2d 650,

653 (S.D. Ohio 2007).

10.    These cases follow an old rule of promissory note law-only the owner or "holder"

of a note can enforce it. "'Holder' with respect to a negotiable instrument, means the

*Plaintiffs' Application for Temporary Restraining Order against Sale*
Final Typescript Edited, Prepared, and Reviewed by CEAL IV

8

person in possession if the instrument is payable to the bearer. . . . The term 'holder' is similarly defined when used in connection with a mortgage. . . (mortgage holder is 'one to whom property is mortgaged; the mortgage creditor or lender.'" *In re Nosek*, 386 B.R. at 380, *quoting* M.G.L.A. 106 § 1-201 (20), *and* BLACK'S LAW DICTIONARY, 1034 (8th ed. 2004). This rule is a logical extension of the principle that only parties to a contract can sue to enforce it. *Buckner v. Tamarin*, 98 Cal.App.4th 140, 142 (2002), *quoting Benasra v. Marciano*, 92 Cal.App.4th 987, 990 (2001).

11.     Lastly, Plaintiffs allege and submit that US Bank has committed and is continuing to commit champerty (illegal purchase of litigation rights and interests divorced from property ownership, comparable to if not equivalent with the unauthorized practice of law) by accepting servicing rights, agreeing, conspiring, and acting illegally in collusion with the Defendant C-Bass, which is itself an imperfect assignee of Plaintiffs' mortgage, from Defendant Countrywide.  Plaintiffs further allege and submit, parallel to the findings and conclusions of the Second Circuit Court of Appeals in the case of ***Love Funding v Merrill Lynch*** 556 F.3d 100 (2009) that US Bank does not, in fact have any right to foreclose because they have no right, title, or interest either in the Plaintiffs promissory note nor the mortgage contract, and so have no claim to enforce the security agreements thereby created.

12.     In summary and essence, Plaintiffs allege and submit that, US Bank lacks standing to foreclose because it is an incomplete assignee of the originators rights in the Plaintiffs' promissory note and mortgage contract, and is therefore neither holder in due course of the note, nor otherwise in privity of contract with the Plaintiffs. US Bank is a stranger, an interloper, a trespasser, an entity effectively engaged in the unauthorized

***Plaintiffs' Application for Temporary Restraining Order against Sale***
Final Typescript Edited, Prepared, and Reviewed by CEAL IV

9

practice of law due to Champerty.

## PLAINTIFFS WILL SUFFERE IRREPARABLE
## HARM DUE TO FORECLOSURE

13.     If Plaintiffs are not granted a TRO they will suffer the loss of use, benefit and

control over their property and the eviction will cause them to suffer the emotional stress

of not knowing whether or not they have one of their basic needs (a roof over head). The

Rivernider's are husband and wife with a son (7) and daughter (3) comprising a loving

family in need of basic shelter jointly.

14.     Charles Edward Lincoln, III, although now the legal property owner, understands

and affirms the Riverniders' prior equitable benefits and use of this property as a

homestead and has covenanted with the Riverniders to protect and respect their equitable

needs as tenants in his property and desires nothing more but for them to stay and work

out a payment plan with him as their landlord.

15.     The Riverniders further assert that they do not possess ready funds available to

put another deposit down on an apartment or the like, given that the stay of the sale really

means staying an impending eviction suit as well.

## THE BALANCE OF HARDSHIPS FAVORS THE RIVERNIDERS

16.     If a TRO or injunction is issued, US Bank and C-Bass are still assured of

recouping the principal and can keep the years of payments it has collected from the

Rivernider family. If US Bank or C-Bass win a judgment against the Riverniders, they

still can receive title to the home. It is fully secured. Further, plaintiffs propose only a

narrow remedy-that their case be heard in full and the foreclosure stayed until there is a

final order on the case.

17.    The Plaintiffs do not ask that title be restored to them through this TRO application; the question of title can wait for a trial on their adversarial complaint. For Plaintiffs Robert H. Rivernider and Marsha G. Rivernider, the possession of their Florida Homestead is quite literally a matter of life-and-death.

18.    Also due to a lack of anti-deficiency laws in Florida the Defendants are entitled to recoup in perceived costs more than 5 years after eviction. So if the Defendants do not think they have been satisfied in the Foreclosure process, the Defendants can claim damages even after regaining their supposed collateral.

