UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA – PALM BEACH

MARSHA G. RIVERNIDER,
ROBERT H. RIVERNIDER, and
CHARLES EDWARD LINCOLN, III

CASE 09-81255-CIV
HON. DIMITROULEAS

Plaintiff,

vs.

U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE C-BASS MORTGAGE
LOAN ASSET-BACKED CERTIFICATES,
SERIES 2006-CB8, and all JOHN & JANE
DOES 1-10,



FILED by _____ D.C.

SEP 1 5 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

Defendants.

_____/

## DEFENDANT'S RESPONSE IN OPPOSITION
## TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

COMES NOW the Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-CB8 (hereinafter "U.S. Bank"), by and through its undersigned attorney, and hereby files this its Response in Opposition to Plaintiff's Application for Temporary Restraining Order, and, in support thereof, would state:

1.      The party seeking the injunction must demonstrate (1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir.1991).

2.      Plaintiffs' Complaint challenges the entire State of Florida's judicial process in foreclosure actions.

B&H # 264251.001

3.      And, as a result, the Plaintiffs improperly invoked the Federal Court system in an effort to enjoin Defendant from executing on a valid Judgment granted in favor of Defendant against the RIVERNIDER Plaintiffs in State Court based on independent state grounds.

4.      There is no chance for Plaintiffs' success in this matter as Plaintiff RIVERNIDER's contractual claims are barred by res judicata, Plaintiff LINCOLN's contractual claims are barred by lack of standing, and because the non-contractual claims fail to state a claim against Defendant upon which relief could be granted.

5.      As such, the request for restraining order should be denied and this matter should be dismissed as to Defendant U.S. Bank.

## STATEMENT OF FACTS

This matter arises out of a Note and Mortgage executed by Plaintiff, MARSHA RIVERNIDER and Plaintiff ROBERT RIVERNIDER (as to the Mortgage only), on April 24, 2006 in the amount of $729,000. The Mortgage was recorded in the Official Records Book 20296, Page 1660 of Palm Beach County, Florida. Subsequently in 2006, the note and mortgage were assigned to Defendant U.S. Bank National Association as Trustee for the C-Bass Mortgage Loan Asset-Backed Certificates, Series 2006-CB8. Marsha Rivernider defaulted under the terms of the Note and Mortgage by failing to make the monthly installment, which came due on May 1, 2008. As a result, Defendant U.S. Bank commenced foreclosure proceedings. Summary Final Judgment of Foreclosure was granted in the Circuit Court for Palm Beach County, on August 3, 2009. The Circuit Court retained jurisdiction for the purpose of making any further orders in the foreclosure matter. (**Exhibit A**) The Court set the foreclosure sale for August 31, 2009. In the Circuit Court case, the RIVERNIDER's filed an Emergency Motion to Set Aside Default and Vacate Summary

Judgment and to Stay or Suspend Order of Sale. The Motion was heard and denied by Hon. Jack Schramm Cox of Palm Beach Circuit Court, on August 31, 2009 (**Exhibit B**).

In light of that denial, Plaintiffs' filed a Petition for Bankruptcy, which necessarily stayed the foreclosure sale under the Bankruptcy code. (**Exhibit C**). The foreclosure sale did not take place on August 31, 2009. On September 11, 2009, the Bankruptcy Petition was dismissed with prejudice. (**Exhibit D**). The underlying Circuit Court case is no longer stayed and U.S Bank can proceed to foreclosure sale on the subject property.

The instant Complaint is Plaintiffs' third judicial forum to obstruct U.S. Bank's efforts to obtain foreclosure relief as a result of Plaintiff MARSHA RIVERNIDER's failure to make mortgage payments for nearly a year and a half (1½ years).

Incidentally, three (3) days before the filing of this Complaint and Motion, and nearly a month after Foreclosure Judgment was entered against Plaintiff RIVERNIDER, Ms. Rivernider executed a Warranty Deed to Plaintiff LINCOLN. That post-Judgment transfer is fraudulent and an attempt to avoid Defendant's res judicata argument by creating a Plaintiff that DID NOT EXIST in the original foreclosure action. In light of this, and the $10.00 consideration allegedly paid by Plaintiff LINCOLN for the Deed, does not render him a bonafide purchase or give any protections that would arise therefrom.

## MEMORANDUM OF LAW

The Complaint in the instant matter was filed on August 28, 2009 challenging the State of Florida's judicial process in granting foreclosures and seeks to obtain injunctive relief preventing the execution of a Judgment awarded to Defendant on the same Note and Mortgage challenged in this instant lawsuit.

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of prevailing on the merits at the final hearing; (2) irreparable harm to be suffered by the one seeking the injunction if the stay is denied; (3) that the issuance of the preliminary injunction would be in the public interest; and (4) that there is no manifest danger of substantial harm to other parties. *United States v. Lambert,* 695 F.2d 536 (11th Cir.1983), *Hamblin Testing Labratories v. United States Atomic Energy Commission,* 337 F.2d 221 (6th Cir.1964). In this case, Plaintiffs cannot prevail on any of the above-required standards.

## I.   **LIKELIHOOD OF SUCCESS**

The Plaintiffs in this matter fail to show a likelihood of success for 3 reasons: (1) the claims against Defendant U.S. Bank are barred by Res Judicata and collateral estoppel, (2) Defendant LINCOLN has no standing to challenge the Note and Mortgage between U.S. Bank and the Riverniders, and (3) because the Complaint fails to state a claim against U.S. Bank upon which relief could be granted.

### (A)   **RES JUDICATA/COLLATERAL ESTOPPEL**

Plaintiffs MARSHA and ROBERT RIVERNIDER's claims are barred in this case due to res judicata and collateral estoppel.

Res Judicata is claim preclusion, which prevents a party from raising any claims arising out of an event that was already subject to a previous cause of action. Under *res judicata,* a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94(1980), citing *Cromwell v. County of Sac,* 94 U.S. 351 (1876). In this matter, final judgment was issued on the merits in Palm Beach Circuit Court case #50 2008 CA 026061 AW, between Plaintiff, U.S. Bank National Association as Trustee for the C-Bass Mortgage Loan Asset-Backed Certificates Series

2006-CB8 and Defendants Marsha and Robert Rivernider. Final Judgment was issued on the contract dispute arising out of the Mortgage recorded in the Official Records Book 20296, Page 1660 of Palm Beach County, Florida on property described as:

> **Lot 1363, Block E, of OLYMPIA-PLAT II, according to the Plat**
> **thereof as recorded in Plat Book 98, Page 1, of the Public Records**
> **of Palm Beach, County Florida.**

The instant Complaint arises out of the same contractual dispute on the same property between the same parties to which Judgment was entered after full and fair opportunity to be heard. (See service of process, **Exhibit E**).

