

**Marsha G. Rivernider**
**Robert H. Rivernider**
**9426 Delmar Court**
**Wellington, Florida 33414**
**And Charles Edward Lincoln, III**
**c/o Peyton Yates Freiman**
**603 Elmwood Place, Suite #6**
**Austin, Texas 78705**
**Or c/o Kathy Ann Garcia-Lawson**
**2620 Nature's Way**
**Palm Beach Gardens, Florida 33410**
**Telephone: 512-968-2500/512-923-1889**
**Facsimile: 561-691-1423**
Plaintiffs *in propia persona, pro se*

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA---PALM BEACH

MARSHA G. RIVERNIDER,  §
ROBERT H. RIVERNIDER,  §
CHARLES EDWARD LINCOLN, III,  §
   Plaintiffs,  §
   §
v.  §   Case No. 09-81255-CIV
   §   HON. W.P. DIMITROULEAS
U.S. BANK NATIONAL ASSOCIATION,  §
AS TRUSTEE FOR THE C-BASS  §   **PLAINTIFFS' COMBINED**
MORTGAGE LOAN ASSET-BACKED  §   **RESPONSE TO SECOND ORDER**
CERTIFICATES, SERIES 2006-CBS,  §   **TO SHOW CAUSE FILED 11-02-09**
And all JOHN & JANE DOES 1-50  §   and RESPONSE TO Defend. US BANK
   Defendants.  §   MOTION TO DISMISS FILED 9-24-09
   §   WITH RESERVATION OF RIGHT TO
§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§   FILE MOTION TO CONVERT to MSJ

## PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE and MOTION TO DISMISS

The Plaintiffs believed that they had obtained counsel to represent them in the present case, and that created a great deal of confusion and many problems. Dr. Orly Taitz, Esq., agreed to represent the Plaintiffs as shown in Exhibit A, as of October 21, 2009. Efforts were underway and continuing to obtain local counsel. Dr. Taitz did not provide 45 days for her withdrawal as specified in the letter of understanding drafted and executed at her own direction. Dr. Taitz was apparently subject to some external threats, which caused her to withdraw (see affidavit of CEL,

Exhibit B).  Plaintiffs still intend to retain counsel, but obviously, for the time being, Plaintiffs will proceed pro se/in propia persona, exactly as they initially filed this complaint 10 weeks ago.

### DO ASSIGNMENTS OF RIGHTS CONSTITUTE FRAUDULENT TRANSFERS?

Perhaps the most disturbing portions of the Motion to Dismiss and Response in Opposition to Plaintiff's Application for Temporary Restraining Order filed on behalf of Defendant U.S. Bank's (hereinafter "Defendant") are those which attack Plaintiff Lincoln's standing and allege that Robert & Marsha Rivernider's transfer of their rights to Lincoln by assignment constituted some sort of "fraud."  (See Defendant's Response in Opposition to Plaintiffs' Application for TRO, Part B, at pages 6-8 of Document filed September 14, 2009 and Part C of Defendant's Motion to Dismiss filed September 24, 2009, at page 7-10.)

To begin with, the Court should note that Defendant U.S. Bank utterly fails ever to define the term "Fraudulent Transfer" or to cite any statutory or case-law precedential authority for applying the term to Robert and Marsha Rivernider's extremely open and above-board transfer of all of their rights, title, and interest in their property, but assignment and grant of power for attorney to Charles Edward Lincoln.  And indeed, happily for the Plaintiffs in this case, Lincoln received not only a transfer of title by deed but also an assignment of rights and obligations from the Riverniders, and this assignment of rights and obligations was recorded along with the simple transfer of title by deed in the Palm Beach County records, along with a power of attorney (see Exhibits C and D).

Equally happy for Plaintiffs is a trio of cases decided in the past 16 months, three courts whose decisions are not only relevant and persuasive but binding here (namely the U.S. D.C. for the S.D. Florida, Florida Supreme Court, and U.S. Supreme Court) have rendered decisions in three cases dealing with assignment of contractual and statutory rights (such as those at issue here) which affirm the right and power of parties to assign their rights and obligations obtained or incurred during the course of litigation.

First and closest to this case in time and venue, in *Goldberg v. Paris Hilton*, the United States District Court for the Southern District of Florida (Miami Division) ruled that RIGHTS TO SUE under a contract could be assigned even where the right to assign the obligations arising from and pursuant to the contract itself might not be subject to assignment (as, for example, in the case of personal services contracts, which are normally non-assignable under general common law principles of contractual rights). Case Number 22261-CIV-MORENO, 2009 U.S. Lexis 41846, May 18, 2009).     Defendant U.S. Bank nowhere asserts that the Riverniders' rights and obligations were unassignable, either as a matter of general or specific contract law, or any specific contractual provisions.  Rather, U.S. Bank makes a great deal of noise about Plaintiff Lincoln taking with knowledge of U.S. Bank's claims and failure to pay more than nominal consideration for his rights, so as to deny Lincoln status as a "bona fide purchaser for value." Of course, this is irrelevant since Lincoln never claimed status as a bona fide purchaser for value without notice.  Defendant U.S. Bank simply ignores the question of the Riverniders' assignment and power of attorney granted to Lincoln with regard to all factual claims, and since U.S. Bank does not contest the validity of the ASSIGNMENT to Lincoln, the Court should simply rule that the assignment is valid as a matter of law.

In support of the validity of the Riverniders' assignment of claims or choses in action, Plaintiffs would cite two additional cases, one from the Florida Supreme Court and the other from the United States Supreme Court.   The case of *Wachovia Insurance v. Richard L. Toomey, etc.*, 994 So.2d 980, 2008 Fla. LEXIS 1644, 33 Fla. L. Weekly S 770 (Florida 2008) is parallel to the present matter in that a loser in underlying litigation assigned not only the judgment for liability against it, but all its rights to a third-party who was not originally a party to the litigation, namely its insurer.  The Riverniders have assigned all of their rights and liabilities to Lincoln, and the fact that Lincoln did not pay a significant amount for the privilege of assuming all of their liability pursuant to a judgment is, at the very least, understandable.

