## Exhibit F:

"Appraisal Review: Rivernider, Marsh & Robert, 9246 Delmar Court, Wellington, Florida 33414--- Forensic Appraisal" dated November 9, 2009



# Lender Forensics, LLC

# Appraisal Review

**Rivernider, Marsha & Robert**

**9246 Delemar Ct., Wellington, FL 33414**

*Lender Forensics makes no representations and warranties of any kind and assumes no liability Whatsoever for any audit report findings, including incorrect findings arising from incomplete data, inaccurate data, improper classification of data, or erroneous interpretations of the loan data submitted for review.*

DISCLAIMER: This publication has been created to provide accurate and authoritative information relevant to the subject matter presented; however, this publication has been prepared by individuals licensed to practice law. Lender Forensics is NOT ENGAGED in rendering legal, or other professional advice and this publication IS NOT a substitute for the advice of an attorney. If you require legal, or other expert advice, you should seek the services of competent attorney or other appropriate professional.



# Forensic Appraisal Summary

| | |
|---|---|
| Date of Appraisal Review: | **November 9, 2009** |
| Date of Appraisal: | **March 2, 2006** |
| Date of Loan Closing | **April 24, 2006** |
| Borrower(s): | **Rivernider, Marsha G. & Robert H.** |
| Address of Subject Property: | **924446 Delmar Ct., Wellington, FL 33414** |
| Number of Liens on Subject: | **1** |
| Did 1st and 2nd close simultaneously: | **n/a** |
| Loan Purpose: | **Refinance** |
| Loan Amount 1st Lien: | **$729,000** |
| Same appraisal used to approve both liens? | **n/a** |
| Loan amount 2nd Lien: | **n/a** |
| Loan To Value / CLTV | **90 /90%** |
| Value stated on Appraisal: | **$810,000** |
| Does the final appraised value appear to be supported? | **No** |
| Opinion of Value as of Appraisal Date : | **$660,000** |
| Source of appraisal document used to perform review: | **Borrower** |
| Originating Lender(s): | **Challenge Financial Investors Corp.** |



| Name of Appraiser | Dan Dolan |
|---|---|
| License # | RD2267 |
| Current Status of License | Current/Active |

## Summary of Exceptions Observed with the Subject Appraisal

| | |
|---|---|
| 1 | The final appraised value of $810,000 exceeds the $500,000 predominant value of the subject's immediate neighborhood by $310,000. The subject property appears to be an over-improvement for the area. |
| 2 | It would appear that the Lender did not exercise proper due diligence when underwriting the appraisal for the subject property. The loan amount of $729,000 is considered to be a "jumbo" conventional loan, at the time the home was appraised. Per standard conventional underwriting guidelines, the lender should have required that two appraisals be performed to fully establish the subject's market value. It appears that no 2nd appraisal was required; nor did the Appraiser provide a 4th or 5th comparable, which should have been required, given the size of the loan and the rapid value appreciation (35.78%) the since the subject was purchased by the original owner, Gilkos/Sandoval , 18 months previously. |
| 3 | All of the comparable properties were taken from within the subject's immediate subdivision of Olympia. Per conventional underwriting guidelines, the appraiser was required to provide two comparable properties from within the subject subdivision and one from without, to prove market acceptance. |
| 4 | A 35.78% value appreciation within an 18 month period does not appear to be reasonable. The subject was purchased in September of 2004 for $549,900. The final appraised value per the appraisal is $810,000. The standard value appreciation for homes located in Palm Beach County, Florida is 6% per annum. The subject was new construction. No upgrades or improvements were performed or required. Value appreciation appears to be unsubstantiated. |
| 5 | The Land to Value Ratio of 42.59% exceeds the 30% |



| | |
|---|---|
| | maximum permitted per conventional underwriting guidelines, and has not been adequately addressed by the appraiser in his report. |
| 6 | The appraiser's opinion of the subject's site value, totaling $345,000 appears to exceed the estimated site value of $41,000, per the Retroactive AVM performed. The subject's site size totals .18 (or an 18th) of an Acre. Unimproved 5 (five) acre home sites in neighboring equestrian communities were being sold for $100,000 per acre, during the same approximate time period. |
| 7 | Comps not appropriate: The appraisal reflects significant single line, upward adjustments for significant disparities between the comps and the subject in age, utility, and amenities. Excessive adjustments that are not adequately explained by the appraiser. |
| 8 | The appraiser indicates a High value of $7.4 million for the subject's immediate subdivision of Olympia, which is not accurate. The appraiser included homes located in the city of "Wellington" an exclusive, equestrian community, in this assessment. Olympia is a standard Planned Unit Development providing typical amenities such as Club House, basketball/tennis courts, a sports field, gated entry and pool. There is no golf course or equestrian facilities located in the development of "Olympia," nor are residents permitted to maintain horses on their properties, which is the primary motivation for individuals to move to the rural community of Wellington. The development of Olympia and the community of Wellington do not share the same market demographic; homes and communities that do not provide the facilities necessary to attract the equestrian buyer do not command premium pricing in this location. |
| 9 | The appraiser indicates that the value of homes located in the subject's immediate subdivision are "increasing," however he indicates that growth in the area is "stable" and marketing times equate to the standard 3-6 months. The marketing time, and growth rate for an area experiencing rapid value appreciation equaling 35.78%, should be "Rapid" and "Under 3 months," respectively. |
| 10 | The appraiser provides no value adjustment for the sale date of the comparable properties utilized to establish the value of the subject. Comp 3 is 8 months old; Comp 2 is 6 months old. All of the comparable properties sold between July and October of 2005. The subject appraisal was performed in |



