UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 09-81255-Civ-DIMITROULEAS / SNOW

MARSHA G. RIVERNIDER,
ROBERT H. RIVERNIDER and
CHARLES EDWARD LINCOLN, III,

                Plaintiffs,

vs.

U.S. BANK NATIONAL ASSOCIATION,
As Trustee for the C-Bass Mortgage Loan
Asset-Backed Certificates, Series 2006-CBS,
and all John & Jane Does, 1-10,

                Defendants.

### PLAINTIFF, CHARLES EDWARD LINCOLN, III BRIEF REGARDING THE JANUARY 12, 2010 ORDER TO SHOW CAUSE HEARING

**COMES NOW**, Plaintiff Charles Edward Lincoln, III [hereinafter at times "Lincoln"] by and through his undersigned counsel, Philip J. Berg, Esquire and Inger Garcia, Esquire and files the within Brief in support of his (Plaintiff's) position regarding the issues of Sanctions. In support hereof, avers the following:

* Dr. Orly Taitz, Esquire was fully aware of the October 30, 2009 filing of her Motion to Substitute Counsel for the Pro Se Plaintiffs; to appear *Pro Hac Vice*; and for an Enlargement of Time;

* Lincoln did **not** forge Dr. Taitz's signature on Dr. Taitz's Motion filed with this Court October 30, 2009 as Lincoln signed Dr. Taitz's name to her motion with full authorization from Dr. Taitz's and at the instruction of Dr. Taitz;

* Dr. Orly Taitz, Esquire perjured herself when she testified she did **not** authorize Lincoln to sign her name on the October 30, 2009 filing;

1

> \*      Dr. Orly Taitz, Esquire perjured herself when she testified she **never** authorized anyone to sign her name; and
>
> \*      Dr. Orly Taitz, Esquire should be Sanctioned and Ordered to reimburse Plaintiff, Charles Edward Lincoln Twelve Thousand Seven Hundred [$12,700] Dollars to cover the cost of his legal fees; airfare for himself and all witnesses; and hotel/boarding expenses for himself and his witnesses for the January 12, 2010 Hearing before this Court.

### I.      HISTORY OF THIS CASE:

Lincoln in *Pro Se* and as Trustee for the Rivernider's as well as Mr. and Mrs. Rivernider entered into an Agreement with Orly Taitz, Esquire that Dr. Taitz was going to represent the Plaintiffs herein. Mr. Lincoln and Dr. Taitz were involved in a love affair during this time. Dr. Taitz filed her Motion to Substitute Counsel for the *Pro Se* Plaintiffs; to appear *Pro Hac Vice*; and for additional time to respond to the Defendants Motion to Dismiss on October 22, 2009, which Dr. Taitz's has admitted to filing. The Court denied Dr. Taitz's Motion Without Prejudice on October 23, 2009 as the Motion filed October 22, 2009 was **not** in compliance with this Court's Local Rule 7.1.A.3, which required the moving party to certify that they have conferred, or describes a reasonable effort to confer with the parties affected in good faith effort to resolve the dispute. The Court gave Dr. Taitz until October 30, 2009 to file the corrected Motion.

On October 30, 2009, Dr. Taitz filed her Amended Motion to Substitute Counsel for *Pro Se* Plaintiffs; to Appear *Pro Hac Vice*; and for an Enlargement of Time until November 30, 2009 to Respond to the Defendants Motion to Dismiss, pursuant to the Court's October 23, 2009 Order. Dr. Taitz informed this Court of her busy schedule, including her participation in a national convention to which she was a nominated delegate representing California.

On November 2, 2009, the Court issued an Order to Show Cause, docket entry #17, upon the Plaintiffs to Show Cause by November 12, 2009 Why the Defendants Motion to Dismiss

2

Should **Not** Be Granted as a result of Plaintiffs failure to respond to the Defendants Motion to Dismiss.