## THE PUBLIC INTEREST FAVORS THE RIVERNIDERS

19.    The public interest is served by the protection of the borrower's home. Any seizure of a Florida Homestead for debt must be carried out only in the strictest compliance with the Florida statutes authorizing such seizures in a manner consistent with the Florida Constitution, and the Florida Courts have all but abandoned (even forbidden, as a matter of judicial custom, practice, and policy) the enforcement of their own statues, as shown in *Mortgage Elec. Registration Sys. v. Azize,* **965 So. 2d 151 (Florida Second District Court of Appeals, 2007).**

20.    A **foreclosure** sale based on falsehoods in the Notice of Default and violations of Florida **foreclosure** law undermines the public interest. The misstatements in the Notice of Default, C-Bass' inability to prove both legal ownership and equitable entitlement as required by the Florida "Holder in Due Course" Statue is the owner of the Rivernider's loan, and the narrow language of the Deed of Trust, raise serious doubts as to the validity of the **foreclosure** process and provide the necessary platform for a national mortgage strike.

21.     Furthermore, the failure of the Florida Courts (mandated as a matter of policy by cases such as *Mortgage Elec. Registration Sys. v. Azize*, 965 So. 2d 151 (Fla. 2nd DCA 2007) to enforce the plain and but very strict language of the Florida statutes proves the incompetence and corruption of the state judicial system, thus justifying Federal intervention under *Dombrowski v. Pfister* and *Younger v. Harris* to protect the Plaintiffs and tens of thousands of others similarly situated during the present foreclosure crisis:

> **§ 673.3021.  Holder in due course**
> **(1) Subject to subsection (3) and s. 673.1061(4), the term "holder in due course" means the holder of an instrument if:**
> **(a) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and**
> **(b) The holder took the instrument:**
> **1. For value;**
> **2. In good faith;**
> **3. Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;**
> **4. Without notice that the instrument contains an unauthorized signature or has been altered;**
> **5. Without notice of any claim to the instrument described in s. 673.3061; and**
> **6. Without notice that any party has a defense or claim in recoupment described in s. 673.3051(1).**
> **(2) Notice of discharge of a party, other than discharge in an insolvency proceeding, is not notice of a defense under subsection (1), but discharge is effective against a person who became a holder in due course with notice of the discharge. Public filing or recording of a document does not of itself constitute notice of a defense, claim in recoupment, or claim to the instrument.**
> **(3) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken:**
> **(a) By legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding;**
> **(b) By purchase as part of a bulk transaction not in ordinary course of business of the transferor; or**
> **(c) As the successor in interest to an estate or other organization.**

*Plaintiffs' Application for Temporary Restraining Order against Sale*
Final Typescript Edited, Prepared, and Reviewed by CEAL IV

12

(4) If, under s. 673.3031(1)(a), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.

(5) If the person entitled to enforce an instrument has only a security interest in the instrument and the person obliged to pay the instrument has a defense, claim in recoupment, or claim to the instrument that may be asserted against the person who granted the security interest, the person entitled to enforce the instrument may assert rights as a holder in due course only to an amount payable under the instrument which, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation secured.

(6) To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it. (7) This section is subject to any law limiting status as a holder in due course in particular classes of transactions.

## A TEMPORARY ORDER PENDING A HEARING SHOULD BE ISSUED

22.    Under Rule 65 (b) of the Federal Rules of Civil Procedure, a court can issue temporary restraining orders without full notice, even, under certain circumstances, ex parte. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439, (1974). Such an order here will keep Lincoln's tenants in this home until the Court can hear the case on a more developed record. If the Court is unwilling to issue a preliminary injunction now, Plaintiff requests a temporary restraining order pending a preliminary injunction hearing.

## THE RIVERNIDERS SHOULD NOT BE REQUIRED TO POST SECURITY

23.    A party seeking and obtaining a **restraining order** or other form of injunction, unless he or she makes a sufficient showing of poverty or **inability** to make **bond,** must, as a condition of the effectiveness of such injunctive **order,** be required to file a **bond,** with good and sufficient surety, to be approved by the court or clerk of the court, payable to the opposing party or parties, in the principal amount fixed by the court, and

*Plaintiffs' Application for Temporary Restraining Order against Sale*

conditioned as required by law. Sections 64.02, 64.03, Fla.Stat., F.S.A.; *Dixie Music Co. v. Pike*, 135 Fla. 671, 185 So. 441; Lewis v. Lewis, Fla.1953, 66 So.2d 260; *International Brotherhood of Teamsters, etc., v. Miami Retail Grocers,* 76 So.2d 491 (Florida 1954). See also 17 Fla.Jur., Injunctions, §§ 70, 71.