Further, Res Judicata applies to claims where there has been a final judgment, which is no longer subject to appeal. Judgment in this matter was granted on August 3, 2009 (Exhibit A). Pursuant to the Florida Rules of Appellate Procedure 9.110b, the time period for commencement of appeal is 30 days from Judgment sought to be appealed. Plaintiffs did not file an appeal within 30 days of August 3, 2009 and under the Rules of Appellate Procedure, the Judgment is no longer subject to appeal.

Because this same contractual dispute, between the same parties regarding the same property has already been decided after full and fair opportunity to be heard, without timely appeal, this matter is barred by Res Judicata. As such, the likelihood of success by Plaintiffs MARSHA RIVERNIDER and ROBERT RIVERNIDER on the instant Complaint is nil and the Motion for Restraining Order should be denied

Collateral Estoppel is issue preclusion that prevents a party from raising facts and/or law that has already been determined by a Judge. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90

at 94 (1980), citing *Montana v. United States,* 440 U.S. 147 (1979). The *Allen* Court and other courts have often recognized, "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* at 153-154. Plaintiffs in this matter are attempting to use this Court as a new forum to challenge U.S. Bank's standing to maintain the foreclosure action in the Palm Beach Circuit Court matter (case #50 2008 CA 026061 AW). However, U.S. Bank's standing to bring that matter was already decided by the Palm Beach Circuit Court pursuant to the laws of the State of Florida.

Further, Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so: "[J]udicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State. . . ." 28 U.S.C. § 1738 as cited by *Allen v. McCurry*, 449 U.S. 90 at 96 (1980).

Pursuant to the U.S. Supreme Court findings in *Allen* and pursuant to the Full Faith and Credit Clause of the U.S. Constitution, this Complaint is barred by res judicata and collateral estoppel rendering the likelihood if success on the instant Complaint nil. Thus, the Motion for Restraining Order should be denied.

**(B)    LACK OF STANDING**

Plaintiffs RIVERNIDER deeded this property to Plaintiff LINCOLN nearly a month AFTER Judgment of Foreclosure was granted in Defendant U.S Bank's favor *(and 3 days before this Complaint was filed)*. Plaintiff MARSHA RIVERNIVER's Warranty Deed to Plaintiff LINCOLN dated August 25, 2009 is a fraudulent transfer and does not give Plaintiff LINCOLN standing to assert any claims in this matter.

To establish standing, a plaintiff must have "suffered an injury-in-fact that would be corrected by [a] favorable decision in the lawsuit." *Cheffer v. McGregor,* 6 F.3d 705, 708 (11th Cir.1993). Absent a redressable injury, a judicial determination of a plaintiff's claim would amount to an advisory opinion prohibited by Article III's case and controversy requirement. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471-72, 102 S.Ct. 752, 757-58, 70 L.Ed.2d 700 (1982). Plaintiff LINCOLN does not have standing in this matter, as he was not a party to the note or mortgage whose enforcement is being disputed by Plaintiffs RIVERNIDER.

To maintain a cause of action arising out of a contract dispute, one must have privity of contract. *Sumitomo Corp. of Amer. v. M/V St. Venture*, 683 F.Supp. 1361 (M.D. Fla. 1998), citing *Black's Law Dictionary* (1957). The doctrine of privity in contract law provides that a contract cannot confer rights or impose obligations arising under it on any person or agent except the parties to it. *MacPherson v. Buick Motor Co.*, 217 N.Y. 382 (1916). The premise is that only parties to contracts should be able to sue to enforce their rights or claim damages as such.

The claims in this matter as asserted against Defendant, U.S. Bank arise out of the contract between the Riverniders and U.S. Bank's assignors. Essentially, for Plaintiff LINCOLN to maintain this cause of action against Defendant (which arises out of the Note and Mortgage recorded in the Official Records Book 20296, Page 1660 of Palm Beach County, Florida), LINCOLN must be a party to the note or mortgage. However, there is no contractual relationship between Plaintiff LINCOLN and the current or previous owner of the Note and Mortgage in this matter and there is no benefit or burden of the Note and mortgage that could have been be transferred to LINCOLN as a third-party. (See Note and Mortgage, **Exhibit E**).

To the extent Plaintiffs RIVERNIDER Deeded their interest in the property to Plaintiff LINCOLN, that fraudulent transfer did not create any rights or obligations under the Note and Mortgage between the owner of the Note/Mortgage and Plaintiff LINCOLN. There is quite plainly, no dispute between the Plaintiff LINCOLN and Defendant.

Because there is no privity between the parties and no transferable benefit, Plaintiff LINCOLN lacks standing to bring this cause of action against U.S. Bank and Plaintiff LINCOLN has failed to state a claim upon which relief could be granted. As such, the likelihood of success by Plaintiff LINCOLN on the instant Complaint is nil and the Motion for Restraining Order should be denied.

### (C)     FAILURE TO STATE A CLAIM AGAINST U.S. BANK

Plaintiff's Complaint challenges the Florida legal system in its ability to render decisions in a foreclosure matter. In support, Plaintiffs allege "collusion of the Florida Courts" which contributed to the "destr[uction of] the US economy." Plaintiffs seek declaratory Judgment proclaiming endorsements on Notes actually violate Florida law and challenges the entire securitization process of negotiable instruments across the country. Further, Plaintiffs allege "that Florida law...empowered Judges to exceed their jurisdiction so as to violate the civil rights of property owners in foreclosure disputes." The Complaint is essentially a demand that this Federal Court review the precedential decisions of the Florida State Court system in foreclosure matters as Plaintiffs claim Florida State Courts are "utterly incapable of policing themselves."

Quite clearly, Defendant, U.S. Bank is not the property party against whom these court system allegations should be brought. There are no facts, case law or statute raised in the Complaint or Motion for Restraining Order that give rise to the cause of action alleged in the Complaint. Plaintiffs' challenges to the Florida legal system are improperly applied to Defendant U.S. Bank.

There is no ruling by this court against this Defendant on Plaintiffs' challenge of the State Judicial system that would provide any relief to Plaintiffs on these claims. As such, these allegations fail to state a claim upon which relief could be granted so this Complaint should be dismissed under the Federal Rules of Civil Procedure 12(b)(6). Failure to comply with Rule 12(b)(6), renders the likelihood of success on this Complaint nil. Therefore, the Motion for Restraining Order should be denied.