The *Wachovia Insurance* decision is particularly significant for its wide-ranging analysis of Florida law concerning assignment of rights. "Causes of action based on a contract or a statute can be assigned." 994 So.2d at 988, citing *Forgione v. Dennis Pirtle Agency, Inc.*, 701 So.2d 557, 559 (Florida 1997).   Consistent with the Southern District's holdings in the 2009 *Paris Hilton* case cited above, "purely personal" contracts for personal services (as of a famous personality or entertainer, for example) like "purely personal" tort claims for medical malpractice or intentional infliction of emotional distress are likewise unassignable. 994 So.2d at 988-9.  There is nothing even remotely personal about the obligation to pay a mortgage.  Either the mortgage is valid or it is not.  Neither is there anything even remotely personal about a corrupt state court system controlled by one class of parties to a certain widespread type of litigation or another.  Either the Florida Courts are beholden to the mortgage finance industry or they are not.  Either the Florida Courts are so riddled with corruption that they cannot be trusted to hear mortgage foreclosure cases fairly at all, or they are not (so pervasively corrupt and unfair).  For purposes of a Motion to Dismiss under 12(b)(6), where the Plaintiffs have alleged a level of corruption in the Florida Courts analogous to the pre-civil rights reformed Courts of Louisiana described in the very last instance in which the U.S. Supreme Court actually affirmed Federal injunctive relief against state courts in *Dombrowski v. Pfister*, 380 U.S. 479; 85 S.Ct. 1116; 14 L.Ed.2d 22 (1965), this U.S. District Court is required to accept the allegations of the Plaintiff's complaint as true.

The Plaintiffs' complaint provides sufficient specificity in that it is shown that in 2005, Florida Judges were still willing to enforce the common law against Mortgagees while at the present time the Florida Courts are enforcing a tidal waive of mortgage foreclosures which are plainly illegal under the terms of Florida law applied by Judge Walt Logan a mere four years ago in August 2005.   There was no foreclosure epidemic in 2005, but today there is a foreclosure epidemic, which constitutes an arguably greater threat to national stability and public welfare than the southern civil rights crisis of the 1950s and 60s, when the worst that

could be said is that positive change towards civil rights took place too slowly. Here, a negative trend away from civil rights in the deprivation of property without due process of law has moved too fast towards the extinction of private property, and now threatens the entire American way of life by the utter and complete destruction of private property in favor of corporate-governmental partnerships in owning, renting, and allocating homes to favored individuals.

On page 8 of Defendant's Motion to Dismiss, U.S. Bank has asserted, "there is no contractual relationship between Plaintiff LINCOLN and Defendant U.S. Bank or its assignors in this matter and there is no benefit of the mortgage that can be transferred to LINCOLN as a third party." This statement is quite remarkable for several reasons. First, U.S. Bank admits that its right to sue in this case derive from assignment (even though no assignments of right have ever been recorded from ANY party to U.S. Bank in the Palm Beach County records, unlike the Riverniders' express and detailed assignment of rights to LINCOLN). Second, Defendant U.S.Bank is wrong that "there is no benefit of the mortgage that can be transferred to LINCOLN as a third party. This statement without citation or explanation is obviously false!

The "benefit of mortgage" that can be (and was in fact) transferred to LINCOLN not only includes the right to use and enjoy the property (as Lincoln is currently doing by renting it to the Riverniders) but also the right to collect and retrieve any amounts due and owing from fraudulent mismanagement of the note, including fraudulent collection of payments from the Riverniders, and ultimately includes also the right to retrieve the original note from U.S. Bank, National Association, on showing either that the note has been paid in full or that it was obtained and/or maintained by fraud. Let it never be forgotten that, according to the definitions set forth in 12 U.S.C. §1813(l), a promissory note accepted by a bank is a "deposit in cash" and LINCOLN has filed suit to collect from U.S. Bank all liquidated damages to which he might be entitled under this paragraph. Suits for Collection of Debt are always assignable!

As the United States Supreme Court ruled in the third and oldest of the triad of recent cases supporting Lincoln's standing to sue in this case, there is no question that assignment of

collection rights creates standing justiciable under Article III in the Federal Courts.  *Sprint Communs. Co., L.P. v. APCC Servs.*, **128 S. Ct. 2531, 171 L.Ed.2d 424, 76 U.S.L.W. 4542, 21 Fla. L. Weekly Fed. S 411 (June 23, 2008).**

The Supreme Court simply could not have been more emphatic about the power to assign rights and duties not merely under contracts but under judgments arising from contracts. Speaking historically, the Court commented, courts of equity would simply permit an assignee with a beneficial interest in a chose in action to sue in his own name. They might, however, require the assignee to bring in the assignor as a party to the action so as to bind him to whatever judgment was reached." 128 S.Ct. 2536, 171 L.Ed.2d 432 (citations to 17th-18th Century English Law omitted)("by the beginning of the 18th century, "it became settled that equity would recognize the validity of the assignment of both debts and of other things regarded by the common law as choses in action").

Even claims against the legitimacy of a state court judicial system is recognized by common law as a "chose in action!" Further, the Court held, "Courts of law, meanwhile, would permit the assignee with an equitable interest to bring suit, but nonetheless required the assignee to obtain a "power of attorney" from the holder of the legal title, namely, the assignor, and further required the assignee to bring suit *in the name of that assignor.* " *Id.*

The Court should recognize how fastidiously the Riverniders and Lincoln have followed all the mandates of the United States Supreme Court in construing and applying the ancient common law of England to modern Article III Courts of the United States of America; the Riverniders have executed both grants of assignment and given power of attorney to Charles Edward Lincoln, satisfying the traditional common law procedural requirements for litigation of assigned claims, and so going far beyond the modern formalities of assignment held to be 100% necessary for assignments to be valid as construed under the *Sprint Communications* decision.

## STANDING, JUSTICIABILITY, AND FAILURE TO STATE A CLAIM

Defendant U.S. Bank does not cite a single case or statute in support of Part (A) of its Motion to Dismiss entitled "Failure to State a Claim against U.S. Bank" (found on a single page 4 of Document 9 in the U.S. District Clerk's Docket Report for this case filed on 9-24-09). Nor are any cases nor statutory authority cited in Part (C) of the Defendant's Response in Opposition to Plaintiffs' Application for Temporary Restraining Order at pages 5-6 of the Document of that title signed by Defense attorney for U.S. Bank, National Association, Beth A. Norrow of Butler & Hosch, P.A. on or about September 14, 2009.

In both documents, Defendant U.S. Bank seems to suggest that the State of Florida should be joined as a necessary party, but does not seek to do so. Plaintiffs contend that while state judges may have immunity to charges of civil conspiracy and even to charges of denial of the intangible right to honest services established by 18 U.S.C. §1346 (a predicate act under R.I.C.O., 18 U.S.C. §1964(c)) U.S. Bank, National Association has no such immunity, and the immunity of one possible defendant to a R.I.C.O. conspiracy (or any sort of civil conspiracy) does not preclude recovery and collection against the non-immune defendants.

Plaintiffs in fact expressly file this Combined Response to the Court's Second Order to Show Cause and Response to Motion for Leave to Amend subject to a plea of reservation of right to file Plaintiff's First Amended Complaint, alleging R.I.C.O. and other matters, within 33 days of the filing of this Response, which is to say not later than December 15, 2009.