| | |
|---|---|
| | March of 2006. While the age of Comps 1 and 2 are "within the maximum age tolerance," the age of Comp 2 is barely so; none of the sales are considered to be "recent," i.e., sold within three months or less of the date of the appraisal, which challenges the appraiser's assertion that home values in the subject's immediate area were "increasing" at the time the appraisal was performed. |
| 11. | The value of the subject property was established via a flip transaction. Per the appraiser, the prior owner, Gilkos/Sandoval, purchased the subject property in September of 2004 for $549,900. Gilkos/Sandoval is a resident of the State of New York and purchased the home as an investment. The subject was sold, immediately, to the subject borrower/tenant; a sales price of $700,000 was established as part of a lease purchase transaction. The purchase price of the subject was not re-evaluated when the transaction was consummated, despite the beginning of a housing market decline in the early months of 2006. Per the Retro AVM performed and historical data provided per Zillow, the estimated sales price of the subject property when the appraisal was performed was $660,000. The borrower's loan amount at time of closing was $729,000 reflecting the borrower sustained a loss of approximately $69,000 in negative equity immediately upon the loan's closure. Automated Valuations, providing impartial value estimates, were available to the Lender when the loan closed; however, it would appear that no prudent action was taken to confirm that the appraised value was supported when the loan was granted to the borrower. Home values located in the subdivision of Olympia have not been sustained. |



## Appraisal Review Notes:

The loss of value of homes located in the Olympia subdivision is well known in the Palm Beach County area. Many of the homes were purchased, not to be occupied as the owner's primary residence, but for speculative or investment purposes. The community of Olympia was originally intended to provide housing for primary owner occupants and 2nd home dwellers. When many of the speculative purchasers discovered they could not "flip" the homes immediately after closing, when the housing market began its decline in 2006, many of them were required to rent the homes out, frequently to anyone available and willing to pay. There was, and continues to be a substantial over supply of homes in the Palm Beach County market as a whole, but the subdivision of Olympia was particularly affected by the glut. An additional factor, creating unexpected issues in Olympia, was the size of the homes and the number of bedrooms and baths they contained. The families who rented the homes, were not traditional households, but in many instances were comprised of several combined households that included large numbers of people. Crime in the development became an issue, and the homeowners association noticed an increase in the number of homeowners who were delinquent on their association dues. The number of homes that have subsequently entered into foreclosure or are listed for Short Sale in Olympia, was and continues to be extensive. Values in that community continue to decline.

(End of Review Notes)

Using the results of this report constitutes agreement with the disclaimers on the cover page of this report. Lender Forensics, LLC is offering this review opinion in an effort to assist in evaluation of the appraisal presented and believed to have been used by their lender to assign value to their home and ultimately relied upon for the extension of credit. This review is intended for homeowners and/or their attorneys who have expressed concerns about the accuracy of their appraisal. It must be stated that in all cases an appraisal is an opinion of value, based upon available market data. An appraiser is required to achieve a certain level of professional accreditation and professional experience.



# Current Status

# Of

# Appraisers License



**DOLAN, DANIEL J (Primary Name)**

**(DBA Name)**

Main Address:   **13602 LA MIRADA CIRCLE**
  **WELLINGTON  Florida  33414**

County:   **PALM BEACH**

License Mailing:

License Location:   **11924 FOREST HILL BLVD**
  **#22-165**
  **WELLINGTON  FL  33414**

County:   **PALM BEACH**

## License Information

| | |
|---|---|
| License Type: | **Certified Residential Appraiser** |
| Rank: | **Cert Res Appr** |
| License Number: | **RD2267** |
| Status: | **Current, Active** |
| Licensure Date: | **11/22/1993** |
| Expires: | **11/30/2010** |

618 US HWY 1, Suite 200 North Palm Beach, FL 33408 • Phone: (561) 228-8800 ▪ Fax: (561) 799-0022



The appraiser was required to prepare the original subject appraisal reviewed in this report utilizing the Uniform Standards of Professional Appraisal Practices. Additional standards have been imposed by Fannie Mae/Freddie Mac underwriting guidelines. The review of the report was performed utilizing Fannie Mae appraisal underwriting guidelines, which is the industry standard for analyzing appraisals and supporting documentation for residential real property.

Professional Summary of the Reviewer is included with this report

This appraisal review was performed by Florence Skerratt who is NOT a licensed appraiser. Generally, licensed appraisers are NOT qualified to underwrite appraisals or perform credit related appraisal analysis.

*Note: If this appraisal review was performed utilizing documents supplied by the borrower it is recommended that the appraisal documents used to establish value of subject property be obtained directly from the current servicer of record. Please contact you Lender Forensics, LLC representative for more details.