Also on November 2, 2009, the Court denied Dr. Taitz's First Amended Motion to Appear *Pro Hac Vice* and for an Extension of Time to Respond to the Defendants Motion to Dismiss. In so doing, the Court found that on October 22, 2009 Plaintiffs improperly filed a Motion to Substitute Counsel for Pro se Litigants and a Motion for Additional Time to Respond to the Defendants Motion to Dismiss as it failed to comply with this Court's Local Rule L.R. 7.1.A.3 regarding a pre-filing conference of counsel. In addition, the Court found that the Motion also failed to comply with the requirements of Rules 2 and 4 of the Special Rules governing the Admission and Practice of Attorney's in the United States District Court for the Southern District of Florida. The Court found that it had denied Dr. Taitz's Motion Without Prejudice and the Motion was to be re-filed on or before October 30, 2009. The Court found that Dr. Taitz had filed an Amended Motion to Appear *Pro Hac Vice* and for an Enlargement of Time to Respond to the Defendants Motion to Dismiss, however, once again, like the previous Motion filed by Dr. Taitz, the Amended Motion did **not** comport with the local rules of this Court and that Dr. Taitz had made no attempt to file a verified petition for admission pursuant to Rule 2 of the Special Rules Governing the Admission and Practice of Attorneys. The Court further found that Dr. Taitz had instead proceeded to improperly file motions without being admitted to practice in this Court's District. See docket entry #18.

Mr. Lincoln and Dr. Taitz ended their love affair the evening of November 4, 2009. A week later, on November 10, 2009, Dr. Taitz sent a letter to the Court claiming she was unaware of the Amended Motion to Appear *Pro Hac Vice* and for an Enlargement of Time and that the filing of this document was a "fraud" upon the Court. Dr. Taitz in her letter to the Court fails to

3

point out that she was Court Ordered by Judge Dimitrouleas to re-file her motion for *Pro Hac Vice* and for the Enlargement of Time to Respond to the Defendants Motion to Dismiss by October 30, 2009 and the Amended Motion filed on October 30, 2009 was in compliance with Judge Dimitrouleas' Order of October 23, 2009.

On November 12, 2009 Mr. Lincoln and the Rivernider's filed their Response to the Court's Order to Show Cause.

On November 13, 2009, Judge Dimitrouleas issued another Order to Show Cause that Plaintiffs and Orly Taitz's were to Show Cause no later than November 27, 2009 Why Sanctions Should Not be Imposed for Filing Fraudulent Documents with the Court.  In addition, the Court sent Dr. Taitz's a copy of Plaintiffs Response to the previous Order to Show Cause and Motion to Dismiss as well as the Court's November 13, 2009 Order to Show Cause.

On November 16, 2009, Mr. Lincoln and the Rivernider's Responded to the Court's November 13, 2009 Order to Show Cause.  Mr. Lincoln included an Affidavit from himself explaining to the Court that he was involved in a love affair with Dr. Taitz's which ended on or about November 4, 2009.  See docket entry #22.

On November 25, 2009, Dr. Taitz's filed her Response to the Court's November 13, 2009 Order to Show Cause with her Affidavit claiming that she did **not** file anything with the Court after the Court's October 23, 2009 Order; that she was **not** aware of the pleadings being sent to the Court, however, fails to state what pleadings she is referring to; and a fraud had been perpetrated upon the Court.  In Dr. Taitz's actual response to the Order to Show Cause, Dr. Taitz now claims that her signature was forged, that she believed it was Charles Edward Lincoln, III; that the matter should be submitted to law enforcement and proceeds to cite cases that have absolutely **no** bearing to the within action.

4

On December 14, 2009, Dr. Taitz's files a Request for Judicial Notice of Mr. Lincoln's Florida Disbarment, which has absolutely nothing to do with the case herein. The only reason for Dr. Taitz's filing of said document was to prejudice the Court against Lincoln.

On December 21, 2009, Dr. Taitz's filed two (2) additional documents entitled "Additional Response to Order to Show Cause." In both documents, Dr. Taitz's references a Texas Court case claiming Mr. Lincoln had "forged" another attorney's name on documents. Dr. Taitz was well aware the case was dismissed and never heard on the merits. The allegations are completely unfounded. In do doing, Dr. Taitz's pulled yet another fraud upon this Court; she was well aware of the dismissal, however, failed to inform the Court and filed this information as if it had been proven.