24.     FRCP Rule 65(c) requires that before a Court issues a restraining order or preliminary injunction, the applicant must provide security, in such sum as the Court deems proper. Any legitimate beneficiary US Bank represents will retain title to the West Palm Beach home until the trial on the adversary complaint; it is fully secured. That is a sufficient bond in it of itself, as the Plaintiffs themselves are unable to pay any bond sum because they themselves have no ability to pay for the bond (See Robert Rivernider's Affidavit attached as Exhibit B, and Marsha Rivernider's Affidavit attached as Exhibit C)

<u>CONCLUSION</u>

25.     The plaintiff has met all these criteria:

26.     *Irreparable Harm* - without the injunction the Plaintiffs may lose the only realistic chance they have of saving their home and offsetting any arrearages that may come from the complaint.

27.     *Likelihood of Success on the Merits* - the foregoing analysis demonstrates a substantial likelihood of success on the merits. "[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to liability." (In re Wright, 133 B.R. 704 (E.D. Pa. 1991) at 708)). "Any misgivings creditors may have about the technical nature of the requirements should be addressed to Congress or the Federal Reserve Board, not the courts. A strict interpretation furthers the congressional goal of standardizing terminology and procedures in credit transactions." (*April v. Union*

*Mortgage Co.,* 709 F.Supp. 809, 811 (N.D. Ill. 1989).

28.    *Balance of Harms* - if the injunction is not issued, the Plaintiffs may lose the

home that they have been living in for many years. If the injunction is issued, Defendant,

US Bank and its' beneficiary are still assured of recouping the principal, and still keep the

already collected years of payments from the Plaintiffs. If Defendants win a judgment

against the Plaintiffs for any excess over what it has already taken or is secured by the

injunction, it can still attach their house, so it is fully secured.

29.    *Public Interest* - the public interest is clearly served by the protection of the

borrowers' home and the judicial correction of the wrongs perpetrated by Defendants.

30.    For these reasons, Plaintiffs respectfully request that the Court issue the following

orders:

1. A **temporary restraining order** directed to US Bank and C-Bass immediately,

postponing the sale of the house in Atascadero.

2. A preliminary injunction directed to C-Bass and US Bank. immediately allowing

the Rivernider family to stay in the property pending the trial on their adversarial

complaint and judgment on that complaint, or until further order of the Court;

3. A **temporary restraining order** directed against US Bank and C-Bass

forbidding it from taking any steps to sell the Rivernider's home, transfer title, or

otherwise interfere with the Rivernider family possession and use of their home,

which will remain in effect until a hearing on a motion for a preliminary injunction;

4. A preliminary injunction directed against US Bank and C-Bass forbidding them

from taking any steps to sell the Rivernider's home, transfer title, or otherwise

interfere with the Rivernider's possession and use of the home, which will remain

in effect pending the trial on Lincoln's complaint and judgment on that complaint,

or until further order of the Court.

Respectfully submitted,

August 28th, 2009,

By: _____

Robert H. Rivernider, Plaintiff, *pro
se*
9426 Delmar Court
Wellington, Florida 33414
Plaintiffs *in propia persona*

And by: _____

Marsha G. Rivernider, Plaintiff, *pro*
9426 Delmar Court
Wellington, Florida 33414
Plaintiffs *in propia persona*

And by: _____

Charles Edward Lincoln III, Plaintiff, *pro*
9426 Delmar Court
Wellington, Florida 33414
Plaintiffs *in propia persona*

## CERTIFICATE OF SERVICE

Plaintiffs certify that a true and correct copy of this their Application for Temporary

Restraining Order has been sent via certified mail and by hand (along with the Original

Complaint for Quiet Title) to defendants C-Bass and US Bank.