## II.   IRREPARABLE HARM

The Eleventh Circuit has stressed that "[a] showing of irreparable injury is the sine qua non of injunctive relief" and that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Muhammad v. HSBC Bank USA, N.A.*, WL 256275 (S.D. Ala., February 3, 2009), citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000).

The Court in *Muhammad* was faced with deciding if a temporary restraining order should be issued to stop a foreclosure sale. The *Muhammad* foreclosure sale was cancelled prior to the restraining order hearing. In light of the temporary cancellation of the foreclosure sale, the Court determined that the plaintiff did not state a prima facie case for preliminary injunctive relief. Specifically, plaintiff was unable to adequately show the presence of immediate, irreparable harm to warrant the court's issuance of a Temporary Restraining Order. *Id*. WL 256275. Similarly, the Plaintiffs in this case are seeking to restrain Defendant from proceeding with a foreclosure sale that was set for August 31, 2009 but cancelled due to Plaintiff's Bankruptcy filing. Clearly, that sale date has already passed and no sale took place. As in *Muhammad*, the immediate harm is no longer present. Therefore, the request for restraining order should be denied for failure to adequately show the presence of immediate, irreparable harm.

III.   **BALANCE OF HARM TO THE PARTIES v PUBLIC INTEREST**

The balance of the harm element requires that Plaintiff establish that the harm suffered in the absence of an injunction outweighs the harm that might befall the non-moving party if the injunction is granted. *Tillman v Miller*, 917 F.Supp. 799, (N.D. Ga. 1995). The focus is on any harm that will occur between the grant of the injunction and a final trial on the merits. *Id.* at 810, citing *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983).

Currently, there is no foreclosure sale pending. As such, Plaintiffs cannot show any harm that will occur between the granting of injunction and the final order in this matter. As it stands, Plaintiffs' RIVERNIDER have actually benefited in this matter as they have received 17 months of rent-free living in a $720,000 home at Defendant's expense.

IV.   **CONCLUSION**

Plaintiffs will be unable to succeed on the merits of their Complaint as their claims are barred by res judicata, lack of standing, and failure to state a claim upon which relief could be granted. Further, Plaintiffs cannot show immediate irreparable injury or that the balance of harm tips in their favor. As such, any request for injunctive relief including a restraining order, must be denied.

WHEREFORE Plaintiff requests this Honorable Court to deny the Application for Temporary Restraining Order filed by Plaintiffs.

Beth A. Norrow, Esquire
BUTLER & HOSCH, P.A.
3185 South Conway Road, Suite E
Orlando, Florida 32812
Telephone:  (407) 381-5200
Fax:  (407) 381-5577
Florida Bar No: 61497

CASE NO:    CA-08-026061-AW

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was furnished by U.S. Mail this _14th_ day of _September_ 2009 to:

Marsha G. Rivernider
9246 Delemar Court
Wellington, FL 33414

Robert H. Rivernider
9246 Delemar Court
Wellington, FL 33414

Charles Edward Lincoln, III
603 Elmwood Place, Suite 6
Austin, TX 78705

Beth A. Norrow, Esquire
BUTLER & HOSCH, P.A.
3185 South Conway Road, Suite E
Orlando, Florida 32812
Telephone: (407) 381-5200
Fax: (407) 381-5577
Florida Bar No: 61497

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT OF
FLORIDA, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO: CA-08-026061-AW
        502008CA 026061 XXXXMB
U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE C-BASS MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES 2006-CB8

        Plaintiff,

vs.

MARSHA G. RIVERNIDER; ROBERT H. RIVERNIDER;
OLYMPIA MASTER ASSOCIATION, INC., and any
unknown heirs, devisees, grantees, creditors, and other
unknown persons or unknown spouses claiming by, through
and under any of the above-named Defendants,

        Defendants.
_____/

## SUMMARY FINAL JUDGMENT FOR FORECLOSURE

**THIS ACTION** came before the Court on Plaintiff's Motion for Summary Final Judgment and the
Court, based upon the state of the record at the time of the hearing, finds that there is no material issue of fact
or law and grants plaintiff's motion.  It is therefore

**IT IS ORDERED AND ADJUDGED:**

1. **JURISDICTION OVER THE PARTIES AND SUBJECT MATTER:**

This Court has jurisdiction over foreclosure cases pursuant to Florida Statutes.  Service of process has
been secured upon all Defendants personally or by constructive service.

2. **THE DEBT AND ITS VALIDITY:**

Plaintiff holds a lien for the total sum in this final judgment which is superior, prior, and paramount to
the right, title, interest, claims, liens, encumbrances and equities of the following Defendants: MARSHA G.
RIVERNIDER; ROBERT H. RIVERNIDER; OLYMPIA MASTER ASSOCIATION, INC., and any unknown
heirs, devisees, grantees, creditors, and other unknown persons or unknown spouses claiming by, through and
under any of the above-named Defendants, and all persons claiming any interest since the filing of the Lis
Pendens on the following real property:

        **Lot 1363, Block E, of OLYMPIA-PLAT II, according to the Plat therof,**
        **as recorded in Plat Book 98, Page 1, of the Public Records of Palm Beach,**
        **County, Florida.**

**EXHIBIT A**

### 2.1 FLORIDA STATUTE § 720.3085(2):

Olympia Master Association, Inc. is named as a party Defendant due to a potential homeowners association Claim of Lien or any rights it may have pursuant to Florida Statute Chapter 720. The mortgage which is being foreclosed is a recorded first mortgage. Pursuant to Florida Statutes Chapter 720 the Plaintiff's lien is superior to any title and interest to any homeowners assessments except for those unpaid dues which are not to exceed twelve months unpaid assessments or 1% of the original principal balance of the mortgage, whichever is less.

3. **THIS JUDGMENT IS AGAINST, Marsha G. Rivernider in rem and AS RECORD TITLE OWNERS TO THE REAL PROPERTY HEREIN DESCRIBED.** All other Defendants' interests are in the form of inferior liens to Plaintiff's Note and Mortgage. As such said liens are extinguished subject to any statutory right of redemption as outlined further in this Final Judgment. Additionally Defendants' interests may be brought into this action for possible deficiency regarding the subject Note and Mortgage, which this Court reserves jurisdiction to enter at a later date upon subsequent motion and hearing.

4. **ATTORNEY'S FEES:**

The mortgage provides for Plaintiff's attorney's fees. Plaintiff has retained an attorney. The Court **finds $1,200.00 as a reasonable attorney's fee,** as set forth on said attorney's Affidavit. Plaintiff has filed a supporting attorney's fee Affidavit by an independent attorney. The hourly fee of $175.00 is a reasonable hourly fee. Below is the total fee awarded pursuant to **Florida Patient's Compensation Fund v. Rowe**, 472 So2d 1145 (Fla. 1985).