With regard to justiciability, raised several times in Defendant's filings, there is no doubt that this Court has both the legal, declaratory, and injunctive power to render effective relief in this case. Under *Dombrowski* this court has the power to enjoining ongoing proceedings in State Court if systematic violations of fundamental federally secured civil rights can be established, as alleged, as a direct and proximate result of the application of state court rules of decision having the force and effect of law. Specifically, this Court can as an initial matter declare that the State Court proceedings AS A WHOLE were a nullity initiated by a fraud upon the Court in which

*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v. U.S. Bank, N.A.,
Combined Response to Second Order to Show Cause Filed 11-02-09 and Motion to Dismissed filed
9-24-09, with reservation of Plaintiffs' Rights to File Motion to Convert 12(b)(6) to Rule 56 MSJ*   7

U.S. Bank, National Association claimed to be legal title owner, holder in due course, and equitable beneficiary of a note to which it was, in fact a complete stranger, unable to establish the existence of any "Trust for the C-BASS Mortgage Loan Asset-Backed Certificates", no grant of trust, no assignment of rights, no chain of title whatsoever.

Second, this Court can receive evidence and may conclude, declare, and enter final judgment that the Mortgage Foreclosure industry has acquired such a stranglehold on the Florida Circuit Court system that mortgage foreclosures must be stopped all together in the Florida State Courts due to systematic bias, corruption, and denial of due process, and impairment of the obligations of contract in violation of the U.S. Constitution and 42 U.S.C. §§1981-1982 (actionable under §§1983 & 1988(a)). Third, this Court can declare and adjudge that a mortgage note, once securitized, has been paid and discharged in full, and that multiple collections would constitute unjust enrichment to the originator. Any of these results are well within the power of this Court to render judgment, and would resolve all disputes between the parties in a final and conclusive manner. (See Exhibit G: MERS Law Review).

Defendant U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-CBS is named as primary Defendant because that is the name of the bank claiming interest in Plaintiff's property, despite having submitted claims in Florida State Court which definitively determine that U.S. BANK NATIONAL ASSOCIATION is not in privity with any contract or note to which the Plaintiffs were ever a party.; U.S. Bank is a national banking association with its principal place of business in Minneapolis, Minnesota. U.S. Bank operates in a number of states throughout the United States. U.S. Bank is a subsidiary, parent and owner or otherwise an affiliate of U.S. Bancorp, 800 Nicollet Mall, Minneapolis, MN 55402 as revealed on-line at www.usbank.com.

This Court has Civil Rights Jurisdiction pursuant to 28 U.S.C. §1343, as well as by actions authorized for the protection of property pursuant to 42 U.S.C. §§1981, 1982, 1983,

and 1988(a), and it is alleged that the Courts of the State of Florida are so utterly corrupt and controlled by the United States Mortgage Finance Industry as to be incapable of policing the banking industry in the environment of the current mortgage foreclosure crisis and the associated financial meltdown, and that all foreclosure matters should be federalized by judicial fiat.

The *Younger v. Harris* doctrine of abstention which is so often invoked to override *Dombrowski v. Pfister* intervention by Federal Courts in State Court actions is utterly irrelevant and inapplicable here.  At least with regard to the mortgage foreclosure crisis, the Courts of the State of Florida are utterly incapable of policing themselves and have fallen prey to special interests, in particular the special interests of those who seek to gloss over the horrendous abuses brought on by securitization of mortgages and endorsement of promissory notes "without recourse"---both of which factors have impacted heavily on the posture of the present case.

The Court has jurisdiction over Plaintiffs' action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 (as well as 42 U.S.C. §§1983, 1988(a), and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S. C. §2203 and Rule 65 of the Federal Rules of Civil Procedure and accordingly asks for such relief in a separate Application for TRO.    Relief from void judgments obtained by fraud survives without any period of limitations under Rule 60(b)(4) and as an independent action build on the model thereof. *U.S. v. Chris W. Beggerly*, 524 U.S. 38 (1998) and *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179; 153 L.Ed. 2d 413; 2002 (2002).

Plaintiffs accordingly asserts causes of action against Defendants U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-CBS predicated on, inter alia, apparent violations of 42 U.S.C. §§1981, 1982, 1983, justifying relief pursuant to 42 U.S.C. §1988(a), as well as the federal Fair Debt Collections Act ("FDCA"), 15 U.S.C. § 1601 et seq. ("TILA");

*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v. U.S. Bank, N.A.,*
*Combined Response to Second Order to Show Cause Filed 11-02-09 and Motion to Dismissed filed*    9
*9-24-09, with reservation of Plaintiffs' Rights to File Motion to Convert 12(b)(6) to Rule 56 MSJ*

Regulation Z, 12 C.F.R. § 226 et seq.; Federal Trade Commission Act ("FTC Act"), and 15 U.S.C. § 1961 et seq.

Plaintiffs also reserve their right to amend and to assert derivative claims under Florida Civil Rights and Consumer Protection Statutes, as well as state laws prohibiting Deceptive Trade Practices, among others. In addition, this Court has jurisdiction pursuant to 28 U.S.C. §1343 (Civil Rights) insofar as Plaintiff seeks a declaratory judgment or series of three declaratory judgments pursuant to 42 U.S.C. §§1981, 1982, 1983, and 1988(a), that facially excellent and protective Florida Statutes are being administered in the Florida Courts in such a way that the common law rights to limit collection and enforcement to "holders in due course" and other privileges inherent in the common law doctrine of "privity of contract" have been all but obliterated.

Courts in Florida in cases such as that litigated by the Defendant against Plaintiffs in the state action still pending in the Circuit Court in and for Palm Beach County, Florida under case number CA-08-026061-AW gloss over the "holder in due course" and "privity of contract" doctrines in non-judicial foreclosures, accepting defendant servicer contentions (without any supporting law, precedent, or other authority whatsoever) such as "Defendants fault the complaint's allegation that an unnamed note holder does not possess the note in that there is no "obligation to produce originals of either the promissory note or deed of trust."

In fact, the obligation to produce the original note and contract has always been a key requirement of the common law of contracts, expressly upheld by Florida Courts from time immemorial and even during recent history, and this requirement is enshrined by the Florida "Holder in Due Course" statute in §673.3021, although the excuses by which lost notes are re-established under §673.3091 are often no more than ridiculous "the dog ate my homework"-type explanations.