It is standard practice for the lender to offer the borrower(s) a copy of the appraisal used to established value, however, more than one appraisal may have been ordered. It may be unknown if the lender ordered an appraisal review from a third party to assist verifying the validity of the subject appraisal. **If multiple appraisals were ordered prior to the loan closing and the lender was aware of the existence of multiple appraisals, it is standard practice for the lender to use the appraisal reflecting the lowest final appraised value.**

618 US HWY 1, Suite 200 North Palm Beach, FL 33408 • Phone: (561) 228-8800 ▪ Fax: (561) 799-0022



## Definition of Terms

### Summary of Major Exceptions and Glossary of Common Terms:

**To assist the user of this report in identifying potential appraisal problems, we are providing a definition of terms for the following most common appraisal deficiencies:**

- **Value is not supported** -- the appraiser's opinion of value is not adequately supported by the comparables provided on the mortgage document.
- **Comps are not appropriate** –- review of the appraisal document reflects that the comparable properties used to establish value are not appropriate. An appraiser must select comparable properties that are similar to the subject in size, room count, utility, design, appeal, marketability, and site value. Additionally the comparable properties must be located in the immediate neighborhood/subdivision as the subject to establish value. Or: The comparable properties utilized in the subject appraisal have significantly dissimilar characteristics than the subject property.
- **Unsupported adjustments in the sales comparison approach** -- the appraiser uses adjustments in the appraisal report that are not supported by the market data.
- **Inadequate reporting of the sales history for the subject property and comparable sales** -- the appraiser does not analyze and/or report the sales history for the subject property and comparable sales.
- **Lack of analysis of, and reporting on, the listing, offering, or contract of sale for the subject property** -- the appraiser does not comment on how the subject property transaction relates to the market.
- **Misrepresentation of the physical characteristics of the subject property, improvements, and comparable sales** -- the appraiser does not accurately report both the positive and negative features.

------------------------------------------------------------------------

**Property Flip:** The practice of buying a property and quickly reselling (or "flipping") it for profit. A property is considered to be a "flip" if it is sold within the first 12 months of purchase. Properties bought and sold via flip transactions are purchased purely for speculative purposes, i.e., the purchaser does not intend to reside in the residence, and usually, performs no upgrades to warrant the increase in value, and subsequent receipt of profit.   Flip transactions are prevalent in housing markets that have experienced rapid appreciation, and can artificially increase the value of a property that cannot be sustained for the long term.



# SUPPORTING DOCUMENTATION

# SUBJECT APPRAISAL

**WELLINGTON APPRAISALS, INC.**
Phone 561-790-1611/Fax 561-790-7570

File No. CM030206

## APPRAISAL OF



**A SINGLE FAMILY RESIDENCE**

### LOCATED AT:

9246 Delemar Court
Wellington, FL  33414

### FOR:

Challenge Financial Investors Corp.
360 Central Avenue Suite 600
St Petersburg, FL 33701

### BORROWER:

Rivernider

### AS OF:

March 2, 2006

### BY:

Dan Dolan
Wellington Appraisals, Inc.

SUMMARY APPRAISAL REPORT

## Uniform Residential Appraisal Report

File No. CM030206

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 9246 Delemar Court | City Wellington   State FL   Zip Code 33414 |
| Borrower Rivernider | Owner of Public Record Glikos/Sandoval   County Palm Beach |
| Legal Description Olympia Plat 2 Lot 1363 Block E | |
| Assessor's Parcel # 73-42-44-17-02-001-3630 | Tax Year 2005   R.E. Taxes $ 9,970.20 |
| Neighborhood Name Olympia | Map Reference 42-44-17   Census Tract 77.28 |
| Occupant [ ] Owner [X] Tenant [ ] Vacant   Special Assessments $ Unknown | [X] PUD   HOA $ 125.00  [ ] per year [X] per month |
| Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) | |
| Assignment Type [ ] Purchase Transaction [X] Refinance Transaction [ ] Other (describe) | |
| Lender/Client Challenge Financial Investors Corp.   Address 360 Central Avenue Suite 600, St Petersburg, FL 33701 | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  [ ] Yes [X] No
Report data source(s) used, offering price(s), and date(s). Regional MLS, PaPa

**CONTRACT**

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
Per the borrower, there is a lease purchase agreement letter for $700,000 dated 18 months ago; a copy of the letter was not provided.

Contract Price $ 700,000   Date of Contract 11/2004   Is the property seller the owner of public record? [X] Yes [ ] No   Data Source(s) Public Records
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.  $     None Reported

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [X] Increasing [ ] Stable [ ] Declining | PRICE  AGE | One-Unit 90% % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | $(000)  (yrs) | 2-4 Unit  % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 214 Low  New | Multi-Family 5% % |
| | | 7.4mil High  20 | Commercial 5% % |
| | | 500* Pred.  5 | Other  % |

Neighborhood Boundaries The subject is located north of Lake Worth Road, south of Forest Hill Blvd., east of State Road 7 and west of the Florida Turnpike.

Neighborhood Description  See Attached Addendum.

Market Conditions (including support for the above conclusions)  See Attached Addendum.    *  It is typical for the larger homes with the premium views and predominal upgrades to exceed the predominant value for the neighborhood, the subject is well with in the range of values for the area.

**SITE**

Dimensions See attached copy of plat map.   Area 7800SqFt±/0.18Acres±   Shape Irregular   View Lake
Specific Zoning Classification PUD   Zoning Description Planned Unit Development
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | | |
| Gas | | | Sanitary Sewer | [X] | | Alley None | | [X] |

FEMA Special Flood Hazard Area [ ] Yes [X] No   FEMA Flood Zone Zone B   FEMA Map # 120192 0160 A   FEMA Map Date 02/01/79
Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No   If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No   If Yes, describe.