As a result, this Court Ordered a Hearing on the Order to Show Cause Why Lincoln, Mr. and Mrs. Rivernider and/or Dr. Taitz should be Sanctioned for the Fraud upon the Court.

The Hearing took place on January 12, 2010 where Dr. Taitz testified that she did **not** file the Amended Motion to Substitute Counsel for the Plaintiffs; to appear *Pro Hac Vice*; and for an Enlargement of Time.

Further, Dr. Taitz testified that she had **never** authorized anyone to sign her name.

When asked by Lincoln's counsel, Philip J. Berg, Esquire who signed her (Dr. Taitz's) payroll checks while she was out of the country, Dr. Taitz testified she did **not** authorize anyone to sign her name that she had her office Federal Express the checks to her for signature.

Upon questioning of Dr. Taitz into the case against her in Pennsylvania, <u>Liberi, et al v. Taitz, et al</u>, U.S. District Court for the Eastern District of Pennsylvania, Case No. 09-cv-1898-ECR, Dr. Taitz testified she was out of the Country, that she paid "twice" to fly Lincoln from

5

California to Pennsylvania to file documents on her behalf and Dr. Taitz testified that she did **not** authorize Lincoln to sign any of the documents filed in the Pennsylvania case.

Dr. Taitz was questioned regarding the dismissal of the case and the Judge's Ruling in the matter <u>Keyes, et al v. Obama, et al</u>, U.S. District Court, Central District of California, Southern Division, Case No. 8:09-cv-00082-DOC.  In particular, Dr. Taitz was asked about suborning perjury from her witnesses in the California case.  Dr. Taitz testified that she **never** suborned perjury in that particular case.  However, this was untruthful as outlined below.

Lincoln took the stand and truthfully testified that Dr. Taitz had in fact authorized him to sign her name and file the Amended Motion to Substitute Counsel; appear *Pro Hac Vice*; and for an Enlargement of Time.  Lincoln testified that Dr. Taitz had instructed him to sign Dr. Taitz's name on legal pleadings in other cases.

Another witness, Lucas Smith took the stand and testified that Dr. Taitz had asked him to falsify his testimony.  That Dr. Taitz had suborned perjury testimony from him in the <u>Keyes</u> case in California.

For the reasons stated herein, Plaintiff Charles Edward Lincoln, III respectfully requests this Court to issue Sanctions against Dr. Orly Taitz, Esquire in the amount of Twelve Thousand Seven Hundred [$12,700.00] Dollars to cover the costs for Attorney Fees; Travel Expenses; and Witness Travel Expenses as a result of her fraud and perjury upon this Court.

# ARGUMENT

## II. IT IS COMMON PRACTICE IN MANY STATES FOR NON- LAWYER STAFF TO SIGN THE ATTORNEY'S NAME ON BRIEFS AND PLEADINGS

This Court seemed a bit surprised to learn that Attorneys allowed their non-lawyer staff to sign their names to legal pleadings. During the January 12, 2010 Hearing, Your Honor made the statement that if another party is signing the attorney's name on a pleading, the person should place a slash and their initials.

It is a common practice in many states where attorneys ask their non-lawyer staff to sign their name to documents which they have reviewed. In fact the Missouri Bar guidelines[1] state the following:

> "The attorney may direct the paralegal to sign the attorney s name to correspondence/pleadings on a document by document basis after the attorney has reviewed, supervised production, and approved the content of the document. The paralegal **should** indicate that he/she signed the attorney s name to the document. One method of indicating this fact is for the paralegal to initial the signature." [emphasis added]

The definition of "should" is an auxiliary noun and past tense for shall[2]. In the legal context "shall" and "should" is a direction but does **not** mean mandatory. As stated in *Lambert v. Austin Ind*., 544 F.3d 1192, 1197 (11th Cir. 2008), "Indeed, courts from other jurisdictions have specifically held that the word "should" is permissive, and not mandatory. *See e.g., U.S. v. Messino*, 382 F.3d 704, 711 (7th Cir. 2004) (finding that a change of jury instructions from "may find" to "should find" had no effect because "[e]ither wording is permissive, not mandatory.