By: _____

Robert H. Rivernider, Plaintiff, *pro
se*
9426 Delmar Court
Wellington, Florida 33414
Plaintiffs *in propia persona*

*Plaintiffs' Application for Temporary Restraining Order against Sale*                    16
*Final Typescript Edited, Prepared, and Reviewed by CEAL IV*

And by: _____
Marsha G. Riverrider, Plaintiff, *pro*
9426 Delmar Court
Wellington, Florida 33414
Plaintiffs *in propia persona*


And by: _____
Charles Edward Lincoln III, Plaintiff, *pro*
9426 Delmar Court
Wellington, Florida 33414
Plaintiffs *in propia persona*

# EXHIBIT A:

## *"US Bank's Notice of Sale"*

*Plaintiffs' Application for Temporary Restraining Order against Sale*
*Final Typescript Edited, Prepared, and Reviewed by CEAL IV*

18

Aug 08 09 01:32p       Bob Rivernider                          561-753-4501            p.1

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT OF
FLORIDA, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO: CA-08-026061-AW

502008CA026061XXXXMB      (AW)
U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE C-BASS MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES 2006-CB8

        Plaintiff,

vs.

MARSHA G. RIVERNIDER; ROBERT H. RIVERNIDER;
OLYMPIA MASTER ASSOCIATION, INC., and any
unknown heirs, devisees, grantees, creditors, and other
unknown persons or unknown spouses claiming by, through
and under any of the above-named Defendants,

        Defendants.

_____/

## NOTICE OF SALE

NOTICE IS HEREBY GIVEN pursuant to a Final Judgment of Foreclosure dated 8/3/2009 at10:00
PM, entered in Civil Case No.502008CA026061 XXXXMB of the Circuit Court of the Fifteenth Judicial Circuit in and
for Palm Beach County, Florida, involving U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
THE C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-CB8, Plaintiff, and
Defendants, MARSHA G. RIVERNIDER; ROBERT H. RIVERNIDER; OLYMPIA MASTER
ASSOCIATION, INC., and any unknown heirs, devisees, grantees, creditors, and other unknown persons or
unknown spouses claiming by, through and under any of the above-named Defendants,.

I will sell to the highest and best bidder for cash, Room 1, 2406 First Floor of the Judicial Center,
and are held at 10:00am, in Palm Beach County at 205 N. Dixie Highway, West Palm Beach, Florida,
Florida, at 10:00 o clock a.m., on the __31__ day of __August__, 2009, the following described
property as set forth in said Final Judgment, to wit:

        Lot 1363, Block E, of OLYMPIA-PLAT II, according to the Plat therof,
        as recorded in Plat Book 98, Page 1, of the Public Records of Palm Beach,
        County, Florida.

Any person or entity claiming an interest in the surplus, if any, resulting from the foreclosure sale, other
than the property owner as of the date of the Lis Pendens, must file a claim on same with the Clerk of Court
within 60 days after the foreclosure sale.

DATED this __4__ day of __August__, 2009.

In accordance with the Americans With Disabilities Act, persons with disabilities needing a special accommodation to participate in this proceeding should contact the Administrative Office of the Court, 205 N. Dixie Highway, West Palm Beach, FL 33401, (561) 355-2431, not later than seven (7) days prior to the proceeding. If hearing impaired, (TDD) 1-800-955-8771, or Voice (V) 1-800-955-8770, via Florida Relay Service.

SHARON R BOCK

Clerk of Circuit Court

(COURT SEAL)

By _____ Kathy A Hender
         Deputy Clerk

BILL: DefaultLink, Inc.
       Attn: Publication Department
       3317 NW 10th Terrace, Suite 403
       Ft. Lauderdale, FL 33309
       (972) 239-3777

Attorney for Plaintiff:
Butler & Hosch, P.A.
3185 S. Conway Rd., Ste. E
Orlando, Florida 32812

Publish In:     Palm Beach Daily Business Review
                On (dates) _____
                August 13 and August 20, 2009

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT OF
FLORIDA, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO: CA-08-026061-AW
    502008CA 026061 XXXXMB
U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE C-BASS MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES 2006-CB8

      Plaintiff,

vs.

MARSHA G. RIVERNIDER; ROBERT H. RIVERNIDER;
OLYMPIA MASTER ASSOCIATION, INC., and any
unknown heirs, devisees, grantees, creditors, and other
unknown persons or unknown spouses claiming by, through
and under any of the above-named Defendants,

      Defendants.