5. **DAMAGES:**

There is now due and owing to Plaintiff, by Defendant Marsha G. Rivernider under the note and mortgage sued upon herein, the following sums of money, to-wit:

| | |
|---|---|
| **PRINCIPAL BALANCE DUE** | $725,021.83 |
| Court Costs Due | $ 934.15 |
| Late Fees | $ 837.18 |
| Property inspections | $ 43.50 |
| BPO | $ 400.00 |
| Expert Affidavit Fee | $ 15.00 |
| **Sub Total** | $727,251.66 |
| | |
| PLUS REASONABLE ATTORNEY'S FEES | $ 1,200.00 |
| | |
| Interest on Principal Balance | |
| From 4/01/2008 To 5/24/2009 | $ 74,355.34 |
| (Interest Per Diem $177.46) | |

Interest on Principal Balance
From 5/25/2009 To 8/3/2009                               $ 12,599.66
($177.46 per diem x 71 days)

**TOTAL DUE**                                           **$815,406.66**

## 6.  ADDITIONAL COSTS & ADVANCES:

Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if the Plaintiff is not the purchaser of the real property for sale. If Plaintiff is the purchaser, the clerk shall credit plaintiff's bid with the total sum with interest and cost accruing subsequent to this judgment, and in accordance thereof, or such part of it, as is necessary to pay the bid in full.

## 7.  CLERK'S SALE:

If the total sum with 8% interest pursuant to Florida Statutes 55.03 and all costs accrued subsequent to this judgment are not paid, the clerk of this court shall sell the real property at public sale on the _31_ day of _August_, 2009, to the highest bidder for cash, except the Plaintiff as prescribed in this final judgment, **Room 1, 2406 First Floor of the Judicial Center, and are held at 10:00am, in Palm Beach County at 205 N. Dixie Highway, West Palm Beach, Florida,** in accordance with section 45.031, Florida Statutes. If Plaintiff is the successful bidder at foreclosure sale it has the right to assign its bid by filing an Assignment of Bid form naming the party to which the bid has been assigned. The Clerk of the Circuit Court is to issue the Certificate of Title in accordance with Plaintiff's Assignment of Bid.

Plaintiff is hereby given leave to bid at said sale and to apply against any bid made by it the amount found to be due Plaintiff in this Final Judgment. If, subsequent to the date of Plaintiff's Affidavit of Indebtedness and prior to the foreclosure sale, Plaintiff shall be required to advance any monies to protect its mortgage lien, then Plaintiff or its attorneys shall so certify to the Clerk of this Court, and the amount found due to Plaintiff shall be increased by the amount of such advances with further order of the Court. Section 45.031(2) F.S. requires that the high bidder post with the Clerk a deposit equal to five percent of the final bid. However, if the Plaintiff or its assignee is the successful bidder, they are excluded from the deposit requirement. In the event that the successful bidder fails to place the requisite deposit in accordance with Florida Statutes with the Clerk, said bid is void. Additionally, if the final payment is not made within the prescribed period, the clerk shall readvertise the sale and pay all costs of the sale from the deposit in accordance with Florida Statutes. Any remaining funds shall be applied toward the judgment.

7.1. RIGHT OF REDEMPTION: The right of redemption of any Defendant other than the United States of America is terminated upon the issuance of the Certificate of Sale by the Clerk of Court pursuant to the provisions of Florida Statutes Chapter 45. If the United States of America is a Defendant, it shall be accorded its right of redemption pursuant to 28 U.S.C. Sec. 2410 (c), from the date of the foreclosure sale.

8.  **CLERK'S DISBURSEMENT**: On the filing the certificate of title, the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of plaintiff's costs; second plaintiff's attorney fees; third; the total sum due to plaintiff, less the items paid, plus interest at the rate prescribed in Florida Statutes Chapter 55.03 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this court.

**If this property is sold at public auction, there may be additional money from the sale after payment of persons who are entitled to be paid from the sale proceeds pursuant to this Final Judgment.**

B&H # 264251

Subordinate lienholders claiming a right to funds remaining after the sale, must file a claim with the clerk no later than 60 days after the sale. If a subordinate lienholder fails to file a claim, said lienholder will not be entitled to any remaining funds.

If you are the property owner, you may claim these funds yourself. You are not required to have a lawyer or any other representation and you do not have to assign your rights to anyone else in order for you to claim any money to which you are entitled. Please check with the clerk of the court, Palm Beach County Clerk of Court, Palm Beach County Courthouse, Attn: Circuit Civil, FORECLOSURE DIVISION, 205 N. Dixie Highway, Room 3.2300, West Palm Beach, FL 33401-4667, within ten (10) days after the sale to see if there is additional money from the foreclosure sale that the clerk has in the registry of the court.

If you decide to sell your home or hire someone to help you claim the additional money, you should read very carefully all papers you are required to sign, ask someone else, preferably an attorney who is not related to the person offering to help you, to make sure that you understand what you are signing and that you are not transferring your property or the equity in your property without the proper information. If you cannot afford to pay an attorney, you may contact Legal Aid Society of Palm Beach County, Inc. at (561) 655-8944 to see if you qualify financially for their services. If they cannot assist you, they may be able to refer you to a local bar referral agency or suggest other options. If you choose to contact Legal Aid Society of Palm Beach County, Inc. for assistance, you should do so as soon as possible after receipt of this notice.

9.   **CERTIFICATE OF TITLE:**   On filing the certificate of title the defendants in this action as mentioned above and all persons claiming under or against said defendants since the filing of the lis pendens shall be foreclosed of all estate or claim in the real property and the purchaser at the sale shall be let into possession of the property.

9.1   If Plaintiff is the purchaser at the sale, Plaintiff, its heirs, representatives, successors or assigns, shall be placed in immediate possession of the aforedescribed premises **upon issuance of the Certificate of Title.** In the event the Defendants fail to vacate said premises within ten days of the date of the issuance of the Certificate of Title, **with further Order from the Court, the Clerk of the Court is hereby directed to issue a Writ of Possession upon application for same by Plaintiff** for the premises located9246 Delemar Court, Wellington, FL 33414.

10. **COMPLIANCE WITH FLORIDA STATUTES CHAPTER 55:**

Pursuant to Florida Statutes Chapter 55 the following is the address of the Plaintiff: c/o its servicing agent: 4828 Loop Central Drive, Houston, TX 77081.

B&H # 264251

## 11. RETENTION OF JURISDICTION:

This Court retains jurisdiction for the purpose of making any further orders that are proper including, without limitation, writs of possession and deficiency judgments and any judgments as may be necessary and appropriate herein.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida this 3rd day of _August_, 2009.