In the state "Foreclosure" case in Palm Beach County (See Exhibit A to the Plaintiffs Application for Temporary Restraining Order, submitted with the Original Complaint in this

*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v. U.S. Bank, N.A.,*
*Combined Response to Second Order to Show Cause Filed 11-02-09 and Motion to Dismissed filed* 10
*9-24-09, with reservation of Plaintiffs' Rights to File Motion to Convert 12(b)(6) to Rule 56 MSJ*

case on August 28, 2009), U.S. Bank originally "complained for the reestablishment of" an allegedly lost note but then recently (in July 2009) announced without explanation that the note had again been "discovered". The circumstances of loss and rediscovery were never explained---and in fact they cannot be explained because the requirements of the Florida statutes, aside from possession, namely that the note cannot have been SOLD or TRANSFERRED clearly have been violated by the multiple endorsements made without recourse which do NOT lead to or include U.S. BANK, N.A. (See Exhibit E herein: Endorsed Note).

Diligent research has so far revealed no connection whatsoever between U.S. BANK NATIONAL ASSOCIATION and New Century Mortgage Corporation or Challenge Financial Investors Corporation, the sole parties whose privity with Plaintiffs Robert H. Rivernider and Marsha G. Rivernider can be demonstrated on the face of the documents submitted in state court. It is thus ironic to the point of being hilariously funny that U.S. Bank raises lack of "privity of contract" as a Defense to Charles Edward Lincoln's suit against them.

The effective abandonment of the common law by the executive and judicial branches did not come about as the result of overt democratically enacted legislative modification of the law, nor pursuant to any official governmental policy of or for the public benefit, but to enable and enrich a favored group which has profited from a non-governmental financial innovation of the late 1970s-80s known as "securitization of debt", with securitized and bundled "debt" sold on the open market in complete disregard and, in fact, in flagrant violation of all common law (and Uniform Commercial Code) principles of "holder in due course" or "privity of contract".

"Holder in due course" and "privity of contract" were key elements of common law jurisprudence specifically protected from interference by the state governments under Article I, §10, Cl. 1 of the United States Constitution, except where necessary to protect or advance a compelling governmental interest in the state's interest of self-protection or emergency exercise of the police power. Cf., e.g., *Allied Structural Steel Co. v. Spannaus, Attorney General Of Minnesota, et al.,* 438 U.S. 234; 98 S.Ct. 2716; 57 L.Ed.2d 727 (1978).

## NO RES JUDICATA OR COLLATERAL ESTOPPEL DUE TO NO FINAL DECISION

It is axiomatic that there can be no res judicata or collateral estoppel effect to any litigation which is still ongoing in the original court in which it was brought.  Defendant U.S. Bank's own Motion to Dismiss includes as its Exhibit B the Order denying EMERGENCY relief entered on August 31, 2009, "as an emergency" (i.e., effectively without either prejudice nor any requirement of refiling)(Attached as Exhibit H).  The Riverniders' Motion was entitled:

### FLORIDA RULE 1.540 (b)(4)
### MOTION TO SET ASIDE DEFAULT and to VACATE
### SUMMARY JUDGMENT and TO STAY OR SUSPEND ORDER OF SALE set for
### August 31, 2009, pursuant to Rule 1.550(b)

The Motion attached and incorporated the Federal Complaint in this case, the contents whereof were thus incorporated into the state case pleadings by the language: ", all the material allegations and legal contentions of which are adopted into this motion, insofar as these contentions can be raised in a Florida State Court, and the same allegations and contentions are incorporated by reference as if fully copied and restated herein below."  Riverniders' August 31, 2009 Motion to Set Aside at page 2.

Circuit Judge Jack S. Cox order (See Exhibit H herein) further provided that "Defendants' [Marsha G. Rivernider and Robert H. Rivernider's] Emergency Motion may be set for hearing in Division "AW" in the normal course with proper notice."  As of November 11, 2009, there has never been a hearing on this Motion to Set Aside Default and to Vacate Summary Judgment" so the state court U.S. Bank case remains pending and non-final.

Rather, Marsha G. and Robert H. Rivernider have filed additional motions to vacate the summary judgment and void the order of sale in the Fifteenth Judicial Circuit.  Among the new evidence which will be submitted in support of the Plaintiff's Motion to Set Aside Default and to Vacate Summary Judgment (once a hearing date can be obtained) is the document entitled "Appraisal Review: Rivernider, Marsh & Robert, 9246 Delmar Court, Wellington, Florida 33414---Forensic Appraisal" dated November 9, 2009, and attached here as Exhibit F to these

*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v. U.S. Bank, N.A.,*
*Combined Response to Second Order to Show Cause Filed 11-02-09 and Motion to Dismissed filed* 12
*9-24-09, with reservation of Plaintiffs' Rights to File Motion to Convert 12(b)(6) to Rule 56 MSJ*

Plaintiffs' Combined Preliminary Response to Order to Show Cause and Response to Motion to Dismiss." Until the Plaintiff's Post-Trial Motions have been ruled upon, the Circuit Court case is not ripe for appeal and the litigation in the Fifteenth Judicial Circuit cannot be considered res judicata, especially in light of the contentions of Plaintiffs' complaint, which have effectively been lodged both in state AND Federal Court, by incorporation.

So long as the state court proceedings are not final, even while they are on appeal, there is no res judicata effect nor collateral estoppel nor any jurisdictional bar to parallel non-final state and federal actions running simultaneously. ***Exxon Mobil v. Saudi Basic Industries,*** 544 U.A. 180 (2005). See also ***Semtek v. Lockheed Martin,*** 531 U.S. 497 (2001).

### <u>RESERVATION OF RIGHT TO AMEND PLEADINGS, TO CONVERT THIS RESPONSE TO A MOTION TO CONVERT DEFENDANT'S MOTION TO DISMISS DEFENDANT'S 12(b)(6) INTO A MOTION FOR SUMMARY JUDGMENT UNDER RULE 56, REQUIRING DISCOVERY, and TO PRESERVE RIGHT TO TRIAL-BY-JURY</u>

Plaintiffs hereby reserve their right to further respond to both the Court's Second Order to Show Cause filed November 2, 2009, and the Defendant's Motion to Dismiss filed September 24, 2009, by filing their First Amended Complaint without further leave of Court within 33 days of the filing of an answer to the Original Plaintiffs' Complaint, which is to say not sooner than December 15, 2009 (if the Defendant U.S. Bank was to file its answer immediately on November 12, 2009). Plaintiffs further reserve their right further to respond to the Court's Second Order to Show Cause and Defendant's Motion to Dismiss by showing in a separate document that Defendants so relied on factual arguments and contentions as to have required Plaintiffs' to respond by addressing factual matters outside of the Four Corners of the Pleadings in this case, so that the Defendant's Motion to Dismiss pursuant to 12(b)(6) of right ought to be treated as and converted upon at least ten days notice to a Motion for Summary Judgment pursuant to Rule 56. Finally, Plaintiffs' Complaint included their demand for a trial-by-jury of all issues of fact so triable, with the jury held to be the final judge of all facts at common law pursuant to the Seventh Amendment, and all mixed questions of law and fact which may be

triable as a matter of controlling case law, and Plaintiffs demand an advisory jury on all other matters to the extent permitted by law, with appropriate instructions distinguishing the advisory from the deciding issues presented to the jury for resolution.