**IMPROVEMENTS**

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION  materials/condition | INTERIOR  materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls Concrete/Good | Floors C.Tile,Carpet/Gd |
| # of Stories Two | [ ] Full Basement [ ] Partial Basement | Exterior Walls CBS/Good | Walls Drywall/Good |
| Type [X] Det. [ ] Att. [ ] S-Det/End Unit | Basement Area N/A sq. ft. | Roof Surface Barrel Tile/Good | Trim/Finish Wood/Good |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish N/A % | Gutters & Downspouts Aluminum/Good | Bath Floor Ceramic Tile/Gd |
| Design (Style) Contemp. | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type Alum. S.H./Good | Bath Wainscot Ceramic Tile/Gd |
| Year Built 2004 | Evidence of [ ] Infestation | Storm Sash/Insulated No | Car Storage [ ] None |
| Effective Age (Yrs) New | [ ] Dampness [ ] Settlement | Screens Yes/Good | [X] Driveway # of Cars 3 |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities | Driveway Surface Paver Brick |
| [ ] Drop Stair [ ] Stairs | [ ] Other  Fuel Elec. | [ ] WoodStove(s) # | [X] Garage # of Cars 3 |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | [ ] Fireplace(s) #  [X] Fence Metal | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [X] Other CFans | [X] Patio/Deck Conc [X] Porch Ent/Rear | [X] Att. [ ] Det. [ ] Built-in |
| Appliances [P] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave | | [ ] Pool Inground [ ] Other | |
| | | [P] Washer/Dryer [ ] Other (describe) | |

Finished area above grade contains:   10 Rooms   4 Bedrooms   4 Bath(s)   3,586 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  See Attached Addendum.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  Depreciation was based upon the observed condition of the improvements. No functional or external inadequacies were noted. The subject is in very good condition; it has been maintained and updated, which contributes to the lower effective age.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No   If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No   If No, describe.

SUMMARY APPRAISAL REPORT

## Uniform Residential Appraisal Report

File No. CM030206

| There are | 65 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 465,000 | to $ 1,795,000 . |
|---|---|---|---|
| There are | 60 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 370,000 | to $ 1,100,000 |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 9246 Delamar Court | 9630 Shepard Place | | 9623 Shepard Place | | 9226 Delamar Court | |
| | Wellington | Wellington, 33414 | | Wellington, 33414 | | Wellington, 33414 | |
| Proximity to Subject | | 0.49 miles NW | | 0.49 miles NW | | 0.10 miles ESE | |
| Sale Price | $ 700,000 | | $ 715,000 | | $ 760,000 | | $ 820,000 |
| Sale Price/Gross Liv. Area | $ 195.20 sq. ft. | $ 199.39 sq. ft. | | $ 192.84 sq. ft. | | $ 206.91 sq. ft. | |
| Data Source(s) | Inspection | Inspection | | Inspection | | Inspection | |
| Verification Source(s) | Public Records | Public Records | | Public Records | | Public Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Conventional | | Conventional | | Conventional | |
| Concessions | | Mortgage | | Mortgage | | Mortgage | |
| Date of Sale/Time | 11/2004 | 10/2005 | | 09/2005 | | 07/2005 | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Leasehold | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 0.18 Acres± | 0.18 Acres ± | Equal | 0.18 Acres ± | Equal | 0.21 Acres ± | Equal |
| View | Lake | Lake | | Lake | | Lake | |
| Design (Style) | Contemp. | Contemp. | | Contemp. | | Contemp. | |
| Quality of Construction | Very Good | Very Good | | Very Good | | Very Good | |
| Actual Age | 1.5 Eff New | 3 Eff 2 \ | 14,800 | 4 Eff 2 \ | 14,800 | 1.7 Eff New | Equal |
| Condition | New | Good + / | | Good + / | | New | |
| Above Grade | Total\|Bdrms.\|Baths | Total\|Bdrms.\|Baths | | Total\|Bdrms.\|Baths | | Total\|Bdrms.\|Baths | |
| Room Count | 10 \| 4 \| 4 | 10 \| 4 \| 3 | 6,000 | 10 \| 6 \| 5 | -6,000 | 10 \| 5 \| 4 | |
| Gross Living Area | 35    3,586 sq. ft. | 3,586 sq. ft. | Equal | 3,941 sq. ft. | -12,400 | 3,963 sq. ft. | -13,200 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | Central | Central | | Central | | Central | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | Garage 3 | Garage 3 | | Garage 3 | | Garage 3 | |
| Porch/Patio/Deck | Porch, Balcony | Porch, Balcony | | Porch, Balcony | | Porch | 3,000 |
| Features | Good Features | Inf. Features | 30,000 | Inf. Features | 30,000 | Good Features | |
| Pool, Etc. | Open Pool, Patio | None | 20,000 | None | 20,000 | None | 20,000 |
| Net Adjustment (Total) | | [X] + [ ] - | $ 70,800 | [X] + [ ] - | $ 46,400 | [X] + [ ] - | $ 9,800 |
| Adjusted Sale Price | | Net Adj. 9.9% | | Net Adj. 6.1% | | Net Adj. 1.2% % | |
| of Comparables | | Gross Adj. 9.9% | $ 785,800 | Gross Adj. 10.9% % | $ 806,400 | Gross Adj. 4.4% % | $ 829,800 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) RealQuest, MLS, PAPA
My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) RealQuest, MLS, PAPA
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 9/2004 | No Prior Sale | No Prior Sale | No Prior Sale |
| Price of Prior Sale/Transfer | $549,990 | Within 1 Year | Within 1 Year | Within 1 Year |
| Data Source(s) | MLS, Public Records | MLS, Public Records | MLS, Public Records | MLS, Public Records |
| Effective Date of Data Source(s) | 02/2006 | 02/2006 | 02/2006 | 02/2006 |

Analysis of prior sale or transfer history of the subject property and comparable sales    The subject has not been listed in the Regional MLS in the last year.
The only sale reported for the subject in the last 3 years was for $549,990 in 09/2004, the closing of the purchase from the builder.
Prior sales for the comparable properties were over one year ago.  The increase in value since the prior sale is typical in the subject's
market area for the last few years.and has not transferred in the last three years.  Prior sales for comparable properties were over one
year ago.