---

[1] http://library.findlaw.com/1999/May/25/130572.html
[2] http://dictionary.reference.com/browse/should

'Should' may be stronger than 'may' but the difference, in practice, is meaningless."); *Atla-Medine v. Crompton Corp.*, 2001 U.S. Dist. LEXIS 18107, 2001 WL 1382592 (S.D.N.Y. 2001) (finding that a statement that parties "should negotiate the terms and conditions" was not a promise because "'should' is permissive, not mandatory.")."

It should be noted, Dr. Taitz's prior Assistant/Webmaster, Lisa Ostella was instructed by Dr. Taitz's to prepare and sign Dr. Taitz's name to subpoenas in the case of *Keyes v. Obama, et al*, U.S. District Court, Central District of California, Southern Division.  Lisa Ostella was told by Dr. Taitz **not** to put a slash and her initials after the signing of Dr. Taitz's name.  See the Affidavit of Lisa Ostella, page two (2), paragraph six (6). Affidavit of Lisa Ostella is attached hereto and incorporated in by reference as **EXHIBIT "1"**.

### III.     DR. TAITZ PERJURED HERSELF WHEN TESTIFYING THAT SHE NEVER AUTHORIZED ANYONE TO SIGN HER NAME

Dr. Taitz's past Assistant/Webmaster, Lisa Ostella, performed various tasks from website functions, booking media appearances, contacting politicians on behalf of Dr. Taitz, sent out correspondences, updated Dr. Taitz's case filings, created and served subpoenas **which included signing Dr. Taitz's name to the subpoenas**, sent out mailings, took dictation, transcribed for Dr. Taitz amongst other various requests by Dr. Taitz's [January 14, 2010 Affidavit of Lisa Ostella, pp. 1-2, ¶2].

Dr. Taitz instructed Mrs. Ostella to prepare the subpoenas in the *Keyes* case and **instructed Mrs. Ostella to sign her (Dr. Taitz's) name to the subpoenas**.  Mrs. Ostella was then instructed to send the subpoenas out for service, all of which Mrs. Ostella complied with and sent the subpoenas from her (Lisa Ostella's) residence in New Jersey [January 14, 2010 Affidavit of Lisa Ostella, pp. 2-3, ¶¶ 5-7].  **Dr. Taitz's also had Lisa Ostella sign her (Dr.**

8

**Taitz's) name to letters which accompanied the subpoenas** [January 14, 2010 Affidavit of Lisa Ostella, p. 3, ¶8].

Upon Lisa Ostella ending services for Dr. Taitz, Plaintiff, Charles Edward Lincoln took over the position.

Dr. Taitz had Lincoln prepare legal pleadings and <u>instructed Lincoln to sign Dr. Taitz's name to pleadings</u> in the case of <u>Cook v. Simtech, et al</u>, U.S. District Court, Middle District of Florida, Case No. 8:09-cv-01382-RAL (eaj).  In fact, **Dr. Taitz instructed Lincoln to sign her name to a Motion to Recuse Judge Richard A. Lazarra**, Judge in the U.S. District Court, Middle District of Florida [January 16, 2010 Affidavit of Lincoln, pp. 5-6, ¶ 20].  Affidavit of Charles Lincoln is attached hereto and incorporated in by reference as **EXHIBIT "2"**.

In addition, **Dr. Taitz instructed Lincoln to prepare legal pleadings and sign her (Dr. Taitz's) name to the legal pleadings in the case of *Liberi, et al v. Taitz, et al***, U.S. District Court for the Eastern District of Pennsylvania, Case No. 09-cv-01898 ECR, of which Dr. Taitz is a Defendant [January 16, 2010 Affidavit of Lincoln, pp. 6-7 ¶¶ 24-28].  This is evidenced by the emails attached as **Exhibits "F" through "I"** to Lincoln's January 16, 2010 Affidavit, sent to and from Dr. Taitz, Lincoln and Philip J. Berg, Esquire.