_____/

## SUMMARY FINAL JUDGMENT FOR FORECLOSURE

**THIS ACTION** came before the Court on Plaintiff's Motion for Summary Final Judgment and the
Court, based upon the state of the record at the time of the hearing, finds that there is no material issue of fact
or law and grants plaintiff's motion.  It is therefore

### IT IS ORDERED AND ADJUDGED:

1. **JURISDICTION OVER THE PARTIES AND SUBJECT MATTER:**

This Court has jurisdiction over foreclosure cases pursuant to Florida Statutes.  Service of process has
been secured upon all Defendants personally or by constructive service.

2. **THE DEBT AND ITS VALIDITY:**

Plaintiff holds a lien for the total sum in this final judgment which is superior, prior, and paramount to
the right, title, interest, claims, liens, encumbrances and equities of the following Defendants: MARSHA G.
RIVERNIDER; ROBERT H. RIVERNIDER; OLYMPIA MASTER ASSOCIATION, INC., and any unknown
heirs, devisees, grantees, creditors, and other unknown persons or unknown spouses claiming by, through and
under any of the above-named Defendants, and all persons claiming any interest since the filing of the Lis
Pendens on the following real property:

      Lot 1363, Block E, of OLYMPIA-PLAT II, according to the Plat therof,
as recorded in Plat Book 98, Page 1, of the Public Records of Palm Beach,
County, Florida.

## 2.1 **FLORIDA STATUTE § 720.3085(2):**

Olympia Master Association, Inc. is named as a party Defendant due to a potential homeowners association Claim of Lien or any rights it may have pursuant to Florida Statute Chapter 720. The mortgage which is being foreclosed is a recorded first mortgage. Pursuant to Florida Statutes Chapter 720 the Plaintiff's lien is superior to any title and interest to any homeowners assessments except for those unpaid dues which are not to exceed twelve months unpaid assessments or 1% of the original principal balance of the mortgage, whichever is less.

3. **THIS JUDGMENT IS AGAINST, Marsha G. Rivernider in rem and AS RECORD TITLE OWNERS TO THE REAL PROPERTY HEREIN DESCRIBED.** All other Defendants' interests are in the form of inferior liens to Plaintiff's Note and Mortgage. As such said liens are extinguished subject to any statutory right of redemption as outlined further in this Final Judgment. Additionally Defendants' interests may be brought into this action for possible deficiency regarding the subject Note and Mortgage, which this Court reserves jurisdiction to enter at a later date upon subsequent motion and hearing.

4. **ATTORNEY'S FEES:**

The mortgage provides for Plaintiff's attorney's fees. Plaintiff has retained an attorney. The Court **finds $1,200.00 as a reasonable attorney's fee,** as set forth on said attorney's Affidavit. Plaintiff has filed a supporting attorney's fee Affidavit by an independent attorney. The hourly fee of $175.00 is a reasonable hourly fee. Below is the total fee awarded pursuant to **Florida Patient's Compensation Fund v. Rowe,** 472 So2d 1145 (Fla. 1985).

5. **DAMAGES:**

There is now due and owing to Plaintiff, by Defendant Marsha G. Rivernider under the note and mortgage sued upon herein, the following sums of money, to-wit:

| | |
|---|---|
| **PRINCIPAL BALANCE DUE** | $725,021.83 |
| Court Costs Due | $ 934.15 |
| Late Fees | $ 837.18 |
| Property inspections | $ 43.50 |
| BPO | $ 400.00 |
| Expert Affidavit Fee | $ 15.00 |
| **Sub Total** | $727,251.66 |
| | |
| PLUS REASONABLE ATTORNEY'S FEES | $ 1,200.00 |
| | |
| Interest on Principal Balance From 4/01/2008 To 5/24/2009 (Interest Per Diem $177.46) | $ 74,355.34 |

Interest on Principal Balance
From 5/25/2009 To 8/3/2009
($177.46 per diem x 71 days)                                    $ 12,599.66

**TOTAL DUE**                                                   **$815,406.66**

## 6. ADDITIONAL COSTS & ADVANCES:

Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if the Plaintiff is not the purchaser of the real property for sale. If Plaintiff is the purchaser, the clerk shall credit plaintiff's bid with the total sum with interest and cost accruing subsequent to this judgment, and in accordance thereof, or such part of it, as is necessary to pay the bid in full.