_____
Circuit Judge

Copies furnished:

Lauren Ann Cascino, Esquire
BUTLER & HOSCH, P.A.
3185 South Conway Road, Suite E
Orlando, Florida 32812
Attorney for Plaintiff

Marsha G. Rivernider
9246 Delemar Court
Wellington, FL 33414

Robert H. Rivernider
9246 Delemar Court
Wellington, FL 33414

Robert C. Martin, Esquire
Martin & Bennis, P.A.
319 SE 14th Street
Ft. Lauderdale, FL 33316-1929
Attorney for Defendant Olympia Master Association, Inc.

B&H # 264251

264251

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA.

CASE NO.:  502008CA026061 AW

US BANK, NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE C-BASS MORTGAGE
LOAN ASSET-BACKED CERTIFICATES,
SERIES 2006-CBS,

      Plaintiff,

vs.

MARSHA G. RIVERNIDER, ROBERT
H. RIVERNISDER, OLYMPIA MASTER
ASSOCIATION, INC.,

      Defendant.

_____/

### ORDER ON EMERGENCY MOTION TO SET ASIDE DEFAULT AND TO VACATE SUMMARY JUDGMENT AND TO STAY OR SUSPEND ORDER OF SALE SET FOR AUGUST 31, 2009

      THIS MATTER came on before the Court on Defendant's Emergency Motion to Set Aside Default and to Vacate Summary Judgment and to Stay or Suspend Order of Sale Set for August 31, 2009.  Administrative Order 2.004-12/00 defines the term "emergency" as "...matters of life and death or instances of irreparable harm." The grounds stated in the emergency motion do not meet the aforesaid definition. Accordingly, it is

      ORDERED that the Defendant's Emergency is **denied** as an emergency.  The Defendant's Emergency Motion may be set for hearing in Division "AW" in the normal course with proper notice.

      DONE AND ORDERED in Chambers, West Palm Beach, Palm Beach County, Florida this _____ day of August 2009.

SIGNED & DATED

AUG 3 1 2009

_____
JUDGE JACK SCHRAMM COX
JACK S. COX
Circuit Judge

copies furnished:
Lauren Ann Cascino, Esq., Butler & Hosh PA, 3185 S. Conway Rd., Ste E, Orlando FL 32812;
Robert H. Rivernider, 9246 Delemar Court, Wellington FL 33414;
Marsha G. Rivernider, 9246 Delemar Court, Wellington FL 33414

**EXHIBIT** $\mathcal{B}$

B 1 (Official Form 1) (1/08)

| United States Bankruptcy Court<br>Southern District of Florida | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>Rivernider, Jr., Robert Henry | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all):<br>xxx-xx-9815 | Last four digits of Soc. Sec. or Indvidual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>9246 Delemar Court<br>Wellington, FL<br>ZIP CODE 33414 | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>Palm Beach | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☑ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other<br>Internet sales | ☐ Chapter 7    ☐ Chapter 15 Petition for<br>☐ Chapter 9         Recognition of a Foreign<br>☐ Chapter 11       Main Proceeding<br>☐ Chapter 12    ☐ Chapter 15 Petition for<br>☑ Chapter 13       Recognition of a Foreign<br>                          Nonmain Proceeding |

| | Tax-Exempt Entity<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box.)<br>☑ Debts are primarily consumer    ☐ Debts are primarily<br>debts, defined in 11 U.S.C.          business debts.<br>§ 101(8) as "incurred by an<br>individual primarily for a<br>personal, family, or house-<br>hold purpose." |
|---|---|---|

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☐ Full Filing Fee attached.<br><br>☑ Filing Fee to be paid in installments (applicable to individuals only). Must attach<br>signed application for the court's consideration certifying that the debtor is<br>unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to<br>insiders or affiliates) are less than $2,190,000.<br>--------------------------------------------------------------<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes<br>of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR<br>COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for<br>distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | Over<br>100,000 |

Estimated Assets

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

EXHIBIT 



B 1 (Official Form 1) (1/08)                                                                                    Page 2

| **Voluntary Petition** *(This page must be completed and filed in every case.)* | Name of Debtor(s): |
|---|---|

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location Where Filed: | Case Number: | Date Filed: |
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor: | Case Number: | Date Filed: |
|---|---|---|
| District: Southern District of Florida | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)  ☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>    Signature of Attorney for Debtor(s)      (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and Exhibit C is attached and made a part of this petition.

☑  No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐  Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐  Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| B 1 (Official Form) 1 (1/08) | Page 3 |
|---|---|
| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s): |

| Signatures | |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____Rclnt it (_____
    Signature of Debtor

X _____
    Signature of Joint Debtor
    **561-315-2487**
    Telephone Number (if not represented by attorney)

    Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
    (Signature of Foreign Representative)

    (Printed Name of Foreign Representative)

    Date

**Signature of Attorney***

X _____
    Signature of Attorney for Debtor(s)

    Printed Name of Attorney for Debtor(s)

    Firm Name

    Address

    Telephone Number

    Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

    Robert Henry Rivernider, Jr.
    Printed Name and title, if any, of Bankruptcy Petition Preparer
    ██████9815
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

    9246 Delemar Court, Wellington, Fl. 33414
    Address

X _____Rclnt it R_____ _____
    8-31-2009
    Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
    Signature of Authorized Individual

    Printed Name of Authorized Individual

    Title of Authorized Individual

    Date

CGFD4 (9/19/08)



**ORDERED in the Southern District of Florida on September 11, 2009**

**Erik P. Kimball**
United States Bankruptcy Judge

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 09-28264-EPK**
**Chapter: 13**

**In re:** *(Debtor(s) name(s) used by the debtor(s) in the last 8 years, including married, maiden, and trade)*

Robert Henry Rivernider Jr.
9246 Delemar Ct
Wellington, FL 33414

SSN: xxx-xx-9815

## ORDER DISMISSING CASE FOR FAILURE OF DEBTOR TO CORRECT FILING DEFICIENCY

The above referenced case was filed on **August 31, 2009** and was deficient as indicated below:

The petition was not accompanied by a service matrix as required pursuant to Local Rule 1007-2(A) prepared in the format required by the "Clerk's Instructions for Preparing, Submitting and Obtaining Service Matrices" or was otherwise deficient.

*Page 1 of 2*

A Notice was issued by the clerk directing the debtor to correct the above noted deficiency(ies) not later than September 8, 2009. The debtor has failed to comply with this notice.