### PRAYER FOR RELIEF

Plaintiffs MARSHA G. RIVERNIDER, ROBERT H. RIVERNIDER, and CHARLES EDWARD LINCOLN, III, pray that the Court accept this Response to its Second Order to Show Cause entered November 2, 2009, and that the Court will deny Defendant's Motion to Dismiss pursuant to Rule 12(b)(6), Order the Defendant U.S. Bank to file an answer within 10 days, initiate discovery, and to set a scheduling order and final date for trial. Plaintiffs also pray that the Court will allow them to file their First Amended Complaint on or before December 15, 2009, and that Defendants also be compelled to answer said amended complaint also.

Plaintiffs further pray that upon final trial-by-jury, that Court will enter judgment for Plaintiffs against all defendants for the relief requested above, including but not limited to declaratory judgment regarding the rights and status of each party in relation to the property at 9246 Delemar Court, Wellington, Florida 33414, and the interests assigned to Plaintiff in such property and the notes, transactions, and occurrences relating to the same.

Respectfully submitted,

Thursday, November 12, 2009
By:_____

Robert H. Rivernider, Plaintiff, *in propia persona*
9246 Delemar Court, Wellington FL 33414
Telephone: (561) 315-2487

And By:_____

MARSHA G. RIVERNIDER, Plaintiff, *pro se*
9246 Delemar Court, Wellington, FL 33414

*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v. U.S. Bank, N.A.,*
*Combined Response to Second Order to Show Cause Filed 11-02-09 and Motion to Dismissed filed* 14
*9-24-09, with reservation of Plaintiffs' Rights to File Motion to Convert 12(b)(6) to Rule 56 MSJ*

And By: _____
Charles Edward Lincoln, III
c/o Peyton Yates Freiman
Tierra Limpia/Deo Vindice
603 Elmwood Place, Suite #6
Austin, Texas 78705

Telephone: (512) 968-2500; (512) 923-1889
E-Mail: charles.lincoln@rocketmail.com

Facsimile:  561-691-1423


## CERTIFICATE OF SERVICE

I CERTIFY THAT A TRUE AND CORRECT COPY OF THE ABOVE-AND-FOREGOING PLAINTIFF'S COMBINED PRELIMINARY RESPONSE THE COURT'S SECOND ORDER TO SHOW CAUSE AND THE DEFENDANT'S SEPTEMBER 24, 2009, MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) was served by facsimile transmission and First Class Mail, postage prepaid, on the attorney of record for Defendant U.S. Bank, namely:

BETH A. NORROW, Esquire

Butler & Hosch, P.A.

3185 South Conway Road, Suite E

Orlando, Florida 32812

Facsimile: (407) 381-5577

By: _____
Robert H. Rivernider, Plaintiff, *in propia persona*
9246 Delemar Court, Wellington FL 33414
Telephone: (561) 315-2487


*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v. U.S. Bank, N.A.,*
*Combined Response to Second Order to Show Cause Filed 11-02-09 and Motion to Dismissed filed* 15
*9-24-09, with reservation of Plaintiffs' Rights to File Motion to Convert 12(b)(6) to Rule 56 MSJ*

# EXHIBIT A:
## Letter of Understanding
## By Plaintiffs with
## Dr. Orly Taitz, Esquire

*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v. U.S. Bank, N.A.,*
*Combined Response to Second Order to Show Cause Filed 11-02-09 and Motion to Dismissed filed* 16
*9-24-09, with reservation of Plaintiffs' Rights to File Motion to Convert 12(b)(6) to Rule 56 MSJ*

LETTER OF UNDERSTANDING
CONDITIONS OF RETAINER
October 21, 2009-----Thursday

Dear Dr. Taitz:

We agree to your conditions of retainer as follows:

(1)    Although Dr. Orly Taitz will nominally be representing us all, as this case is currently styled (again, only because of logistical issues), we understand and acknowledge that Dr. Orly Taitz will actually be representing only Charles Edward Lincoln, in his capacity as our TRUSTEE, subject to formal modification in writing only, and

(2)    that Dr. Orly Taitz RESERVES THE RIGHT TO WITHDRAW upon 45 days written notice delivered either to each of us individually by regular mail and/or by-and-through Charles Edward Lincoln as our trustee;

(3)    We further agree hat any disputes you have over the management of your property and claims are with ME, as your Trustee, and that you will NEVER attempt to hold Orly Taitz or her law office responsible for any disputes you have with me over the management of your property or claims, including any aspect of my contract with Orly Taitz for legal counseling or representation.

(4)    We agree that while we will be VIRTUALLY represented by Dr. Taitz, we will not have any contract or agreement of representation with her directly, so that we will ONLY have "privity of contract" and a right to complain or file petitions or grievances, against Charles Edward Lincoln as Trustee; we must communicate any and all concerns about litigation or the subject property and any grievances concerning its management to Charles Edward Lincoln as trustee.

(5)    We agree to be bound by California Law in all your dealings with Dr. Taitz and Charles Edward Lincoln, with venue proper for any dispute being in Orange County, California.

Yours very truly,

_____*(Bob R)

# EXHIBIT B:
## Affidavit of
## Charles Edward Lincoln, III
## Concerning Dr. Orly Taitz, Esq.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA---PALM BEACH

| | | |
|---|---|---|
| MARSHA G. RIVERNIDER,<br>ROBERT H. RIVERNIDER,<br>CHARLES EDWARD LINCOLN, III,<br>　　　Plaintiffs,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br>AS TRUSTEE FOR THE C-BASS<br>MORTGAGE LOAN ASSET-BACKED<br>CERTIFICATES, SERIES 2006-CBS,<br>And all JOHN & JANE DOES 1-50<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br>Case No. 09-81255-CIV<br>HON. W.P. DIMITROULEAS<br><br><br><br>AFFIDAVIT REGARDING<br>PLAINTIFFS' ATTEMPTED<br>RETAINER OF ATTORNEY |

§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§

## AFFIDAVIT AND DECLARATION OF CHARLES EDWARD LINCOLN, III

1.　　My name is Charles Edward Lincoln, III. I am over the age of 18, of sound mind, and have never been convicted of any crime of moral turpitude within the meaning of *Beltran-Tirado v. INS*, 213 F.3d 1179, 1183 (9th Cir. 2000) and *Quintero-Salazar v. Keisler*, 506 F.3d 688 (9th Cir. 2007); I write this affidavit from personal knowledge.

2.　　For the past five months I worked closely with Dr. Orly Taitz, Esquire, and in fact formed a close-bond and intimate personal relationship of trust and special confidence with her; this relationship did not end well.