Summary of Sales Comparison Approach.   Subject Features Include: Additional upgraded 18" diagonally set ceramic tiled areas; Upgraded
cabinets and granite countertops; French doors. The sales used are the same model and similar quality homes located in the subject's
neighborhood and competing market area. Sale 1 is the same model home reported inferior in condition and features. Sale 2 is a
larger home. Sale 3 is a larger home. Comparable sales are closed. Value estimated is for real property only, exclusive of personal
property items. The sales used are considered the most recent available which best represent the subject and allow for the most
accurate appraisal. All the comparable sales used were considered in the final estimate of value.

Indicated Value by Sales Comparison Approach $    810,000

Indicated Value by: Sales Comparison Approach $ 810,000    Cost Approach (if developed) $ 808,100    Income Approach (if developed) $

The market and cost approaches to value were used to estimate market value. The income approach was not used as most homes in
the area are owner occupied and primary residences. The most weight was given to the market approach as it is the most reliable.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,
[ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required
inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 810,000
as of    March 2, 2006    , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                Produced using ACI software, 800.234.8727 www.aciweb.com                Fannie Mae Form 1004 March 2005
Page 2 of 6                1004_05 031005

Wellington Appraisals, Inc.

SUMMARY APPRAISAL REPORT

## Uniform Residential Appraisal Report

File No. CM030206

Replacement cost figures used in the cost approach are for valuation purposes only. No one, client or third parties should rely on these figures for insurance purposes. The definition of market value is not consistent with definitions of insurable value.

Complete visual inspection of the property includes but is not limited to: Measuring the subject, interior/exterior walk through, observation of floor plan and layout, general condition of the house, notation of renovations and repairs, quality of components, conformity to neighborhood, special amenities, assessment of functional utility/obsolescence, external obsolescence.

Inspection does not include: Areas that are not readily accessible (attics and crawlspaces), activation or testing of mechanical systems (including but not limited to A/C, washer and dryers, private water and sewer systems, appliances), infestations (including but not limited to termites, rodents, bats), personal property, code compliance and environmental issues.

The appraiser is not a professional home inspector nor an environmental inspector. Therefore, this report should not be relied upon to disclose any adverse conditions present in the subject property.

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  The land value was abstracted from a review of improved property sales.

**COST APPROACH**

| ESTIMATED | REPRODUCTION OR | X REPLACEMENT COST NEW | OPINION OF SITE VALUE ........................................ = $ | 345,000 |
|---|---|---|---|---|
| Source of cost data Marshall & Swift | | | Dwelling 3,586 Sq. Ft. @ $ 89.50 ............ = $ | 320,947 |
| Quality rating from cost service V. Good | Effective date of cost data 2/2006 | | Porches, Balc. 680 Sq. Ft. @ $ 24.39 ............ = $ | 16,585 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | Built-Ins, Upgrades | 47,250 |
| Cost estimates based on Marshall & Swift Residential cost | | | Garage/Carport 648 Sq. Ft. @ $ 39.71 ............ = $ | 25,732 |
| handbook, appraiser's files and local costs data.  High land to | | | Total Estimate of Cost-New ............ = $ | 410,514 |
| value ratios are typical for the area.  See attached building | | | Less 60 Physical Functional External | |
| sketch. | | | Depreciation $7,388 = $ ( | 7,388 |
| Site improvements include the paver brick driveway, walk, | | | Depreciated Cost of Improvements ............................. = $ | 403,126 |
| inground pool and patio, sprinklers, and landscaping. | | | "As-is" Value of Site Improvements ............................. = $ | 60,000 |
| | | | | |
| Estimated Remaining Economic Life (HUD and VA only) | | 60 Years | INDICATED VALUE BY COST APPROACH ....................... = $ | 808,100 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

**INCOME**

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier N/A = $ _____ N/A Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?   Yes X No   Unit type(s)  X Detached   Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

Total number of phases _____ Total number of units _____ Total number of units sold _____

Total number of units rented _____ Total number of units for sale _____ Data source(s) _____

Was the project created by the conversion of an existing building(s) into a PUD?   Yes   No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?   Yes   No   Data source(s)

Are the units, common elements, and recreation facilities complete?   Yes   No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   Yes   No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.  Guard gated entry, Pool, Wading pool, Tennis courts, Basketball courts, Sports field, Clubhouse, Fitness center.