While Dr. Taitz was in Israel, she sent an email to Lincoln asking him to contact her dental office and inform her Office Manager, Lila that she and another employee's checks were on her (Dr. Taitz's) desk.  **Dr. Taitz asked Lincoln to instruct Lila or the other employee to sign Dr. Taitz's name to the checks** and then deposit their payroll checks through their banks ATM.  [January 16, 2010 Affidavit of Lincoln, p. 10, ¶42].  Dr. Taitz's email is attached to Lincoln's January 16, 2010 Affidavit as **Exhibit "K".**

The above information is very important as Counsel for Lincoln, Philip J. Berg, Esquire, specifically asked Dr. Taitz who signed her payroll checks while she was in Israel. Dr. Taitz testified that **no** one was authorized to sign her name that her Office Federal Expressed the payroll checks to her in Israel; she signed them and returned them to the office. Dr. Taitz also testified that she has **not** authorized anyone to sign her name, which clearly is untrue.

Dr. Taitz also testified that she flew Lincoln from California to Pennsylvania in order for Lincoln to file the documents in the *Liberi* case. Lincoln flew into New York and drove to Pennsylvania where finalized the documents in the *Liberi* case, **signed Dr. Taitz's name to them at the instruction of Dr. Taitz** and filed the legal documents in the U.S. District Court, Eastern District of Pennsylvania on August 3, 2009 [January 16, 2010 Affidavit of Lincoln, pp. 6-7, ¶¶ 24-28 and p. 9, ¶ 37]. This is proven by the email Lincoln sent Dr. Taitz on August 3, 2009 at 8:00 a.m. stating he was in Pennsylvania filing the legal documents in the *Liberi* matter and would be driving back to Boston, Massachusetts within a couple of hours. This email is attached to Lincoln's January 16, 2010 Affidavit as **Exhibit "J".**

Just like in the *Cook* case and the *Liberi* case, **Dr. Taitz also instructed and authorized Lincoln to sign her name to the Amended Motion** to Substitute Counsel for the *Pro Se* Plaintiffs; Appear *Pro Hac Vice*; and for an Enlargement of Time and to file it in the within case, which Lincoln complied with.

It was only **after** Lincoln and Dr. Taitz's break-up from their love affair, that Dr. Taitz changed her story and claimed Lincoln "forged" her name.

Lincoln and the other Plaintiffs had absolutely nothing to gain by "forging", as Dr. Taitz claims, a Motion to Substitute Counsel for the *Pro Se* Plaintiffs; to Appear *Pro Hac Vice*; and for an Enlargement of Time. However, an Order was issued to Dr. Taitz that the Motion to

10

Substitute Counsel for the *Pro Se* Plaintiffs; to Appear *Pro Hac Vice*; and for an Enlargement of Time be re-filed pursuant to the Court's rules by October 30, 2009.

### IV. DR. TAITZ PERJURED HERSELF WHEN TESTIFYING THAT SHE NEVER SUBORNED PERJURY FROM HER WITNESSES

The issues were raised regarding the allegations that Dr. Taitz suborned perjury from her witnesses in the *Keyes* case. Dr. Taitz testified that she never suborned perjury from her witnesses; however, Lucas Smith took the stand and testified that Dr. Taitz did in fact suborn perjury from him. See Lucas Smith's Affidavit attached hereto and incorporated in by reference as **EXHIBIT "3"**.

In fact, the Affidavit of Lawrence Sinclair, attached hereto as **EXHIBIT "4"**, was filed in the *Liberi* case. Mr. Sinclair states in his Affidavit that not only did Dr. Taitz suborn perjury from him in the *Keyes* case; she also admitted to filing documents in that case she knew to be forged. Lawrence Sinclair also stated he sent an Affidavit to Judge David O. Carter in the *Keyes* case informing him that Dr. Taitz had asked him to lie and perjure himself, which Mr. Sinclair refused to do.