## 7. CLERK'S SALE:

If the total sum with 8% interest pursuant to Florida Statutes 55.03 and all costs accrued subsequent to this judgment are not paid, the clerk of this court shall sell the real property at public sale on the _3 1_ day of _August_, 2009, to the highest bidder for cash, except the Plaintiff as prescribed in this final judgment, **Room 1, 2406 First Floor of the Judicial Center, and are held at 10:00am, in Palm Beach County at 205 N. Dixie Highway, West Palm Beach, Florida,** in accordance with section 45.031, Florida Statutes. If Plaintiff is the successful bidder at foreclosure sale it has the right to assign its bid by filing an Assignment of Bid form naming the party to which the bid has been assigned. The Clerk of the Circuit Court is to issue the Certificate of Title in accordance with Plaintiff's Assignment of Bid.

Plaintiff is hereby given leave to bid at said sale and to apply against any bid made by it the amount found to be due Plaintiff in this Final Judgment. If, subsequent to the date of Plaintiff's Affidavit of Indebtedness and prior to the foreclosure sale, Plaintiff shall be required to advance any monies to protect its mortgage lien, then Plaintiff or its attorneys shall so certify to the Clerk of this Court, and the amount found due to Plaintiff shall be increased by the amount of such advances with further order of the Court. Section 45.031(2) F.S. requires that the high bidder post with the Clerk a deposit equal to five percent of the final bid. However, if the Plaintiff or its assignee is the successful bidder, they are excluded from the deposit requirement. In the event that the successful bidder fails to place the requisite deposit in accordance with Florida Statutes with the Clerk, said bid is void. Additionally, if the final payment is not made within the prescribed period, the clerk shall readvertise the sale and pay all costs of the sale from the deposit in accordance with Florida Statutes. Any remaining funds shall be applied toward the judgment.

7.1. RIGHT OF REDEMPTION: The right of redemption of any Defendant other than the United States of America is terminated upon the issuance of the Certificate of Sale by the Clerk of Court pursuant to the provisions of Florida Statutes Chapter 45. If the United States of America is a Defendant, it shall be accorded its right of redemption pursuant to 28 U.S.C. Sec. 2410 (c), from the date of the foreclosure sale.

8.    **CLERK'S DISBURSEMENT**: On the filing certificate of title, the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of plaintiff's costs; second plaintiff's attorney fees; third; the total sum due to plaintiff, less the items paid, plus interest at the rate prescribed in Florida Statutes Chapter 55.03 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this court.

**If this property is sold at public auction, there may be additional money from the sale after payment of persons who are entitled to be paid from the sale proceeds pursuant to this Final Judgment.**

Subordinate lienholders claiming a right to funds remaining after the sale, must file a claim with the clerk no later than 60 days after the sale. If a subordinate lienholder fails to file a claim, said lienholder will not be entitled to any remaining funds.

If you are the property owner, you may claim these funds yourself. You are not required to have a lawyer or any other representation and you do not have to assign your rights to anyone else in order for you to claim any money to which you are entitled. Please check with the clerk of the court, Palm Beach County Clerk of Court, Palm Beach County Courthouse, Attn: Circuit Civil, FORECLOSURE DIVISION, 205 N. Dixie Highway, Room 3.2300, West Palm Beach, FL 33401-4667, within ten (10) days after the sale to see if there is additional money from the foreclosure sale that the clerk has in the registry of the court.

If you decide to sell your home or hire someone to help you claim the additional money, you should read very carefully all papers you are required to sign, ask someone else, preferably an attorney who is not related to the person offering to help you, to make sure that you understand what you are signing and that you are not transferring your property or the equity in your property without the proper information. If you cannot afford to pay an attorney, you may contact Legal Aid Society of Palm Beach County, Inc. at (561) 655-8944 to see if you qualify financially for their services. If they cannot assist you, they may be able to refer you to a local bar referral agency or suggest other options. If you choose to contact Legal Aid Society of Palm Beach County, Inc. for assistance, you should do so as soon as possible after receipt of this notice.

9.    **CERTIFICATE OF TITLE:**  On filing the certificate of title the defendants in this action as mentioned above and all persons claiming under or against said defendants since the filing of the lis pendens shall be foreclosed of all estate or claim in the real property and the purchaser at the sale shall be let into possession of the property.