It is **ORDERED** that:



VERIFIED RETURN OF SERVICE
ROBERT H. RIVERNIDER

CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT          CASE: 502008CA026061XXXXMB
PALM BEACH COUNTY, FLORIDA                          CIVIL DIVISION

US BANK NATIONAL ASSOCIATION AS          30 DAY SUMMONS AND COMPLAINT
TRUSTEE FOR THE C-BASS MORTGAGE LOAN

vs.

MARSHA G. RIVERNIDER, ET AL

Pursuant to the request of Erin Amate Zebell, Esquire, 3185 S. Conway Road, Orlando, FL.
DEFAULT LINK, INC., received this process on August 29, 2008 at 06:00 P.M.

I, CHRISTINA WILKOF served same on ROBERT H. RIVERNIDER, at 9246 DELEMAR COURT,
WELLINGTON, FL 33414 on AUGUST 30, 2008 at 01:54 P.M.

INDIVIDUAL SERVICE

By serving the within named person a copy of the above named document(s). FS 48.031(1)

COMMENTS

DEFENDANT IS MARRIED TO: MARSHA RIVERNIDER

MILITARY STATUS: Based upon inquiry of party served, defendant is not in the military
service of the United States.

I ACKNOWLEDGE that I am authorized to serve process, in good standing in the
jurisdiction wherein this process was served and I have no interest in the above action.

Under penalties of perjury, I          DEFAULT LINK, INC.
declare that I have read the           3317 NW 10TH TERRACE SUITE 403
forgoing document and that the facts   OAKLAND PARK, FL 33309
stated in it are true.                 OFFICE (954) 563-3677
September 2nd, 2008

CHRISTINA WILKOF 1190

INDEX    13317
FILE NO 264251

EXHIBIT E

## VERIFIED RETURN OF SERVICE
## MARSHA G. RIVERNIDER

CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT          CASE: 502008CA026061XXXXMB
PALM BEACH COUNTY, FLORIDA                          CIVIL DIVISION

US BANK NATIONAL ASSOCIATION AS          30 DAY SUMMONS AND COMPLAINT
TRUSTEE FOR THE C-BASS MORTGAGE LOAN

vs.

MARSHA G. RIVERNIDER, ET AL

Pursuant to the request of Erin Amate Zebell, Esquire, 3185 S. Conway Road, Orlando, FL.
DEFAULT LINK, INC., received this process on August 29, 2008 at 06:00 P.M.

I, CHRISTINA WILKOF served same on **MARSHA G. RIVERNIDER**, at 9246 DELEMAR COURT,
WELLINGTON, FL 33414 on AUGUST 30, 2008 at 01:54 P.M.

### SUBSTITUTE SERVICE RESIDENCE

By serving a copy of the above document(s) to the defendant's usual place of abode on a
person permanently residing therein, to wit, **ROBERT RIVERNIDER (CO-RESIDENT
(HUSBAND))**, who is 15 years of age or older and informing the person of the contents. FS
48.031(1)(a).

**MILITARY STATUS:** Based upon inquiry of party served, defendant is not in the military
service of the United States.

I **ACKNOWLEDGE** that I am authorized to serve process, in good standing in the
jurisdiction wherein this process was served and I have no interest in the above action.

Under penalties of perjury, I          **DEFAULT LINK, INC.**
declare that I have read the           **3317 NW 10TH TERRACE SUITE 403**
forgoing document and that the facts   **OAKLAND PARK, FL 33309**
stated in it are true.                 **OFFICE (954) 563-3677**
September 2nd, 2008

CHRISTINA WILKOF 1190

INDEX   13316
FILE NO 264251



IN THE CIRCUIT COURT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO:     CA-08-026061-AW

U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE C-BASS MORTGAGE
LOAN ASSET-BACKED CERTIFICATES,
SERIES 2006-CB8

      Plaintiff,

vs.

MARSHA G. RIVERNIDER; ROBERT H.
RIVERNIDER; UNKNOWN TENANT I;
UNKNOWN TENANT II; OLYMPIA MASTER
ASSOCIATION, INC., and any unknown heirs,
devisees, grantees, creditors, and other unknown
persons or unknown spouses claiming by, through
and under any of the above-named Defendants,

      Defendants.
_____/

## NOTICE OF HEARING FOR SUMMARY FINAL JUDGMENT
## AND AWARDING OF ATTORNEY'S FEES

    PLEASE TAKE NOTICE that on **8/3/2009 2:30 PM**, or as soon thereafter as counsel can be heard, the undersigned will bring on to be heard the Motion for Summary Final Judgment in Foreclosure and Awarding of Plaintiff's Attorney's Fees, before the **Honorable Jack H. Cook**, in Chambers in the Courthouse in Palm Beach County, Florida, Palm Beach County Courthouse Courtroom 4B 205 N. Dixie Highway West Palm Beach, FL 33401.

    DATED: March_____10_____, 2009.

                          _____
                          Erin Amate Zebell, Esquire
                          BUTLER & HOSCH, P.A.
                          3185 South Conway Road, Suite E
                          Orlando, Florida 32812
                          Telephone: (407) 381-5200
                          Fax: (407) 381-5577
                          Florida Bar No: 0028702

In accordance with the Americans With Disabilities Act, persons with disabilities needing a special accommodation to participate in this proceeding should contact the Administrative Office of the Court, 205 N. Dixie Highway, West Palm Beach, FL 33401, (561) 355-2431, not later than seven (7) days prior to the proceeding. If hearing impaired, (TDD) 1-800-955-8771, or Voice (V) 1-800-955-8770, via Florida Relay Service.

NOTE: PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT YOU ARE ADVISED THAT THIS LAW FIRM IS DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Case No.: CA-08-026061-AW

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was furnished by U.S. Mail this ____10th____ day of March 2009 to:

Marsha G. Rivernider
9246 Delemar Court
Wellington, FL 33414

Robert H. Rivernider
9246 Delemar Court
Wellington, FL 33414

Robert C. Martin, Esquire
Martin & Bennis, P.A.
319 S.E. 14th Street
Ft. Lauderdale, FL 33316-1929
Attorney for Defendant  Olympia Master Association, Inc.


_____
Erin Amate Zebell, Esquire
BUTLER & HOSCH, P.A.
3185 South Conway Road, Suite E
Orlando, Florida 32812
Telephone:  (407) 381-5200
Fax:  (407) 381-5577
Florida Bar No: 0028702

IN THE CIRCUIT COURT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO: CA-08-026061-AW

U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE C-BASS MORTGAGE
LOAN ASSET-BACKED CERTIFICATES,
SERIES 2006-CB8

      Plaintiff,

vs.