3.　　Dr. Taitz agreed and promised me, as part of our quid pro quo, that so long as I would support her unconditionally in her litigation to disprove the constitutional legitimacy of President Barack H. Obama, she would equally unconditionally represent me and act as my attorney in a number of mortgage redemption cases I have accepted on assignment from troubled mortgagors throughout the United States.

4.　　During the five months we were working together, I provided Dr. Orly Taitz with all the support I could, but she specifically took steps, however, to appear in only three of my cases, the above-entitled and numbered case being one of them.

5.    Dr. Taitz has since October 27, 2009, taken steps to withdraw as my counsel in two out of the three cases that I know of, as of the present date, not including the one which she filed in Orange County, California, the most dramatic being her letter received Tuesday November 10, 2009, by Robert H. & Marsha G. Rivernider in this case.

6.    Dr. Taitz and I spent a great deal of time working together between May 30, 2009 and November 4, 2009, and indeed travelled throughout the United States together working mostly on the Obama eligibility question.

7.    Because of the short-term intensive time demands of that case, I was not worried about the seriousness of Dr. Taitz' long-term commitment to keep her end of the bargain, and I relied, depended upon, and counted on Dr. Orly Taitz, Esq., to appear in and take over this case in the Southern District of Florida (about which she was particularly enthusiastic because of the civil rights allegations concerning possible judicial misconduct and corruption in Florida).

8.    In fact, Dr. Taitz had agreed to represent me and Robert H. Rivernider and Marsha G. Rivernider when I filed it in August 2009, but she had just arrived from a vacation in Israel and could not sign on at that time.

9.    At roughly the same time I also filed a case in Idaho and another couple of cases in California, in all of which I counted on Dr. Orly Taitz' involvement and appearance, although she only filed and signed one of those cases as my counsel outright.

10.    Exhibit A is a true and correct copy of the Letter of Understanding which she dictated to me verbatim as the required terms for representing Marsha G. and Robert H. Rivernider and myself in the present case.  Dr. Taitz is perfectly fluent in five languages but English is not one of them.

11.    Exhibits C and D are true and correct copies of the Assignment of Rights and Durable Power of Attorney which Robert H. Rivernider and Marsha G. Rivernider executed in my favor in addition to the warranty deed to their house, subject of this litigation, which they signed over to me.

*Affidavit of Charles Edward Lincoln, III, regarding promised legal representation in this Case by Dr. Orly Taitz, Esquire*

2

12.     Dr. Orly Taitz applied for admission to this Court *Pro Hac Vice* without obtaining local counsel but the Court denied her application not on the merits but for failure to comply with certain technicalities.  I continued to look for local counsel in Florida to appear with Dr. Taitz through and until November 4, 2009.

13.     The 45 day notice of withdrawal period was a special term of representation which I had suggested to ensure the security and stability of cases in litigation, the only term of the agreement which I had suggested in fact, but she had readily and fully agreed to this term.

14.     In terms of Exhibit A, the 45 day period should be construed to run from Tuesday, November 10, 2009, the date on which Robert H. and March G. Rivernider received a certified letter from Dr. Orly Taitz indicating that she would not represent them or me.

15.     It is obvious that as of November 10, 2009, 45 days have not elapsed even from the day Robert H. and Marsha Rivernider signed Exhibit A, and in fact Orly never gave any notice other than the certified letter which Robert & Marsha Rivernider received at their home in Wellington, subject of this litigation, on Tuesday, November 10, 2009, which was addressed to the Court.

16.     Plaintiffs have no current way of knowing whether or not the Court has actually received the letter from Dr. Taitz (the letter was not shown or listed in the Court's docket as of Remembrance Day, November 11, 2009), and it is obviously unclear whether such a letter as formatted is properly to be filed in the Court's docket or not.

17.     On or about Wednesday October 21, 2009, later on the same day after Robert H. and Marsha G. Rivernider had signed Exhibit A, Dr. Taitz informed me that her husband, Yosef Taitz had threatened/instructed her that if she continued to work with me, and especially if she signed any contracts with me, that he would require her to sign away all of her rights in the family property and estate, a much harsher result that he could have achieved if she (Dr. Orly Taitz) had sought an ordinary judicial divorce from Mr. Yosef Taitz or if he had sought a divorce from her (especially in a community property state).

*Affidavit of Charles Edward Lincoln, III, regarding promised legal representation in this Case by Dr. Orly Taitz, Esquire*                    3

18.     Dr. Orly Taitz appears to me to be an obviously somewhat naïve and unsophisticated victim of a seriously abusive domestic relationship with her husband.

19.     The uncertainty continued for about two weeks and finally on Wednesday night November 4, 2009, just before 10:00 p.m., Dr. Taitz called me by telephone informed me that she could never ever see me or speak with me or work with me again, that her husband had said terrible things to her.

20.     In my opinion, which I hereby declare and affirm, neither Robert H. Rivernider nor Marsha G. Rivernider have any fault because they agreed to all of Dr. Orly Taitz' somewhat eccentric and possibly oppressive or even unconscionable terms of representation immediately.

21.     I declare and affirm that, under the circumstances, I reasonably relied on Dr. Orly Taitz, Esquire.

22.     In any event, however, in my opinion, neither Robert H. & Marsha G. Rivernider should be in any way punished or penalized or prejudiced in any way in this litigation or otherwise by my failure to obtain counsel or my failure to properly arrange representation with and local counsel for Dr. Orly Taitz, Esquire.

23.     We will continue to seek competent legal counsel in this case, but until we do, we ask for the Court's indulgence in our weaknesses as we try to proceed *pro se/in propia persona*, which was, after all, the status in which we initiated this case.

Further affiant sayeth naught.

Signed, declared under penalty of perjury, and executed in Palm Beach Gardens, Florida, on this Thursday the 12th day of November, 2009.

By: _____

Charles Edward Lincoln, III
c/o Peyton Yates Freiman
603 Elmwood Place, Suite #6
Austin, Texas 78705
Telephone: 512-968-2500
E-mail: charles.lincoln@rocketmail.com

*Affidavit of Charles Edward Lincoln, III, regarding promised legal representation in this Case by Dr. Orly Taitz, Esquire*                                    4

Alternative Address:
c/o Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410
Telephone: 512-968-2500/512-923-1889
Facsimile: 561-691-1423

## NOTARY'S JURAT

    Charles Edward Lincoln, III, appeared in person before me on this Thursday the 12th day of November, 2009, in Palm Beach Gardens, Florida, and having been by me duly sworn upon his oath he did verify the truth of all the statements of fact set forth above, and did declare and acknowledge the statements of opinion made above and the sincerity of their submission to the Court.