SUMMARY APPRAISAL REPORT

## Uniform Residential Appraisal Report

File No. CM030206

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

SUMMARY APPRAISAL REPORT

## Uniform Residential Appraisal Report

File No. CM030206

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

SUMMARY APPRAISAL REPORT

## Uniform Residential Appraisal Report

File No. CM030206

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent.  Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations.  Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature _____
Name Dan Dolan
Company Name Wellington Appraisals, Inc.
Company Address 12773 Forest Hill Blvd., #1217
Wellington, FL 33414
Telephone Number (561)790-1611
Email Address WellingtonAprsls@aol.com
Date of Signature and Report 03/17/2006
Effective Date of Appraisal March 2, 2006
State Certification # St.Cert.Res.REA RD2267
or State License # _____
or Other (describe) _____ State # _____
State FL
Expiration Date of Certification or License 11/30/2006

ADDRESS OF PROPERTY APPRAISED
9246 Delemar Court
Wellington, FL 33414

APPRAISED VALUE OF SUBJECT PROPERTY $ 810,000

LENDER/CLIENT
Name Denise Miceli
Company Name Challenge Financial Investors Corp.
Company Address 360 Central Avenue Suite 600
St Petersburg, FL 33701
Email Address Summit@summitoffice.net

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature _____
Name _____
Company Name _____
Company Address _____
_____
Telephone Number _____
Email Address _____
Date of Signature _____
State Certification # _____
or State License # _____
State _____
Expiration Date of Certification or License _____
Phone: (561)790-1611, Fax: (561) 790-7570

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection _____
☐ Did inspect interior and exterior of subject property
Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection _____

Freddie Mac Form 70 March 2005                    Produced using ACI software, 800.234.8727 www.aciweb.com
Page 6 of 6                    Fannie Mae Form 1004 March 2005
1004_05 033005

Wellington Appraisals, Inc.

ADDENDUM

| Borrower: Riverrider | | | |
|---|---|---|---|
| Property Address: 9246 Delemar Court | | File No.: CM030206 | |
| | | Case No.: | |
| City: Wellington | State: FL | | Zip: 33414 |
| Lender: Challenge Financial Investors Corp. | | | |

### Scope of the Appraisal

The level of detail of the information reported in this appraisal is consistent with the requirements of  summary appraisal report. The purpose of this appraisal is to estimate the market value of the property described in the body of this appraisal report. The scope of this appraisal included an interior and exterior inspection of the subject property and an exterior inspection of the comparables. The photos of  the comparables may be MLS photos which are taken when the property is listed by  the realtor.  This is often considered the best and true photo as this is what the property looked like at the time of sale, instead of the condition of the property after the new  buyers may have made changes to the appearance.  Dimensions are from actual measurements, builder's plans, survey or from the Palm Beach County tax rolls with spot verification on site. The subject neighborhood was inspected to determine neighborhood characteristics.  A search for comparable sales within standard guidelines was made.  Those sales that were the most comparable were used in this report.  If any FNMA guidelines were exceeded this is duly noted in the Reconciliation Section or in the Additional Comments Addendum.

Professional assistance was provided in the preparation of this appraisal report, specifically research, inspection, and data input, by Brian M. Dolan, Registered Trainee RI18679.

### Neighborhood Description

The subject is in an area composed of compatible style and quality homes located in the east section of Wellington.  There are no apparent adverse factors which would affect the marketability of the homes in the area.  The neighborhood has good market appeal due to its close proximity to shopping and community recreational facilities.  Employment appears stable with good access to public transportation, expressways, medical facilities, and schools.  Commercial properties service the area and are not adverse to marketability.

### Neighborhood Market Conditions

Based on data published by the local multiple listing service, marketing time for the subject should fall within the normal 3 to 6 month range indicating a balance of supply and demand. Market conditions are considered average with no negative characteristics that would have an adverse affect on marketability. Conventional and government sponsored financing are readily available at market accepted terms.

### Additional Features

18" ceramic tile on the diagonal flooring throughout the first floor - 2 story ceiling in foyer - Volume ceilings - Upgraded cabinets and granite counters in kitchen - Arched passageways - Rounded drywall corners - 8' colonial doors - Walk in closet in master bedroom - His and Her master bathroom, featuring glass block wall in separate shower, whirlpool tub, and dual vanities - Recessed lighting in the kitchen - French doors  - Ceiling fans - Paver brick driveway, walk and porches - 2-story entry porch, rear porch, and covered balcony - Inground pool with paver brick patio and metal fence.

The subject is the Siena model with the library option off the master bedroom and the den option off of the family room instead of the 5th bedroom.  The builder's currently base price for a Siena model is $751,900 on a standard lot.  The subject has a premium lake lot, upgrades, an inground pool, the porch and balcony option.



# Estimated Current Value
# Comparative Market Analysis
# (CMA)

# <u>Reviewer Verified</u>

# RETRO Value Report
# Comparative Market Analysis
# as of the appraisal date

618 US HWY 1, Suite 200 North Palm Beach, FL 33408 • Phone: (561) 228-8800 ▪ Fax: (561) 799-0022

For Property Located At

## * 9246 DELEMAR CT, WELLINGTON FL 33414-3478
Owner Name: **LINCOLN CHARLES E**

### Valuation Result

| | |
|---|---|
| Estimated Value: | **$660,000** |
| Value As Of: | **03/02/2006** |
| Processed Date: | **11/06/2009** |
| Forecasted Standard Deviation: | **0** |
| Comment: | **VP4 Valuation Successful** |

### Last Market Sale Information:

| | | |
|---|---|---|
| Sale Price: | **$700,000** | |
| Recording/Sale Date: | **04/28/2006 /** | |
| Sale Type: | | |
| Seller Name: | **GLIKOS DEMETRIOS** | |
| 1st Mtg Amount: | | |
| 1st Mtg Type: | | |
| 2nd Mtg Amount: | | |