Judge David O. Carter, Judge in the United States District Court, Central District of California, Southern Division dismissed the *Keyes* case on October 29, 2009. In so doing, Judge Carter noted on page 28 of his Ruling, sub category "F" the following:

"**F.    Conduct of Plaintiffs' Counsel**"

"The hearings have been interesting to say the least. Plaintiffs' arguments through Taitz have generally failed to aid the Court. Instead, Plaintiffs' counsel has favored rhetoric seeking to arouse the emotions and prejudices of her followers rather than the language of a lawyer seeking to present arguments through cogent legal reasoning….This Court exercised extreme patience when

11

Taitz endangered this case being heard at all by failing to properly file and serve the complaint upon Defendants and held multiple hearings to ensure that the case would not be dismissed on the technicality of failure to effect service. While the original complaint in this matter was filed on January 20, 2009, Defendants were not properly served until August 25, 2009….Taitz also continually refused to comply with court rules and procedure. Taitz even asked this Court to recuse Magistrate Judge Arthur Nakazato on the basis that he required her to comply with the Local Rules….Taitz also attempted to dismiss two of her clients against their wishes because she did not want to work with their new counsel. *See id*."

"Taitz encouraged her supporters to contact this Court, both via letters and phone calls. It was improper and unethical for her as an attorney to encourage her supporters to attempt to influence this Court's decision…"

"**Additionally, the Court has received <u>several</u> sworn affidavits that Taitz asked potential witnesses that she planned to call before this Court to perjure themselves. <u>This Court is deeply concerned that Taitz may have suborned perjury through witnesses she intended to bring before this Court</u>.**" [emphasis added]

Judge David O. Carter's Order is attached hereto and incorporated in by reference as **EXHIBIT "5"**.

Judge Carter is **<u>not</u>** the only Judge who has had difficulties with Dr. Taitz. Judge Land, Judge in the U.S. District Court, Middle District of Georgia in the case of <u>Rhodes v. McDonald, et al</u>, No. 4:09-cv-106 (CDL) Sanctioned Dr. Taitz's Twenty Thousand [$20,000.00] Dollars. In so doing, Judge Land noted in his Order of October 13, 2009 and his forty-three [43] page opinion, the following:

**P. 8**

"Dr. Taitz's performance confirmed to the Court that her focus was not to pursue a legitimate legal cause of action to obtain relief for her client but was to

12

use the Court to force the President to produce a "birth certificate" satisfactory to her and her followers.  Her other purpose appeared to be to use litigation as a means of drawing attention to her political agenda.  During the hearing, Plaintiff's counsel threatened that if she did not get the opportunity to obtain the relief she sought (discovery of a birth certificate), then a wave of subsequent similar actions would be filed in this Court until she obtained what she wanted..."

**P. 11**

"…Instead of responding to the Court's specific concerns or addressing the contemplated amount of the monetary sanction, Dr. Taitz continued her attacks on the Court, as well as her political grandstanding. She now moves to recuse the undersigned, alleging that the undersigned had ex parte communication with the Attorney General of the United States; that the undersigned's ownership of certain stock caused him to have a financial interest in the litigation; that the tone of the Court's previous rulings, and the rapidity with which they were made, demonstrate the bias on the part of the court; and that sanctions cannot be imposed in this case by the undersigned without violating her due process rights… "

**P. 12**

"**I.     Motion to Recuse and Motion for Enlargement of Time**"

"Counsel seeks recusal of the undersigned for the following reasons (1) baseless speculation that the undersigned may have engaged in ex parte communication with the Attorney general; (2) fictitious allegations that the undersigned has a financial interest in the outcome of the case based on ownership of stock in Microsoft and Comcast; (3) frivolous argument that the Court cannot issue monetary sanctions as a penalty to deter further misconduct under Rule 11; and (4) frivolous contention that the court is biased based upon the tone of its previous rulings and the expedited nature and substance of the Court's rulings…"

P. 16

"**A.     The Attorney General**"