    9.1    If Plaintiff is the purchaser at the sale, Plaintiff, its heirs, representatives, successors or assigns, shall be placed in immediate possession of the aforedescribed premises upon issuance of the Certificate of Title. In the event the Defendants fail to vacate said premises within ten days of the date of the issuance of the Certificate of Title, with further Order from the Court, the Clerk of the Court is hereby directed to issue a Writ of Possession upon application for same by Plaintiff for the premises located 9246 Delemar Court, Wellington, FL 33414.

10. **COMPLIANCE WITH FLORIDA STATUTES CHAPTER 55:**

Pursuant to Florida Statutes Chapter 55 the following is the address of the Plaintiff: c/o its servicing agent: 4828 Loop Central Drive, Houston, TX 77081.

## 11. RETENTION OF JURISDICTION:

This Court retains jurisdiction for the purpose of making any further orders that are proper including, without limitation, writs of possession and deficiency judgments and any judgments as may be necessary and appropriate herein.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida this _3rd_ day of _August_ , 2009.

_____
Circuit Judge

Copies furnished:

Lauren Ann Cascino, Esquire
BUTLER & HOSCH, P.A.
3185 South Conway Road, Suite E
Orlando, Florida 32812
Attorney for Plaintiff

Marsha G. Rivernider
9246 Delemar Court
Wellington, FL 33414

Robert H. Rivernider
9246 Delemar Court
Wellington, FL 33414

Robert C. Martin, Esquire
Martin & Bennis, P.A.
319 SE 14th Street
Ft. Lauderdale, FL 33316-1929
Attorney for Defendant Olympia Master Association, Inc.

# *EXHIBIT B:*

## *"Robert Rivernider's Affidavit In Support of TRO"*

Marsha G. Rivernider
Robert H. Rivernider
Charles Edward Lincoln, III
9426 Delmar Court
Wellington, Florida 33414
Plaintiffs *in propia persona, pro se*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA---PALM BEACH

| | | |
|---|---|---|
| MARSHA G. RIVERNIDER, | § | |
| ROBERT H. RIVERNIDER, | § | |
| CHARLES EDWARD LINCOLN, III, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Case No. _____ |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| AS TRUSTEE FOR THE C-BASS | § | |
| MORTGAGE LOAN ASSET-BACKED | § | |
| CERTIFICATES, SERIES 2006-CBS, | § | COMPLAINT FOR DAMAGES |
| And all JOHN & JANE DOES 1-50 | § | Trial-by-Jury |
| Demanded | | |
|     Defendants. | § | according to FRCP Rule 38 |
| | § | and the Seventh Amendment |

§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§

## AFFIDAVIT IN SUPPORT OF TRO

1. My name is Robert H. Rivernider and I make this affidavit in support of my application for Temporary Restraining Order, which I filed in the Southern District of Florida, Palm Beach Division. I have personal knowledge of the facts I am about to state and, if called on to do so, I can competently testify to those facts.

2. I am above the age of 18, have never been convicted of a felony nor do I currently have or ever had any diagnosed mental disease of any kind.

3. I, along with my wife, Marsha G. Rivernider, own the house located at 9426 Delmar Court Wellington, Florida 33414.

4. I lived in the house, renting it for a year and a half before my wife and I bought it in April of 2006, obtaining the loan from CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION.

5. The property was accordingly homesteaded in the same month (April 2006).

6. In January 2008 I lost my job, along with my wife Marsha and have had no outside income of any meaningful kind, subsequently leaving me unable to pay my mortgage.

7. I have filed suit in US District Court along with an Application for TRO stating the facts of the case and the fraud I believe the Defendants US Bank, et al, have perpetrated against me and my family.

8. I allege in my Complaint for Quiet Title and my TRO that US Bank, as trustee for an unknown beneficiary has not provided any evidence that they have the Original Note I signed with Challenge Financial Investors, Corp. I believe because of this deficiency they have no right to foreclose, transfer or sell my home.

9. US Bank has failed to properly cite the beneficiary of any sale they might fraudulently conduct.

10. I do not have sufficient funds to pay bond, as I have no meaningful income and must take care of my family first: feeding my two children: my son (7) and my daughter (3) and my wife Marsha.