MARSHA G. RIVERNIDER; ROBERT H.
RIVERNIDER; OLYMPIA MASTER
ASSOCIATION, INC., and any unknown heirs,
devisees, grantees, creditors, and other unknown
persons or unknown spouses claiming by, through
and under any of the above-named Defendants,

      Defendants.
_____/

## NOTICE OF FILING ORIGINAL NOTE AND MORTGAGE

The attorney for Plaintiff, hereby files the following:

    1.  The original **Note** and **Mortgage**.

        Dated: July _____, 2009.

Lauren Ann Cascino
BUTLER & HOSCH, P.A.
3185 South Conway Road, Suite E
Orlando, Florida 32812
Attorney for Plaintiff
Telephone: (407) 381-5200
Fax: (407) 381-5577
Florida Bar No. 0058339

**EXHIBIT F**

Loan Number: 1007470658

# ADJUSTABLE RATE BALLOON NOTE

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

APRIL 24, 2006          ST. PETERSBURG          FLORIDA
[Date]                              [City]                              [State]

9246 DELEMAR COURT, WELLINGTON, FLORIDA 33414
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 729,000.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       8.925  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the    1st    day of each month beginning on JUNE 1 2006      . My monthly payments will be based on an assumed  40     -year amortization period (the "Amortization Period"). I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

DocMagic *eForms*  800-649-1362
www.docmagic.com

Loan Number: 1007470658

# ADJUSTABLE RATE BALLOON NOTE

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| APRIL 24, 2006 | ST. PETERSBURG | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

9246 DELEMAR COURT, WELLINGTON, FLORIDA 33414
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 729,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.925 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on JUNE 1 2006 . My monthly payments will be based on an assumed 40 -year amortization period (the "Amortization Period"). I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2036 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 5,581.17 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of MAY, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 300/1000 percentage point(s) ( 6.300 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.425 % or less than 8.925 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 500/1000 percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.925 %. My interest rate will never be less than 8.925 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

NCMC - ADJUSTABLE RATE BALLOON NOTE (FL)
RE-519  01/18/06                    Page 2 of 5                    DocMagic *eForms* 800-649-1362
www.docmagic.com

## 5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15      calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be     5.000 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

NCMC - ADJUSTABLE RATE BALLOON NOTE (FL)
RE-519  01/18/06                                        Page 3 of 5                    DocMagic *eForms* 800-649-1362
www.docmagic.com

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12.  DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Marsha G. Rivernider_ (Seal)
MARSHA G. RIVERNIDER        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

NEW CENTURY MORTGAGE CORPORATION

PAY TO THE ORDER OF:
WITHOUT RECOURSE

CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION

BY: _____

ITS: VP

Pay to the order of, without recourse
New Century Mortgage Corporation
By: _____
      Steve Nagy
      V.P. Records Management

[Sign Original Only]

NCMC - ADJUSTABLE RATE BALLOON NOTE (FL)
RE-519  01/18/06                    Page 5 of 5              DocMagic eForms 800-649-1362
                                                            www.docmagic.com

Loan Number: 1007470658

# PREPAYMENT RIDER
# ADJUSTABLE RATE LOAN

This Prepayment Rider is made this  24th  day of  APRIL 2006                and is
incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure repayment of Borrower's Note to CHALLENGE
FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION    (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note
and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such
inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and
Lender further covenant and agree as follows:

## 5.    BORROWERS RIGHT TO PREPAY
I have the right to make prepayments of principal any time before they are due. A payment of
principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder
in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of
principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the
due dates of my monthly payments unless: the Note Holder agrees in writing to those changes. My
partial prepayment may reduce the amount of my monthly payments after the first Change Date
following my partial prepayment.
If within  2     year(s) from the date of execution of the Security Instrument, I make a full
prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-
month period exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will
pay a prepayment charge in an amount equal to the payment of 6 months advance interest on the
amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY
PERCENT (20%) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Prepayment Rider.

_Marsha G. Rivernider_ _____
MARSHA G. RIVERNIDER

_____    _____

_____    _____

DocMagic € Forms 800-649-1362
www.docmagic.com

*15977291*
*NEW219*

This Instrument Prepared By: 06-6858

CFN 20060265896
OR BK 20296 PG 1660
RECORDED 05/05/2006 10:08:00
Palm Beach County, Florida
AMT 729,000.00
Deed Doc 2,551.50
Intang 1,458.00
Sharon R. Bock,CLERK & COMPTROLLE
Pgs 1660 - 1682; (23pgs)

After Recording Return To: W/C #66
CHALLENGE FINANCIAL INVESTORS, CORP.
360 CENTRAL AVENUE, SUITE 600
ST. PETERSBURG, FLORIDA 33301
Loan Number: 1007470658

TROPICAL LAND TITLE
INSURANCE AGENCY, INC.
1005 W. Indiantown Road #201
Jupiter, Florida 33458

———— [Space Above This Line For Recording Data] ————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  APRIL 24, 2006          , together with all Riders to this document.
(B)  "Borrower" is  MARSHA G. RIVERNIDER, A MARRIED WOMAN, AND ROBERT H. RIVERNIDER, HER HUSBAND,

Borrower is the mortgagor under this Security Instrument.
(C)  "Lender" is  CHALLENGE FINANCIAL INVESTORS, CORP.

Lender is a  FLORIDA CORPORATION                                                      organized and existing under the laws of  FLORIDA
Lender's address is  360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701
Lender is the mortgagee under this Security Instrument.
(D)  "Note" means the promissory note signed by Borrower and dated  APRIL 24, 2006
The Note states that Borrower owes Lender  SEVEN HUNDRED TWENTY-NINE THOUSAND AND 00/100                                         Dollars (U.S. $ 729,000.00          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  MAY 1, 2036       .
(E)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

264061

DocMagic *eFormss* 800-649-1362
www.docmagic.com

(G)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider          ☒ Planned Unit Development Rider
☐ Balloon Rider                  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Second Home Rider
☐ Condominium Rider              ☒ Other(s) [specify]
                                   ADDENDUM TO ADJUSTABLE RIDER,
                                   PREPAYMENT RIDER

(H)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)  "**Escrow Items**" means those items that are described in Section 3.