    I am an officer authorized to administer oaths and take testimony under the laws of the State of Florida, my principle place of business being in Palm Beach County, Florida.



Notary Public, Palm Beach County
State of Florida

Printed Name of Notary: _Crystal D. Watson_

Business Address: _12050 US Highway 1 North Palm Beach, FL_

My Commission Expires: _____

CRYSTAL D. WATSON
Notary Public - State of Florida
My Comm. Expires Aug 10, 2010
Commission # DD 822471

*Affidavit of Charles Edward Lincoln, III, regarding promised legal representation in this Case by Dr. Orly Taitz, Esquire*

5

# EXHIBIT C:
# Robert H. & Marsha G. Rivernider
# Assignment of Rights to
# Charles Edward Lincoln

*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v.*
*U.S. Bank, N.A., Combined Response to Second Order to Show Cause Filed 11-02-09 and* 18
*Motion to Dismissed filed 9-24-09, with reservation of Plaintiffs' Rights to File Motion to*
*Convert 12(b)(6) to Rule 56 MSJ*

## ASSIGNMENT & ASSOCIATED RIGHTS IN NOTES & OBLIGATIONS

On this the 21st day of August, 2009, MARSHA G. RIVERNIDER, whose address is: 9246 Delemar Ct., Wellington, FL 33414, executed this Assignment of Rights to grantee Charles Edward Lincoln, III, for the purpose of executing a supplemental warranty deed.

Wherefore, by all to whom this document may come, let it be known that said grantor, assignor, transferor, MARSHA G. RIVERNIDER ---for and in consideration of the sum of $10.00 (ten and no/100 dollars) and other good and valuable considerations from said assignee and transferee Lincoln, the receipt and sufficiency of which is hereby acknowledged---has granted (and did on August 21st, 2009, actually deed, grant, sell, and transfer) unto Charles Edward Lincoln, and does hereby now confirm the sale and transfer of all of her contractual rights, equitable interests, and statutory claims to Lincoln as Grantee. The Grantor has also specifically assigned and transferred all other legal claims of whatever origin or description, arising from, concerning, or touching upon those certain lots or parcels situated in the Village of Wellington, County of Palm Beach County, Florida more commonly known as 9246 Delemar Ct, Wellington, FL 33414 but formally and fully described as a single family house as set forth in bold print below.

Furthermore, without any express or implied limitation whatsoever, grantor MARSHA G. RIVERNIDER has specifically assigned, granted, and transferred all of her statutory, legal, equitable, and contractual interests in the notes, claims conveying, delivering, granting, and transferring all her legal rights, title, and equitable interests in the herein-described land or real estate, situated, lying and being located in Village of Wellington, Palm Beach County, Florida and as well as the obligations to which he granted or contractually agreed to undertake with any party arising from and associated with the following described land or real estate, situated in Palm Beach County, Florida:

**Lot 1363, Block E, of OLYMPIA – PLAT II, according to the Plat thereof, as recorded in Plat Book 98, Page 1, of the Public Records of Palm Beach County, Florida.**

### WARRANTY DEED CONFIRMED

And said grantor, assignor, transferor MARSHA G. RIVERNIDER, does hereby confirm and reaffirm that she, by separate document, has fully and irrevocably deeded, granted, transferred, and warranted unto Charles Edward Lincoln, III, all of her legal and equitable rights, title, and interest in the land and real estate, situated in Palm Beach County, Florida in the Village of Wellington, as well as her claims to and arising from

*Assignment and Transfer of Claims, Interests, and Rights to Charles Edward Lincoln*   1

FILE NUM 20080281031 OR BOOK/PAGE 23407/0621 DATE: 08/24/2009 15:11:03 P gs 0621 - 623, (3pgs) Sharon R. Bock, CLERK & COMPTROLLER

any and all notes, contracts, and obligations which he granted or contractually agreed to with respect to any party to Charles Edward Lincoln, III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, the grantor, assignor and transferor set unto grantor's hand and seal the day of the above-and-foregoing quit claim deed, to wit 21st day of August, 2009.

Signed, sealed and delivered in my presence:

*Marsha G. Rivernider*

GRANTOR, MARSHA G. RIVERNIDER

9246 Delemar Ct.
Wellington, FL 33414

### WITNESSES & NOTARY

_____
1st Witness Signature

Robert Rivernider
1st Witness Name

9246 Delomar Ct
1st Witness Address

Wellington, FL 33414
1st Witness City, State and Zip

_____
2nd Witness Signature

Theresa R. Rivernider
2nd Witness Name

_____

*Assignment and Transfer of Claims, Interests, and Rights to Charles Edward Lincoln*    2

2nd Witness Address

_8525 Via Brilliante_

2nd Witness City, State and Zip

_Wellington Fl  33411_

## NOTARY'S JURAT

The above-and-foregoing Assignment of Associated Rights in Notes and Obligations from Grantor MARSHA G. RIVERNIDER to Grantee Charles Edward Lincoln, III, was executed and acknowledged personally before me on this _____ the _21_ day of August, 2009

NOTARY'S OFFICIAL SEAL HERE BELOW:

_(signature)_

Notary Public, State of Florida

_Pauline Hydro_

Printed Name

PAULINE HYDRO
Notary Public, State of Florida
Commission# DD676250
My comm. expires May 20, 2011

_____

My Commission Expires

STATE OF FLORIDA • PALM BEACH COUNTY

I hereby certify that the foregoing is a true copy of the record in my office.

THIS _24_ DAY OF _AUG_, 20_09_

SHARON R. BOCK
CLERK & COMPTROLLER

By _____

DEPUTY CLERK

*Assignment and Transfer of Claims, Interests, and Rights to Charles Edward Lincoln*   3

# Exhibit D:
# Robert H. and Marsh G.
# Rivernider Power of Attorney to
# Charles Edward Lincoln, III

*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v.*
*U.S. Bank, N.A., Combined Response to Second Order to Show Cause Filed 11-02-09 and* 19
*Motion to Dismissed filed 9-24-09, with reservation of Plaintiffs' Rights to File Motion to*
*Convert 12(b)(6) to Rule 56 MSJ*

# DURABLE POWER OF ATTORNEY

Pursuant to Florida Statutes § 709.08, MARSHA G. RIVERNIDER appoints CHARLES EDWARD LINCOLN III, whose phone number is 1.512.968.2500, as his agent and attorney-in-fact, to appear in Court pursuant § 709.08 specifically subsections. This durable power of attorney is not affected by subsequent incapacity of the principal except as provided in s. 709.08, Florida Statutes. (i), (n) and (p) which give authority regarding the following:

**(6)** *PROPERTY SUBJECT TO DURABLE POWER OF ATTORNEY.* **--Unless otherwise stated in the durable power of attorney, the durable power of attorney applies to any interest in property owned by the principal, including, without limitation, the principal's interest in all real property, including homestead real property; all personal property, tangible or intangible; all property held in any type of joint tenancy, including a tenancy in common, joint tenancy with right of survivorship, or a tenancy by the entirety; all property over which the principal holds a general, limited, or special power of appointment; chooses in action; and all other contractual or statutory rights or elections, including, but not limited to, any rights or elections in any probate or similar proceeding to which the principal is or may become entitled.**

The powers given in this durable power of attorney are given pursuant to 709.08(7):

**(7)(a) Except as otherwise limited by this section, by other applicable law, or by the durable power of attorney, the attorney in fact has full authority to perform, without prior court approval, every act authorized and specifically enumerated in the durable power of attorney. Such authorization may include, except as otherwise limited in this section:**

**1. The authority to execute stock powers or similar documents on behalf of the principal and delegate to a transfer agent or similar person the authority to register any stocks, bonds, or other securities either into or out of the principal's or nominee's name.**

**2. The authority to convey or mortgage homestead property. If the principal is married, the attorney in fact may not mortgage or convey homestead property without joinder of the spouse of the principal or the spouse's legal guardian. Joinder by a spouse may be accomplished by the exercise of authority in a durable power of attorney executed by the**

*Durable Power of Attorney to Charles Edward Lincoln*                                                                        1

**joining spouse, and either spouse may appoint the other as his or his attorney in fact.**

The powers given to the attorney in fact, specific to this instrument, outside of what is outlined in the statutes themselves, will include:

**In connection with an action or litigation, perform any lawful act the principal could perform.**

This power of attorney is intended to expand and supplement the assignments of rights and powers made to Charles Edward Lincoln III from MARSHA G. RIVERNIDER.

## CLAIMS AND LITIGATION

This POA is being given specifically in regards to litigation, and is offered as a declaration as such. Charles Edward Lincoln III has authority by and through this document along with the corresponding Assignment of Rights coupled with a Warranty Deed to file and sign legal documents with the expressed consent of MARSHA G. RIVERNIDER with appearing in court in his stead if necessary.

Charles Edward Lincoln III is given the authority through this document, along with the combined and supplemental documents mentioned earlier, to commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as our Agent shall deem proper.

## PERSONAL AND FAMILY MAINTENANCE

To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

This power of attorney is effective immediately and shall not be affected by the subsequent disability or death of either granting party. No third party shall ever be held liable for this power of attorney unless such third party has actually received a copy of revocation of this power of attorney executed in a manner of equal.

MARSHA G. RIVERNIDER, in order to save costs and simplify the administration of the rights conferred by this Power of Attorney, and consistent with all its purposes, do hereby waive both common law and statutory duties of accounting and fiduciary reporting in regard to their designation of Charles

Edward Lincoln, III, and (without any express or implied limitation) she specifically waive the requirements of the Standards of Care in Florida Statutes § 709.08(8) and subsequently § 736.0901 fiduciary status and duty to account.

MARSHA G. RIVERNIDER, the grantor of this POA reserves the right to revoke it should she deem it necessary at any time. This durable power of attorney is not affected by subsequent incapacity of the principal except as provided in §709.08(13) in the Florida State Statutes.

Done and executed in Wellington, Palm Beach County, Florida on this the 21 day of August, 2009.


Grantor, MARSHA G. RIVERNIDER
9246 Delemar Ct.,
Wellington, FL 33414

## JURAT

Before me, on this the 21 day of August, 2009, MARSHA G. RIVERNIDER appeared before me to execute and acknowledge this document, and having been duly sworn on her oaths did acknowledge this Durable Power of Attorney freely and with full understanding of the powers and responsibilities transferred thereby.


Notary Public, State of Florida


Printed Name

PAULINE HYDRO
Notary Public, State of Florida
Commission# DD676250
My comm. expires May 20, 2011

_____
My Commission Expires

*Durable Power of Attorney to Charles Edward Lincoln*                    3

**Exhibit E:**
**Endorsed Note**
*PROMISSORY NOTE*
*"ADJUDSTABLE RATE BALLOON NOTE"*
*Dated April 24, 2006*
*With Endorsements "Without Recourse"*
*From*
*CHALLENGE FINANCIAL INVESTORS CORP.*
*To*
*NEW CENTURY MORTGAGE CORP.*
*And*
*By*
*New Century Mortgage Corp*
*Without recourse, apparently payable to*
*Nobody?  Anybody? Everybody?*
*The Court Should Determine*
*How Many Times this Note was paid &*
*Satisfied IN FULL or IN PART*

*Marsha G. Rivernider, Robert H. Rivernider, Charles Edward Lincoln, III v.*
*U.S. Bank, N.A., Combined Response to Second Order to Show Cause Filed 11-02-09 and* 20
*Motion to Dismissed filed 9-24-09, with reservation of Plaintiffs' Rights to File Motion to*
*Convert 12(b)(6) to Rule 56 MSJ*

Loan Number: 1007470658

# ADJUSTABLE RATE BALLOON NOTE

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

APRIL 24, 2006          ST. PETERSBURG          FLORIDA
[Date]                           [City]                                [State]

9246 DELEMAR COURT, WELLINGTON, FLORIDA 33414
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 729,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          8.925   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the   1st   day of each month beginning on   JUNE 1 2006   . My monthly payments will be based on an assumed   40   -year amortization period (the "Amortization Period"). I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   MAY 1, 2036   I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

NCMC - ADJUSTABLE RATE BALLOON NOTE (FL)
RE-519 01/18/06                          Page 1 of 5          DocMagic *eForms* 800-649-1362
www.docmagic.com

I will make my monthly payments at 360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 5,581.17 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of MAY, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 300/1000 percentage point(s) ( 6.300 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.425 % or less than 8.925 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 500/1000 percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.925 %. My interest rate will never be less than 8.925 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

NCMC - ADJUSTABLE RATE BALLOON NOTE (FL)
RE-519  01/18/06                                      Page 2 of 5          DocMagic *eForms* 800-649-1362
www.docmagic.com

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### 12.   DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Marsha G. Rivernider* (Seal)
MARSHA G. RIVERNIDER          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

NEW CENTURY MORTGAGE CORPORATION

PAY TO THE ORDER OF:
WITHOUT RECOURSE

CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION

BY: _____

ITS: VP

Pay to the order of, without recourse
New Century Mortgage Corporation
By: _____
    Steve Nagy
    V.P. Records Management

*[Sign Original Only]*

NCMC - ADJUSTABLE RATE BALLOON NOTE (FL)
RE-519  01/18/06                    Page 5 of 5          DocMagic eForms  800-649-1362
                                                         www.docmagic.com