### Prior Sale Information:

| | |
|---|---|
| Prior Sale Price: | **$549,990** |
| Prior Rec/Sale Date: | **09/01/2004 /** |
| Prior Sale Type: | |
| Prior 1st Mtg Amt: | **$439,950** |
| Prior 1st Mtg Type: | |

### Location Information:

| | | | |
|---|---|---|---|
| County: | **PALM BEACH, FL** | APN: | **73-42-44-17-02-001-3630** |
| Census Tract: | **77.28** | Township Name: | **WELLINGTON** |
| Absentee Owner : | **Y** | | |

### Property Information:

| | | | |
|---|---|---|---|
| Living Area: | **3,467** | Land Use: | **SFR** |
| Total Rooms: | | Lot Area: | |
| Bedrooms | **5** | Year Built / Eff: | **2004 /** |
| Bath(F/H): | **3 /** | Air Conditioning: | **YES** |
| Pool: | **POOL** | Fireplace: | |
| # of Stories: | **2** | Parking: | **3** |

### Tax Information:

| | | | |
|---|---|---|---|
| Assessed Value: | **$335,930** | Assessed Year: | **2009** |
| Land Value: | **$41,000** | Improvement Value: | **$294,930** |

* This property has transferred ownership more than once within two years from the valuation date.

# Area Market Sales
### For Property Located At
## 9246 DELEMAR CT, WELLINGTON FL 33414-3478

| Comp#: | 1 | | | Distance From Subject: **0.39 (miles)** | |
|---|---|---|---|---|---|
| Address: | 3064 HARTRIDGE TER, WELLINGTON FL 33414-3428 | | | | |
| Owner Name: | **AUSTIN RONALD** | | | Living Area: | **3,438** |
| Seller Name: | **MINTO COMMUNITIES LLC** | | | Total Rooms: | |
| APN: | **73-42-44-17-02-001-2160** | Land Use: | **SFR** | Bedrooms: | **6** |
| County: | **PALM BEACH, FL** | Parking: | **3** | Bath(F/H): | **4 /** |
| Sale Price: | **$617,580** | Prior Sale Price: | | Year Built: | **2005** |
| Rec Date: | **12/14/2005** | Prior Rec Date: | | Air Cond: | **YES** |
| 1st Mtg Amt: | **$494,000** | Lot Area: | | Fireplace: | |
| Total Value: | **$317,149** | # of Stories: | **2** | Pool: | |

| Comp#: | 2 | | | Distance From Subject: **0.38 (miles)** | |
|---|---|---|---|---|---|
| Address: | 3052 HARTRIDGE TER, WELLINGTON FL 33414-3428 | | | | |
| Owner Name: | **GISCOMBE VAN A** | | | Living Area: | **3,963** |
| Seller Name: | **MINTO COMMUNITIES LLC** | | | Total Rooms: | |
| APN: | **73-42-44-17-02-001-2140** | Land Use: | **SFR** | Bedrooms: | **6** |
| County: | **PALM BEACH, FL** | Parking: | **3** | Bath(F/H): | **4 /** |
| Sale Price: | **$687,990** | Prior Sale Price: | | Year Built: | **2005** |
| Rec Date: | **09/27/2005** | Prior Rec Date: | | Air Cond: | **YES** |
| 1st Mtg Amt: | **$550,392** | Lot Area: | | Fireplace: | |
| Total Value: | **$352,244** | # of Stories: | **2** | Pool: | |

| Comp#: | 3 | | | Distance From Subject: **0.05 (miles)** | |
|---|---|---|---|---|---|
| Address: | * 9262 DELEMAR CT, WELLINGTON FL 33414-3422 | | | | |
| Owner Name: | **SIDNEY MARIE M** | | | Living Area: | **3,467** |
| Seller Name: | **PETIT-FRERE VLADIMIR & CARLA B** | | | Total Rooms: | |
| APN: | **73-42-44-17-02-001-3760** | Land Use: | **SFR** | Bedrooms: | **5** |
| County: | **PALM BEACH, FL** | Parking: | **3** | Bath(F/H): | **3 /** |
| Sale Price: | **$650,000** | Prior Sale Price: | **$392,560** | Year Built: | **2004** |
| Rec Date: | **06/24/2005** | Prior Rec Date: | **03/08/2004** | Air Cond: | **YES** |
| 1st Mtg Amt: | **$585,000** | Lot Area: | | Fireplace: | |
| Total Value: | **$313,071** | # of Stories: | **2** | Pool: | |

| Comp#: | 4 | | | Distance From Subject: **0.40 (miles)** | |
|---|---|---|---|---|---|
| Address: | 3076 HARTRIDGE TER, WELLINGTON FL 33414-3428 | | | | |
| Owner Name: | **BARREIROS BENNY** | | | Living Area: | **3,438** |
| Seller Name: | **MINTO COMMUNITIES INC** | | | Total Rooms: | |
| APN: | **73-42-44-17-02-001-2180** | Land Use: | **SFR** | Bedrooms: | **5** |
| County: | **PALM BEACH, FL** | Parking: | **3** | Bath(F/H): | **3 /** |
| Sale Price: | **$545,710** | Prior Sale Price: | | Year Built: | **2005** |
| Rec Date: | **05/11/2005** | Prior Rec Date: | | Air Cond: | **YES** |
| 1st Mtg Amt: | **$436,000** | Lot Area: | | Fireplace: | |
| Total Value: | **$307,454** | # of Stories: | **2** | Pool: | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Comp#: | **5** | | | Distance From Subject: | **0.48 (miles)** | |
| Address: | **3117 HARTRIDGE TER, WELLINGTON FL 33414-3431** | | | | | |
| Owner Name: | **MOSCARELLI FRANK** | | | Living Area: | **4,168** | |
| Seller Name: | **MINTO COMMUNITIES INC** | | | Total Rooms: | | |
| APN: | **73-42-44-17-02-001-2440** | Land Use: | **SFR** | Bedrooms: | **6** | |
| County: | **PALM BEACH, FL** | Parking: | **3** | Bath(F/H): | **5 / 1** | |
| Sale Price: | **$640,015** | Prior Sale Price: | | Year Built: | **2005** | |
| Rec Date: | **03/16/2005** | Prior Rec Date: | | Air Cond: | **YES** | |
| 1st Mtg Amt: | **$150,000** | Lot Area: | | Fireplace: | | |
| Total Value: | **$405,085** | # of Stories: | **2** | Pool: | | |

* This property has transferred ownership more than once within two years from the valuation date.



## This Review Performed by:

### Florence Skerratt
### Forensic Underwriter

Lender Forensics, LLC
618 U.S. Hwy 1
North Palm Beach, FL 33408
(561) 228-8800

### Areas of Residential Mortgage Expertise:

- Expert at Forensic Appraisal Review
- Forensic Underwriting
- QC & Due Diligence Underwriting
- Loan Servicing Compliance
- Compliance Auditing
- Non Performing Loan Portfolio Analysis
- Fraud Analysis

### Highlight of Professional Accomplishment:

- One of the country's leading underwriting talents who has attained the highest level of authority and responsibility as the former Senior Quality Control & Due Diligence Underwriter for Morgan Stanley's mortgage conduit facility.
- During a three (3) year period rated over $350 billion of company insured loans bundled as Mortgage backed securities.
- Only the most experienced underwriters are hired to QC underwrite company insured loans [not insured by AIG] as they require a higher level of scrutiny Investors demand. These mortgage backed securities were often sold on the secondary market to overseas governments.
- Performed approximately 8500 forensic loan audits during this period and was responsible for appraisal review, fraud detection and curing underwriting deficiencies.
- Assisted Senior Management teams develop mortgage underwriting policies and procedural manuals.
- Authored two fraud detection training manuals.
- Implemented one of the industry's most successful fraud review policies instrumental in reducing fraud by 40%.
- Expert in all areas of compliance and loan servicing compliance.  Ability to review lender's servicing records to detect if federal regulations were violated during collection efforts.
- Hired for many high profile projects. Acted as Assistant to Senior Management teams.

**(Continued)**

**LENDER FORENSICS, LLC**

Page 2 of 2, Florence Skerratt

## Professional Summary

- Residential mortgage underwriting professional with 28 years of experience. As a self employed mortgage contractor since April of 2001 was hired for several extensive long assignments from Long Island to Hawaii. Generally hired for high volume nationwide lenders and due diligence firms. As a mortgage contractor I have serve clients such as Wells Fargo, Washington Mutual, RPI, The Clayton Group, Morgan Stanley and others.

- Recently hired by Allon Hill to analyze performing & non-performing loan portfolios. Duties include an analysis of the lender's initial underwrite during the production phase to insure that the lender utilized appropriate standards and sound practices.

- Due diligence and loan securitization skills include collateral review, fraud review, compliance review, non-performing loan portfolio analysis, and Quality Control reviews. Experience with conventional, sub-prime, construction and government loans and have additional experience with Mortgage Modification.

- Compliance auditing: Extensive experience in all areas of mortgage origination including: processing, underwriting, closing, servicing, and post closing judgment, relative to granting the borrower an extension of credit, a title review, and a review of the delinquent pay history and servicing comments. A thorough compliance audit and fraud review was also accomplished. A review of the lender's servicing records was performed to insure that no Federal regulations were violated during collection efforts. A written report to the client regarding the loan's deficiencies was provided. The Findings report included an estimate of the loan's anticipated level of future performance, and included cure recommendations to resolve delinquency issues.

Consultation, Depositions, and Expert Reports are billed at the rate of one-hundred and twenty five dollars ($125.00) per hour. Payment is not contingent upon the results of litigation, settlements, or judgments. Staff time is billed at the rate of thirty-five dollars ($35.00) per hour.

Contact Lender Forensics, LLC at (561) 228-8800.

618 US HWY 1, Suite 200 North Palm Beach, FL 33408 • Phone: (561) 228-8800 • Fax: (561) 799-0022



# End of Report

*Lender Forensics makes no representations and warranties of any kind and assumes no liability Whatsoever for any audit report findings, including incorrect findings arising from incomplete data, inaccurate data, improper classification of data, or erroneous interpretations of the loan data submitted for review.*

DISCLAIMER: This publication has been created to provide accurate and authoritative information relevant to the subject matter presented; however, this publication has not been prepared by individuals licensed to practice law. Lender Forensics is NOT ENGAGED in rendering legal, or other professional advice and this publication IS NOT a substitute for the advice of an attorney. If you require legal, or other expert advice, you should seek the services of competent attorney or other appropriate professional.