"Dr. Taitz alleges that the undersigned may have discussed this case with the Attorney General of the United States. In support of this accusation, counsel submits the affidavit of Robert D. Douglas. Mr. Douglas states that on the day of the hearing in the *Cook* case, he saw in the "coffee shop" across the street from the federal courthouse someone whom he recognized as Eric Holder, the Attorney General. Mr. Douglas's identification is based upon what he describes as the Attorney General's "distinguishing features:  his trim upper lip mustache, not large of stature and general olive complexion." (Douglas Aff., Sept. 26, 2009.) The affidavit further states that Mr. Douglas "new [sic] instantly that it was none other than Eric Holder, the current Attorney General of the United States." (*Id*.) Mr. Douglas has apparently never seen the Attorney General because he had seen Mr. Holder on television…What the Court can say is that no reasonable attorney would rely upon this affidavit in support of a legal argument in a court of law. *See, e.g*. Fox v. Prudential Fin*.*, 178 F. App'x 915, 919 (11th Cir. 2006) (per curium) (finding that reasonable person would not find partiality based on bare allegations and unsupported conclusory statements that "secret discussions" took place between defendant and court). To use this "evidence' in support of a false and misleading accusation that a judge had an ex parte conversation with someone whom the judge has never spoken to or even met is additional proof of a pattern of frivolous and outrageous conduct on the part of Dr. Taitz[6]."

**Fn 6** – "Minimal research reveals that the Attorney General was in Los Angeles on July 15 and July 16, the same time Dr. Taitz claims he was in Columbus, Georgia, 2,000 miles away. *E.g*., Press Release, U.S. Department of Justice…"

P. 18

"**C.     *Sua Sponte* Imposition of Monetary Sanctions**"

"Dr. Taitz argues that the undersigned should be recused because a judge cannot *sua sponte* act as "prosecutor, judge, and jury" in imposing monetary sanctions that are designed as a penalty to punish and deter lawyer misconduct. (Mot. To Recuse 17.) Once again, counsel, ignores the law…"

**P. 33**

"Counsel's misconduct was not an isolated event; it was part of a pattern that advanced frivolous arguments and disrespectful personal attacks on the parties and the Court. This pattern infected the entire proceeding, not just an isolated pleading. Her initial Complaint was legally frivolous. Upon being so informed, counsel followed it with a frivolous motion for reconsideration. In response to the Court's show cause order, she filed a frivolous motion to recuse. In all of counsel's frivolous filings, she hurled personal insults at the parties and the Court. Rather than assert legitimate legal arguments, counsel chose to accuse the Court of treason and of being controlled by the "Obama Machine…She accused the Court of treason based upon its dismissal of her case. She maintained that the district courts in the Eleventh Circuit must be controlled by the vast "Obama conspiracy" …Counsel's smear attempts were not limited to the Court; she appears to relish calling the President names that added nothing to her legal argument. **The Court concludes from this conduct that counsel did have intent to injure anyone associated with the litigation who did not agree with her**… although the Court has not thoroughly researched counsel's record to find similar instances of misconduct in other cases, the Court is aware of at least two other cases related to this one where counsel engaged in similar conduct. [Emphasis added]

**P. 36**

"The Court also finds that counsel's response to the court's show cause order demonstrates that the originally contemplated monetary sanction of $10,000.00 is not sufficient to deter counsel's misconduct. In response to this threatened sanction, counsel scoffed and resumed similar sanctionable conduct."

**P. 37**
**Fn 8:** "Counsel will likely respond that this sanction exceeds the statutory maximum fine for the offense of criminal contempt, 18 U.S.C. § 402, a petty misdemeanor which has a maximum fine of $1,000. The Court finds counsel's

conduct here to be more egregious than simple disobedience of a court order. Moreover, criminal contempt would also authorize a prison sentence up to six months. *Id*. The Court observes that half a year's legal fees earned by an average lawyer would far exceed the sanction the Court imposes against Dr. Taitz."

**P. 42**

"The Court further directs the Clerk of this Court to send a copy of this Order to the State Bar of California, 180 Howard Street, San Francisco, CA 94105, for whatever use it deems appropriate…"

Judge Land's October 13, 2009 Order is attached hereto and incorporated in by reference as **EXHIBIT "6"**.

As can be seen, Dr. Taitz has done more than just suborn perjury; Judge Land considers her actions to intentionally inflict injury on those who do **not** agree with her, which is far more serious.  This is also evidenced in the *Liberi* case as Dr. Taitz set out and harmed Plaintiff Liberi, Lisa Ostella and Mr. Berg and Dr. Taitz falsified law enforcement reports making false allegations against these parties.  Now, Dr. Taitz's has turned her thwarted behaviors on Lincoln and began with making false allegations herein.

## IV.    CONCLUSION:

As pointed out herein and provided in testimony before the Court on January 12, 2010, Dr. Taitz's has a history of unethical and injurious behaviors, including but **not** limited to falsifying allegations against individuals.  For the reasons stated herein, the only fraud that was perpetrated on this Court was Dr. Taitz's falsified testimony and false allegations of forgery against Plaintiff, Charles Edward Lincoln, III.  For these reasons, Sanctions should be issued against Dr. Taitz in favor of Charles Edward Lincoln, III in the amount of Twelve Thousand

Seven Hundred [$12,700.00] Dollars which represents his (Charles Edward Lincoln, III) costs for counsel fees; travel expenses for him and his witnesses to defend against Dr. Taitz's false allegations and perjured testimony.

Respectfully submitted,

Dated: January 20, 2010

s/ Inger Garcia
_____
Inger Garcia, Esquire
Florida Bar No. 106917
Email: attorney@ingergarcia.com
Law Offices of Inger Garcia
P.O. Box 11933
Fort Lauderdale, Florida 33339-1933
Telephone:   (954) 894-9962
Facsimile:   (954) 446-1635

*Local Counsel for Plaintiff,
Charles Edward Lincoln, III*

Dated: January 20, 2010

s/ Philip J. Berg
_____
Philip J. Berg, Esquire
PA Identification No. 09867
Email: philjberg@gmail.com
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
Telephone:   (610) 825-3134
Facsimile:   (610) 834-7659

*Attorney admitted pro hac vice for Plaintiff,
Charles Edward Lincoln, III*

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 09-81255-Civ-DIMITROULEAS / SNOW

| | |
|---|---|
| MARSHA G. RIVERNIDER,<br>ROBERT H. RIVERNIDER, and<br>CHARLES EDWARD LINCOLN, III,<br><br>　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br>As Trustee for the C-Bass Mortgage Loan<br>Asset-Backed Certificates, Series 2006-CBS,<br>and all John & Jane Does, 1-10,<br><br>　　　　　　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**CERTIFICATE OF SERVICE**

　　　I, Inger Garcia, hereby certify that a copy of the foregoing was served this 20th day of January 2010 electronically upon the following:

Benjamin Kyle McComas
Akerman Senterfitt & Eidson
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
Email:  Benjamin mccomas@akerman.com

Beth Ann Norrow
Butler & Hosch
3185 S. Conway Road, Suite E
Orlandlo, FL 32812
Email:  BethN@butlerandhosch.com

Orly Taitz, et al.
31912 Monarch Crest
Laguna Niguel, CA 92677
Email:  dr_taitz@yahoo.com

18

And, by regular mail with postage fully prepaid upon the following:

Marsha G. Rivernider
9246 Delemar Court
Wellington, FL 33414
Plaintiff in *Pro Se*

Robert H. Rivernider
9246 Delemar Court
Wellington, FL 33414
Plaintiff in *Pro Se*

                                   s/ Inger Garcia
                                _____
Inger Garcia, Esquire
Florida Bar No. 106917
Email: attorney@ingergarcia.com
Law Offices of Inger Garcia
P.O. Box 11933
Fort Lauderdale, Florida 33339-1933
Telephone:    (954) 894-9962
Facsimile:    (954) 446-1635

*Attorney for Plaintiff,*
*Charles Edward Lincoln, III*