11. I make this affidavit under penalty of perjury and the laws of the United States,
    Further affiant sayeth naught,

Robert H. Rivernider
**9426 Delmar Court**
**Wellington, Florida 33414**

*Robert Rivernider's Affidavit In Support of TRO*                    2

## JURAT

Marsha G. Rivernider appeared before me in person with the above and forgoing

Affidavit on this the ⎯28⎯ day of August 2009.



_____
NOTARY REPUBLIC, PALM BEACH COUNTY, FLORIDA

_A C Yokenavitch_
PRINTED NAME OF NOTARY

_May 17 2011_
MY COMMISSION EXPIRES

A C YOKENAVITCH
Notary Public, State of Florida
Commission# DD696508
My comm. expires May 17, 2011

# EXHIBIT C:

## *"Marsha Rivernider's Affidavit In Support of TRO"*

*Plaintiffs' Application for Temporary Restraining Order against Sale*
*Final Typescript Edited, Prepared, and Reviewed by CEAL IV*

20

Marsha G. Rivernider
Robert H. Rivernider
Charles Edward Lincoln, III
9426 Delmar Court
Wellington, Florida 33414
Plaintiffs *in propia persona, pro se*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA---PALM BEACH

| | | |
|---|---|---|
| MARSHA G. RIVERNIDER, | § | |
| ROBERT H. RIVERNIDER, | § | |
| CHARLES EDWARD LINCOLN, III, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Case No. _____ |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| AS TRUSTEE FOR THE C-BASS | § | |
| MORTGAGE LOAN ASSET-BACKED | § | |
| CERTIFICATES, SERIES 2006-CBS, | § | COMPLAINT FOR DAMAGES |
| And all JOHN & JANE DOES 1-50 | § | Trial-by-Jury |
| Demanded | | |
|     Defendants. | § | according to FRCP Rule 38 |
| | § | and the Seventh Amendment |
| §§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§ | | |

### AFFIDAVIT IN SUPPORT OF TRO

1. My name is Marsha G. Rivernider and I make this affidavit in support of my application for Temporary Restraining Order, which I filed in the Southern District of Florida, Palm Beach Division. I have personal knowledge of the facts I am about to state and, if called on to do so, I can competently testify to those facts.

2. I am above the age of 18, have never been convicted of a felony nor do I currently have or ever had any diagnosed mental disease of any kind.

3. I, along with my husband, Robert H. Rivernider, own the house located at 9426 Delmar Court Wellington, Florida 33414.

4. We both lived in the house, renting it for a year and a half before my husband and I bought it in April of 2006, obtaining the loan from CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION.

*Robert Rivernider's Affidavit In Support of TRO*                    1

5. The property was accordingly homesteaded in the same month (April 2006).

6. In January 2008 I lost my job, along with my husband Robert and have had no outside income of any meaningful kind, subsequently leaving my husband and I both unable to pay our mortgage.

7. I have filed suit in US District Court along with an Application for TRO stating the facts of the case and the fraud I believe the Defendants US Bank, et al, have perpetrated against my family.

8. I allege in my Complaint for Quiet Title and my TRO that US Bank, as trustee for an unknown beneficiary has not provided any evidence that they have the Original Note I signed with Challenge Financial Investors, Corp. I believe because of this deficiency they have no right to foreclose, transfer or sell my home.

9. US Bank has failed to properly cite the beneficiary of any sale they might fraudulently conduct.

10. I do not have sufficient funds to pay bond, as I have no meaningful income and must take care of my family first: feeding my two children: my son (7) and my daughter (3).

11. I make this affidavit under penalty of perjury and the laws of the United States, Further affiant sayeth naught,

*Marsha G. Rivernider*
Marsha G. Rivernider
**9426 Delmar Court**
**Wellington, Florida 33414**

## JURAT

Bob H. Rivernider appeared before me in person with the above and forgoing Affidavit

on this the 28 day of August 2009.

_____

NOTARY REPUBLIC, PALM BEACH COUNTY, FLORIDA

ACYukenavitch

PRINTED NAME OF NOTARY

May 17 2011

MY COMMISSION EXPIRES

A C YUKENAVITCH
Notary Public, State of Florida
Commission# DD698508
My comm. expires May 17, 2011