(L)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

DocMagic *eForms* 800-649-1362
www.docmagic.com

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the

|                          COUNTY                         | of |                        PALM BEACH                        | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

LOT 1363, BLOCK E, OF OLYMPIA-PLAT II, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 98, PAGE 1, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.
A.P.N.: 73424417020013630

which currently has the address of    9246 DELEMAR COURT

[Street]

WELLINGTON                    , Florida          33414          ("Property Address"):
[City]                                                    [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
    1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                    Page 3 of 15                    DocMagic eForms 800-649-1362
                                                                                                www.docmagic.com

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section

9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender

requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                    Page 6 of 15                              DocMagic *eForms* 800-649-1362
                                                                                          www.docmagic.com

are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument; including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                        Page 7 of 15                        DocMagic *eForms* 800-649-1362
                                                                                          www.docmagic.com

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                      Page 8 of 15                           DocMagic *eForms* 800-649-1362
                                                                                           www.docmagic.com

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any

---

Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                    Page 10 of 15                    DocMagic *eFormos* 800-649-1362
www.docmagic.com

If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might

result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MARSHA G. RIVERNIDER          -Borrower
9246 DELEMAR COURT,
WELLINGTON, FLORIDA 33414

_____ (Seal)
ROBERT H. RIVERNIDER          -Borrower
9246 DELEMAR COURT,
WELLINGTON, FLORIDA 33414

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Signed, sealed and delivered in the presence of:

_____
Witness: GREGG V. ABBOTO

_____
Witness:
Wendy K. Foster

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01
Page 14 of 15

DocMagic eForms 800-649-1362
www.docmagic.com

_____ [Space Below This Line For Acknowledgment] _____

STATE OF FLORIDA
COUNTY OF   PALM BEACH

    The foregoing instrument was acknowledged before me this      day of   APR **2 4** 2006
by  MARSHA G. RIVERNIDER, AND ROBERT H. RIVERNIDER

who is personally known to me or who has produced
as identification.

                                                      (Type of Identification)

_____
Signature

_____
Name of Notary

     (Seal)

_____
Title

_____
Serial Number, if any

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                    Page 15 of 15                                           DocMagic **eForms** 800-649-1362
                                                                         **www.docmagic.com**

Loan Number: 1007470658

# ADJUSTABLE RATE RIDER

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal* - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 24th day of APRIL, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

9246 DELEMAR COURT, WELLINGTON, FLORIDA 33414
(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of      8.925 %. The unpaid principal of the Note is being amortized over an assumed  40    -year period (the "Amortization Period"). The unpaid principal of the Note is fully due and payable on the maturity date of the Note. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the  1st  day of MAY, 2008 , and on that day every 6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

---

NCMC - SIX MONTH LIBOR MULTISTATE BALLOON ADJUSTABLE RATE RIDER
RE-560  01/18/06                                    Page 1 of 3                    DocMagic *eForms* 800-649-1362
www.docmagic.com

Loan Number: 1007470658

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published in *The Wall Street Journal* - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 24th day of APRIL, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to CHALLENGE FINANCIAL INVESTORS,
CORP., A FLORIDA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

9246 DELEMAR COURT, WELLINGTON, FLORIDA 33414
(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of        8.925 %. The unpaid principal of the
Note is being amortized over an assumed   40   -year period (the "Amortization Period"). The unpaid
principal of the Note is fully due and payable on the maturity date of the Note. The Note provides for
changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the   1st   day of MAY, 2008 ,
and on that day every 6th month thereafter. Each date on which my interest rate could change is called
a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

---

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND 300/1000 percentage points (    6.300 %)
to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount
will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay
the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization
Period at my new interest rate in substantially equal payments. The result of this calculation will be the new
amount of my monthly payment.

**(D) Limit on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
10.425 % or less than    8.925 %. Thereafter, my interest rate will never be increased
or decreased on any single Change Date by more than ONE AND 500/1000
percentage points (    1.500 %) from the rate of interest
I have been paying for the preceding    6    months. My interest rate will never be greater than
15.925 %. My interest rate will never be less than 8.925%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new
monthly payment beginning on the first monthly payment date after the Change Date until the amount of my
monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount
of my monthly payment before the effective date of any change. The notice will include information required
by law to be given to me and also the title and telephone number of a person who will answer any question
I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section
18, "Interest in the Property" means any legal or beneficial interest in the Property, including,
but not limited to, those beneficial interests transferred in a bond for deed, contract for deed,
installment sales contract or escrow agreement, the intent of which is the transfer of title by
Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or
if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)
without Lender's prior written consent, Lender may require immediate payment in full of all
sums secured by this Security Instrument. However, this option shall not be exercised by
Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required by Lender to
evaluate the intended transferee as if a new loan were being made to the transferee; and (b)
Lender reasonably determines that Lender's security will not be impaired by the loan
assumption and that the risk of a breach of any covenant or agreement in this Security
Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
MARSHA G. RIVERNIDER      -Borrower

_____ (Seal)
ROBERT H. RIVERNIDER      -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Loan Number: 1007470658

# ADJUSTABLE RATE RIDER ADDENDUM
## (LIBOR INDEX - RATE CAPS)

This Adjustable Rate Rider Addendum is made this 24th day of APRIL, 2006
and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the
"Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note
to CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA
CORPORATION                                                                    (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

9246 DELEMAR COURT, WELLINGTON, FLORIDA 33414
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the provisions
of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall prevail over and
supersede any such inconsistent provisions of the Note and/or Security Instrument and/or Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and
Lender further covenant and agree as follows:

**4.   (D) LIMITS ON INTEREST RATE CHANGES**
  The interest rate I am required to pay at the first Change Date will not be greater than
10.425 % or less than        8.925 %. Thereafter, my interest rate will never be
increased or decreased on any single Change Date by more than ONE AND 500/1000
                              percentage point(s) (      1.500   %) from the rate of interest
I have been paying for the preceding   6       months. My interest rate will never be greater than
15.925 % or less than      8.925 %.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable
Rate Rider Addendum.

_____ (Seal)          _____ (Seal)
MARSHA G. RIVERNIDER      -Borrower          ROBERT H. RIVERNIDER      -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

Loan Number: 1007470658

# PREPAYMENT RIDER
# ADJUSTABLE RATE LOAN

This Prepayment Rider is made this 24th day of APRIL 2006 and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

## 5. BORROWERS RIGHT TO PREPAY

**I have the right to make prepayments of principal any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless: the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.**

**If within** 2 **year(s) from the date of execution of the Security Instrument, I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of 6 months advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of the loan.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

Marsha G. Rivernider — MARSHA G. RIVERNIDER

Robt H. R— — ROBERT H. RIVERNIDER

_______________ _______________

_______________ _______________

DocMagic eForms 800-649-1362
www.docmagic.com

Loan Number: 1007470658

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 24th day of APRIL, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

9246 DELEMAR COURT, WELLINGTON, FLORIDA 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

OLYMPIA

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.  Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:  (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
MARSHA G. RIVERNIDER  -Borrower

_____ (Seal)
ROBERT H. RIVERNIDER  -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower